UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DANIEL SMALL et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNIVERSITY MEDICAL CENTER OF SOUTHERN NEVADA, <br><br> Defendant. | Case No. 2:13-cv-00298-APG-PAL <br><br> **ORDER GRANTING MOTION TO FACILITATE NOTICE TO POTENTIAL OPT-IN PLAINTIFFS** |

**I.     BACKGROUND**

The Named Plaintiffs (collectively referred to as "Small") allege two claims for relief against University Medical Center of Southern Nevada ("UMC") for its alleged uniform practice of automatically deducting 30 minutes from the daily timecards of all hourly, non-exempt employees without verifying that those employees actually took the corresponding, uninterrupted 30-minute meal breaks as required.  (Dkt. No. 37.)   Small brings a so-called collective action on behalf of the Named Plaintiffs and all "similarly situated" employees under section 16(b) of the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).  Small also brings a class action for violations of Nevada Revised Statutes sections 608.016 and 608.018.  The present motion relates only to the FLSA claim.

On January 11, 2013, Small filed the "Named Plaintiffs Motion to Conditionally Certify a Collective Action and Facilitate Notice Pursuant to 29 U.S.C. § 216(b)" (the "Motion").  (Dkt. No. 46.)  Small seeks the court's permission to notify all "similarly situated" employees of this

case and to provide them an opportunity to opt in. UMC responded to the Motion on January 28, and Small replied on February 6. (Dkt. Nos. 50, 54.) The court heard argument on the Motion on June 7. For the reasons set forth below, the court GRANTS the Motion.

## II.     "CONDITIONAL CERTIFICATION"[1] — SIMILARLY SITUATED

### a. Legal Standard

"An action . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees *similarly situated*. No employee shall be a party plaintiff in any such action unless he gives his consent in writing to become such a party and such consent is filed in . . . court[.]" 29 U.S.C. § 216(b) (emphasis added). In other words, "similarly situated" plaintiffs may bring a so-called collective action, and plaintiffs must affirmatively opt-in to join it. Collective actions differ from class actions, and the requirements of Fed. R. Civ. P. 23 are generally inapplicable. *McElmurry v. U.S. Bank Nat'l Ass'n*, 495 F.3d 1136, 1139 (9th Cir. 2007).

The FLSA does not define "similarly situated," and neither the Supreme Court nor the Ninth Circuit has interpreted that term. *Kress v. PriceWaterhouseCoopers, LLP*, 263 F.R.D. 623, 627 (E.D. Cal. 2009). District courts in the Ninth Circuit predominantly use a two-tier approach to determine whether a group of employees is similarly situated. *Id.* The first tier, called the "notice stage," is used before the end of discovery. *Id.* at 629. The essential question is "whether the employees are sufficiently similarly situated that notice should be sent to prospective plaintiffs[.]" *Id.* at 627.

The bar is quite low for plaintiffs, and the notice stage inquiry typically results in conditional certification of a representative class. *Id.* at 628 (internal quotation marks and citation omitted). Plaintiffs "must provide substantial allegations, supported by declarations or discovery, that the 'putative class members were together the victims of a single decision, policy or plan.'"

---

[1] The court notes initially that it cannot "certify" a class or a collective action under the FLSA. *Buenaventura v. Champion Drywall, Inc. of Nev.*, 2012 WL 1032428 at *9–10 (D. Nev. 2012). Section 216(b) does not use the term "certify," nor does Rule 23 certification apply to FLSA collective actions. *Id.* Nonetheless, case law and the parties repeatedly use the term "certification," and, for the purpose of consistency, the court follows suit by using the term in a colloquial manner.

2

*Id.* at 627 (quoting *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001) (internal quotation marks and citation omitted)). Put another way, "a plaintiff need only make a *modest factual showing* sufficient to demonstrate that [she] and other potential plaintiffs were victims of a common policy or plan that violated the law. *Misra v. Decision One Mortg. Co., LLC*, 673 F. Supp. 2d 987, 993 (C.D. Cal. 2008) (emphasis supplied). This court has described the necessary "modest factual showing" as "minimal evidence." *Orquiza v. Walldesign, Inc.*, 2012 WL 3561971 at *2 (D. Nev. 2012). However, minimal evidence is not the same as no evidence; unsupported assertions of widespread violations are insufficient. *Lewis v. Nev. Prop. 1, LLC*, 2013 WL 237098 at *8 (D. Nev. 2013). Upon conditional certification, the court may order notice sent to all potential opt-in plaintiffs. *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170–71 (1989). The court also may create subclasses to avoid jury confusion. *Schemkes v. Pres'l Limousine*, 2011 WL 868182 at *3 (D. Nev. 2011). Finally, at this stage of analysis, the evidentiary standard is not as high as that applied to motions for summary judgment. *Lewis*, 2013 WL 237098 at *8.

The second tier of analysis, often prompted by a motion to decertify, follows a stricter standard of "similarly situated." *Kress*, 263 F.R.D. at 628. Factors then considered are "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendants with respect to the individual plaintiffs; and (3) the fairness and procedural considerations." *Id.* Thus, individualized inquiries into each plaintiff's claims do not occur until discovery has closed. *Orquiza*, 2012 WL 3561971 at *2. Because discovery is barely underway in the present case, the court uses the notice stage analysis.

**b. Application**

Small's allegations and evidence sufficiently demonstrate that all of UMC's non-exempt, hourly employees may have been victims of a common policy of deducting 30 minutes from each daily timecard without accurately determining whether the employees had actually taken the requisite uninterrupted 30-minute meal break. Although their job titles may differ, all hourly employees were similarly situated because they were subject to the same hospital-wide timekeeping policies and compensation plan, and their job duties were similar in that all these

3

1  employees had the ultimate goal of patient care. That UMC imposed a more rigorous
2  timekeeping policy at the behest of the U.S. Department of Labor after this case was filed is not
3  proof of prior wrongdoing, but it does provide modest evidentiary support for Small's claim that
4  UMC did not adequately track its employees' hours before it implemented the new system.
5  Named Plaintiffs' declarations, while seemingly boilerplate and nearly identical, are sufficient to
6  meet the "minimal evidence" standard. For the purposes of the notice stage analysis, they
7  adequately support Small's allegations.

8  While the court understands UMC's arguments regarding the individualized inquiry
9  required by many of Small's claims, such questions are not properly before the court at this
10 juncture. While the "class" composition may ultimately be whittled down in the "decertification"
11 stage, the court is bound by the lenient standards governing this first phase of the FLSA collective
12 action.

13 Because the allegations and evidence center on UMC's practices at its hospital, Small's
14 proposed inclusion of employees of all of UMC's subsidiaries and affiliated companies in the
15 proposed "class" is overly broad. (*See* Dkt. No. 37 ¶ 72.C.A.) The court thus orders the "class"
16 described as follows: "All individuals who were employed or are currently employed by
17 University Medical Center of Southern Nevada as hourly employees at any time during the
18 relevant statute of limitations period."

19 As to creating subclasses, the court agrees that subclasses based on job title and/or job
20 duty may be appropriate. However, it is too early to determine the precise makeup of the
21 subclasses. The magistrate judge who oversees discovery will be in a better position to determine
22 the composition of the subclasses at a later date.

23 **III.    FORM AND CONTENT OF THE NOTICE**

24 While there are no strict guidelines for the form and content of the notification, district
25 courts "must be scrupulous to respect judicial neutrality . . . and must take care to avoid even the
26 appearance of judicial endorsement of the merits of the action." *Hoffman-La Roche*, 493 U.S. at
27 174. To effectuate this goal, courts have ordered the notice published on law firm letterhead
28 instead of under the court's name and caption. *Lewis*, 2013 WL 237098 at *8. The court thus

orders the notification form be published with the letterhead of Small's counsel and the district court caption removed. The parties shall meet and confer within 28 days from the date of entry of this order to determine the content of the notification form. Within 14 days after that meeting, the parties shall either stipulate to the content or file competing versions.

Within 45 days from the date of entry of this order, UMC shall (i) provide to Plaintiff the name, last known mailing address, and last known e-mail address of every non-exempt, hourly employee that has worked for UMC at any time during the three years preceding the date of filing of the Complaint (Dkt. No. 1); and (ii) post the notification form in a conspicuous location at UMC's place of business where other employment-related notices are routinely posted. *See Schemkes*, 2011 WL 868182 at *5 (ordering notice at place of business).

## IV. EQUITABLE TOLLING

### a. Legal Standard

The statute of limitations for FLSA claims is subject to equitable tolling. *Partlow v. Jewish Orphans' Home of S. Cal., Inc.*, 645 F.2d 757 (9th Cir. 1981). Although the Ninth Circuit has not articulated a precise standard, there are two general categories that warrant tolling: "(1) where the plaintiffs actively pursued their legal remedies by filing defective pleadings within the statutory period; and (2) where the defendants' misconduct induces failure to meet the deadline." *Adams v. Inter-Con Security Systems, Inc.*, 242 F.R.D. 530, 543 (N.D. Cal. 2007). The Second Circuit has similarly stated that a court "must consider whether the person seeking application of the equitable tolling doctrine (1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli-Edelglass v. N.Y. City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003).

As an equitable matter, the inquiry should focus on fairness to both parties. *Adams*, 242 F.R.D. at 543. As part of the determination of the possible prejudice to the defendant, the court should ask whether the defendant was aware of the potential scope of liability when the complaint was filed. *Stransky v. HealthONE of Denver, Inc.*, 868 F. Supp. 2d 1178, 1181–82 (D. Colo. 2012). Of particular relevance here, one court has stated that "the time required for a court to rule

1  on a motion . . . for certification of a collective action in an FLSA case[] may be deemed an
2  'extraordinary circumstance' justifying application of the equitable tolling doctrine." *Yahraes v.*
3  *Restaurant Assocs. Events Corp.*, 2011 WL 844963 at *2 (E.D.N.Y. 2011).

### b. Application

The potential opt-in plaintiffs could be unfairly prejudiced by the court's delay in resolving the Motion. UMC is not unfairly prejudiced because the potential scope of its liability was known when the Complaint was filed. UMC was aware of Small's objective to join all non-exempt, hourly employees that have worked for UMC during the statutory period. UMC alone possesses the identity of those persons and their work records (hours, pay, etc.). The court thus tolls the statute of limitations starting 30 days after the Motion became ripe, or March 8, 2013.

The next issue is when the tolling ceases. Small argues that UMC has not been forthcoming with contact information for the potential opt-in plaintiffs. Defendants, however, are not required to produce that information until a collective action is conditionally certified. *Adams*, 242 F.R.D. at 543. *Adams* applied equitable tolling to the period between the date of the conditional certification and the date on which the defendant provided that information to "counter[] the advantage defendants would otherwise gain by withholding potential plaintiffs' contact information until the last moment." Id. *Adams*'s reasoning is compelling. Accordingly, in this case, the statute of limitations is tolled from March 8, 2013 until UMC provides the requisite contact information to Small's counsel.

If a plaintiff opts in before the date of UMC's compliance, the tolling period for that plaintiff would run from March 8, 2013 until the date of that plaintiff's filing of written consent to opt-in with the court. Tolling does not apply to the plaintiffs that opted in before March 8, 2013.

### V. CONCLUSION

Accordingly, the court hereby ORDERS:

1. Plaintiffs' motion to facilitate notice to potential opt-in plaintiffs (Dkt. No. 46) is GRANTED. Plaintiffs shall provide notice only to those persons who fall within the "class" description approved herein. Plaintiffs shall bear all costs of distribution.

Notice may not be distributed until the court approves the content of the notification form.

2. Within 28 days from the date of entry of this Order, the parties shall meet and confer to determine the content of the notification form.  Within 14 days after that meeting, the parties shall either stipulate to the content or file competing versions with the court.

3. Within 45 days from the date of entry of this Order, UMC shall (i) provide to Plaintiff the name, last known mailing address, and last known e-mail address of every non-exempt, hourly employee that has worked for UMC at any time during the three years preceding the date of filing of the Complaint (Dkt. No. 1); and (ii) post the notification form in a conspicuous location at UMC's place of business where other employment-related notices are routinely posted.

4. The statute of limitations for the FLSA claim is tolled from March 8, 2013 until UMC provides the requisite contact information to Small's counsel.  If a plaintiff opts in before the date of UMC's compliance, the tolling period for that plaintiff would run from March 8, 2013 until the date of that plaintiff's filing of written consent to opt-in with the court.  Tolling does not apply to the plaintiffs that opted in before March 8, 2013.

**IT IS SO ORDERED** this 14th day of June, 2013.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE