# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | | |
|---|---|---|
| DANIEL SMALL, et al., | : | |
| Plaintiffs, | : | Case No. 2:13-cv-00298-APG-PAL |
| | : | |
| vs. | : | **SPECIAL MASTER** |
| | : | **E-DISCOVERY  ORDER** |
| UNIVERSITY MEDICAL CENTER OF | : | |
| SOUTHERN NEVADA | : | |
| Defendant, | : | |
| | : | |

The Special Master attended a conference in chambers with counsel regarding ESI matters commencing at 10:27 a.m on the 10th day of March, 2014.  Present on behalf of Plaintiffs were Douglas Forrest and Bruce Pixley.  Joe Edmondson, Ernie McKinley and Doug Spring were present on behalf of Defendant.

The court and the Special Master had extensive discussions with counsel, the parties representatives, and consultants regarding UMC's ESI collection and production issues, as well as UMC's efforts to preserve discoverable materials pursuant to the Plaintiffs' litigation hold/preservation letters.   The court conveyed serious concerns about UMC's compliance with its preservation duties, the manner in which it collected and produced discoverable ESI and its compliance with the court approved ESI protocol.   Following this informal hearing the court issued an order on the 14th day of March, 2014 that further defined the scope and duties of the Special Master. See Order (Dkt # 152) (defining scope and duties of Special Master).

## HEARING DATES

The Special Master offers the following dates for the next two hearings: March 28th, March 31st , April 4th , or April 7th.  The Special Master requests that the parties select from the above three dates that will work by end of day March 19, 2014, and send this information to the Special Master. If this is not possible, then the Special Master will order the parties to be available for a telephonic hearing on Tuesday, March, 20, 2014 at 10:30am PT for 30 minutes to resolve scheduling issues.

All hearings will be held at the Las Vegas court house with a court reporter present unless the parties agree a court reporter is not necessary. The Special Master will coordinate with the court to confirm space is available.

All hearings will start at 9:00am PT. For the first and second hearing the Special Master expects the hearings to be at least six hours. The Special master orders the parties to be *PREPARED* and their *ESI EXPERTS TO BE AVAILABLE* either by phone or in-person.

The Special Master orders the parties to provide all materials to be discussed at the hearing 24-hours prior to the hearing.

## FIRST HEARING

In the first hearing, the Special Master intends to cover several issues, including the following:

- Verify that UMC on-going preservation efforts are in compliance with the litigation hold/preservation letters sent by Plaintiffs' counsel.
- Detailed review of the ESI collected by UMC to date that is in Joseph Edmondson's possession.
- Results of UMC efforts to resolve the errors with the initial data collected.

## I.     VERIFY UMC ON-GOING PRESERVATION EFFORTS ARE IN COMPLIANCE WITH THE LITIGATION HOLD/PRESERVATION LETTERS SENT BY PLAINTIFFS' COUNSEL.

The Special Master seeks to verify that UMC is properly preserving potential ESI relevant to the parties' claims and defense in this matter and is in full compliance with the litigation hold/preservation letter sent by Plaintiffs' counsel on a going forward basis.

The Special Master orders the parties to provide the following information at the date set-forth below where no date and time is specified the parties are to provide the information 24 hours prior to the first hearing.

1. *UMC Policies*: UMC is to provide data-backup and disaster recovery policies and the details of software and hardware used in this effort currently and for the time period in question. UMC is to also identify the IT individual responsible for these systems and make said individual available for the first hearing. If this individual is not available for the first hearing, the Special Master requires a declaration from this individual that details the software, hardware, policies, and practices for data-back and disaster recovery today and for the time period governing this dispute.

2. *Custodian Interviews*: UMC is to provide to the Special Master for in-camera review the custodian interviews of the five initial custodians on or before the end-of-business on the 22nd day of March, 2014. If this information was not collected by UMC or Counsel, the Special Master orders UMC to collect this information, using the custodian interview template attached to this order, and provide the results to the Special Master 48 hours prior to the first hearing. See Exh. A ("Custodian Interview Forms).

3. *On-going Preservation Efforts*: UMC is provide a data-map of the ESI involved in this litigation for in-camera review on or before the 23rd day of March, 2014.  If no data-map exists, then the Special Master orders UMC to explain why no ESI data-map exists and how Counsel for UMC educated themselves about UMC's information and record keeping systems.  At the first hearing, UMC should be prepared to discuss the steps UMC took to preserve each ESI repository identified in the custodian interviews.  In addition, UMC should be prepared to discuss what technical problems it encountered in preserving this data and to the extent that data that should have been acquired, was not.

4. *UMC Initial Collection*: UMC will bring to the first hearing an IT individual that can access UMC systems and demonstrate to the Special Master  that the ESI is being preserved – including mobile devices. See JOINT STATUS REPORT (Dkt # 128) (discussing statements by Defendant as to the initial work performed by UMC's ESI

contractor and the oral statements made by the UMC CIO that an internal UMC employee performed the collection at the hearing on the 10th day of March, 2014. If no such individual is available or UMC systems do not allow for remote verification, UMC is to notify the Special Master in writing on or before the 23rd day of March, 2014. The Special Master orders UMC to be able to discuss a viable alternative mechanism that achieves the same result at the first hearing.

The intent of the work set-forth above is to verify for the court that UMC is properly preserving potential ESI relevant to the parties' claims and defense in this matter and is in full compliance with the litigation hold/preservation letter sent by Plaintiffs' counsel on a going forward basis. In addition, the Special Master will use this information in making a determination as to the completeness of UMC initial collection, preservation, and production.

## II. DETAILED REVIEW OF THE ESI COLLECTED BY UMC TO DATE THAT IS IN UMC AND JOSEPH EDMONDSON'S POSSESSION.

The Special Master seeks to determine the completeness of UMC initial collection, preservation, and production. The Special Master orders the parties to provide the following information identified below.

1. *Chain-of-Custody for Evidence in Joseph Edmonson and UMC Custody*: The Special Master orders UMC to provide in-camera to the Special Master completed Chain-of-Custody for all evidence collected 24-hours prior to the first hearing. <u>See</u> Exh. B (Law & Forensics chain-of-custody forms part 1 and part 2).

2. *UMC Collection Efforts*: The Special Master  orders UMC to identify the individual(s) who performed the identification of responsive data and the individual(s) who performed the collection and make those individual(s)  available in-person or over the phone for the first hearing to answer questions, including:
   o What criteria was used to identify and distinguish between responsive data and non-responsive data?
   o What audits were performed to confirm that the identification of responsive data was complete?
   o How much total time was spent identifying responsive data?
   o Was there any data that was initially identified as responsive that was not accessible for collection?
   o What is the possibility that data that was identified as responsive was not collected?
   o Where there any unexpected logistical issues that prevented the identification of responsive data from within UMC's technological infrastructure?
   o Who they received the request to perform the collection?
   o Whom did they collect data from?
   o What systems/software they collected data from?
   o How did they collect the data (e.g., software and configuration of software)?
   o When did they perform the collection?
   o When did they receive notice to perform the collection?
   o Where there any technical collection failures that occurred.
   o Were hash digests generated for the evidence items collected?  Has anyone verified that these hash values are capable of attesting to the integrity of the data collected?

If the individual(s) is not available to testify at the first hearing, the Special Master orders UMC to submit a declaration prior to the first hearing that answers the aforesaid questions, as well as, the additional following information:

- Individuals experience in performing collections.
- Any written records relating to the date the individual received notice to perform collection.
- The software and version used to perform collection.
- The protocol used to perform the collection.
- The steps taken to preserve the evidence collected including Blackberry personal device(s) and Blackberry server(s).
- Discussion of any issues that may have arose in performing the collection and the steps taken to correct these issues.

The Special Master will use this information to verify that UMC did properly collect, preserve, and search the ESI relevant to the parties' claims and defense in this matter and that UMC prior efforts were in full compliance with the litigation hold/preservation letter sent by Plaintiffs' counsel. The Special Master will also use the information to determine the completeness of UMC initial collection, preservation, and production.

### III.   Results of UMC efforts to resolve the errors with the initial data collected.

The Special Master orders the parties to provide the following information in writing to 24-hours prior to the first hearing.

1. *Paraben Software*: UMC is to clarify whether the Paraben version used is compatible with the e-mail boxes that were provided based on published release notes or user manuals.   No more than a single page.

2. *Mailboxes Collected*: Provide a file list of the e-mail archives collected and provided for each custodian to the Special Master for in-camera review.  The information should be provided to the Special Master as an Excel file. If UMC not available to possible the information in Excel format, the Special Master orders UMC to provide it in whatever format and a written explanation why they were not able to provide as Excel spreadsheet. No more than a single page.  The list is to include technical details that address the size and quantity of each archive, its respective IT owner, the name of the e-mail administrator responsible for this archive, and the details of where the back-ups for each respective archive currently reside.

3. *Scan/Repair*: The ESI Expert for UMC is to provide a written statement to the Special Master that details the process and results of the scan/repair effort discussed in the initial hearing on the mailboxes identified by Plaintiffs' in the declarations discussed at the initial hearing. See Pixley Declaration (Dkt #145).

4. *Alternative Software E-mail Box Processing Recommendations*: ESI experts from both sides may submit recommendations as to alternative software to process the UMC e-mail collected. Recommendations are to be limited to two pages and to include where possible pricing and point of contacts for any software recommend. Both sides ESI experts should be prepared to discuss any recommendations they provide at the first hearing.

The intent of the work set-forth above is to resolve the ESI production issues set-forth in the Joint Status Report (Dkt #148) and to determine the completeness of UMC initial collection, preservation, and production.

The Special Master intends to start a rolling production from UMC to Plaintiffs' if possible with specific dates at the end of the first hearing.

**IV.     MODIFY THE COURT ORDER WITH REGARDS TO THE STIPULATED ELECTRONICALLY STORED INFORMATION PROTOCOL TO REFLECT THE NEW META-DATA FIELDS.**

The Special Master orders the parties to confer and amend the stipulated Electronically Stored Information Protocol on March 18, 2013 (Stipulation Dkt #77), so that it reflects the new meta-data fields agreed upon for the third production that were mentioned during the informal hearing held on the 10th of March, 2014 and provided in e-mail to the Special Master by UMC Counsel.

The Special Master orders the parties to complete this 24-hours prior to the first hearing and file it with the court.

**SECOND HEARING**

Second hearing, will be used to address any issues not covered in the first hearing.

**TIME ESTIMATE**

The Special Master at this time is unable to provide a precise estimate as to the amount of time required to perform the work set-forth above until all materials have been provided. However, based on the initial hearing and the materials provided to date the Special Master offers a best-guess that he will require a minimum of 55 additional hours to complete the work set-forth above with respect to the two hearings plus any administrative costs.

**SO ORDERED:**

Daniel B. Garrie
Electronic Discovery Special Master

Dated this 17th day of March, 2014.

**E-Discovery Playbook: Sample Custodian Interview Form**

*Witness Interview Outline- General Employee*

I.    Preliminary Information

    A.    Represent [CLIENT]- here to locate and preserve all electronic and hard copy documents, including e-mail, related to [ACTION] and the devices that are subject to the action. A more substantive interview may come later.

    B.    Explain attorney-client privilege-keep discussion confidential; do not discuss case with others, except the attorneys.

    C.    Explain outline of the case - concept of what information is relevant in that context. Include specific discussion of:

        1.    Design and development of "Accused Products" cases and display

        2.    Sales, marketing, and advertising efforts concerning "Accused Products"

        3.    Evidence of profit and/or loss from the brand

    D.    Explain Preservation Duty

        1.    Do you have in your possession any documents or other ESI that may be relevant?

        2.    Discuss steps to preserve documents and ESI

    E.    Explain upcoming preservation memo and Acknowledgement Form.

II.    Background

    A.    Obtain Business Card

        1.    Educational background  _____

        2.    Length of Employment w/ COMPANY _____

            a.    Title-*responsibilities(present and past)*

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Law & Forensics © 2014.

Exhibit A

**E-Discovery Playbook: Sample Custodian Interview Form**



3. Identify other people who may have information relevant to these matters:

4. Discuss meaning of documents and electronically stored information. Explain non-identical documents (including discussion of marginal notes).

III.   Non-Electronic Documents

A. General description of location of non-electronic records or types of non-electronic records-even if duplicates- *that may relate to "Accused Products"*

1. Within the above, are there:

   a. Documents kept outside office (e.g., home): Yes___   No___

   b. Reports: Yes___   No___

   c. Presentations from meetings: Yes___   No___

   d. Printed emails or other documents: Yes___   No___

   e. Calendar entries: Yes___   No___

   f. Documentation of discussions: Yes___   No___

   g. Meeting minutes where relevant issues discussed: Yes___   No___

   h. Marketing materials: Yes___   No___

   i. Advertisements: Yes___   No___

B. Org charts- does department maintain one? Yes___   No___

C. Do you use central or departmental files for work materials (*that may relate to "Accused Products"*) Yes___   No___

IV.   General Computing Usage



**E-Discovery Playbook: Sample Custodian Interview Form**

A.  Use a desktop computer? Lap top? _____

    1.  How long have you been using this lap top or desk top?

    2.  When did you get your current device

        a.  Laptop_____

        b.  Desktop_____

        c.  PDA_____

    3.  Copy data from last computer onto current? Yes__   No__

    4.  Who did the migration of the data? _____

    5.  What happened to the prior computer?

    _____

    _____

    _____

B.  What types of applications do you use?

    1.  Word-          Yes__   No__

        a.  Do you track revisions?      Yes__   No__

    2.  Excel-           Yes__   No__

    3.  PowerPoint-    Yes__   No__

    4.  Access-        Yes__   No__

    5.  Outlook-       Yes__   No__

    6.  Microsoft project- Yes__   No__

    7.  Any others that may be used for relevant documents-    Yes__   No__

    _____

    _____

    _____

C.  Where do you save your work? (try to record full path of where data is stored)

    1.  Print out and save paper-  Yes__   No__

        a.  Office file cabinets-  Yes__   No__

        b.  Central files-      Yes__   No__

        c.  Other-          Yes__   No__

    _____

    _____

    2.  On your computer-     Yes__   No__

        a.  Hard drive, e.g., C: or network drive names or designations:

**E-Discovery Playbook: Sample Custodian Interview Form**

_____

_____

    b.  Your network directory?

_____

_____

    c.  Shared files space you use?

_____

_____

    d.  Save in your email folders-    Yes__   No__

        (1) Inbox?-          Yes__  No__

        (2) PSTs?-         Yes__  No__

           Where?

_____

V.      Email:

    A.  New Policies or Practices

        1.   Are you aware of the recent changes in the document retention policies or practices?

_____

_____

2. What changes were made?

_____

_____

When?

_____

_____

_____

        a.  Was this the date (03/01/2006) that you had been notified the changes would be implemented?

**E-Discovery Playbook: Sample Custodian Interview Form**

_____

_____

_____

       b.   Were former archive folders and personal folders removed on 03/01/2007? If not, when did this occur?

_____

_____

       c.   Were all other changes surrounding this new policy implemented in the same day? If not, how long did it take start to finish?

_____

_____

_____

2.   How was it communicated to you?

_____

_____

_____

3.   Do you have written communications concerning the new policies or practices?

_____

_____

_____

4.   What did you do to implement the new program?

_____

_____

_____

       a.   When?

_____

_____

B.  How do you organize the emails that you get (***that may relate to "Accused Products"***)

_____

**E-Discovery Playbook: Sample Custodian Interview Form**

1.  Do you create folders within your inbox?

    a.    Is the process you use much different than what you did under?
          COMPANY's old ESI policy?

2.    Where do you store your PSTs, if any?

    a.      Did you ever use PST's even before the change in COMPANY policy?

C.   What are the steps you take on the computer to save your emails?

D.  Do you continue to receive emails (*that may relate to "Accused Products"*)?



**E-Discovery Playbook: Sample Custodian Interview Form**

      E.   Are you a member of any email list from which you might receive information about the "Accused Products"

      _____

      _____

      _____

VI.      Handheld Devices

      A. Do you use PDA?          Yes\_\_  No\_\_

      B. Do you sync with the office?  Yes\_\_  No\_\_

         Discuss

      _____

      _____

      _____

VII.    Encryption

      A. Ever password protect project work or documents?  Yes\_\_  No\_\_

      B. Do you encrypt your work?          Yes\_\_  No\_\_

      C. How? _____

      D. What is your password_____?

VIII.  Instant Messaging

      A. Do you use instant messaging?      Yes\_\_  No\_\_

      B. Have you used IM to communicate about the "Accused Products"?

      C. If so, do you save any IM's (can your IM's be saved? How?  Where?)

IX.      Voicemails

      A. Do you keep them?          Yes\_\_  No\_\_

      B. Do you have any related to the "Accused Products"?  Yes\_\_  No\_\_

      If so, when did you receive? Did you save them?

      _____

X.      Removable Media

    A. Do you save work on any of the following?

      1.    External Hard Drive-        Yes\_\_  No\_\_



**E-Discovery Playbook: Sample Custodian Interview Form**

      2.  USB Drive (thumb drive/Flash Drive/memory stick)    Yes__ No__

      3.  CD or Floppy?    Yes__ No__

XI.     Home or Other Companies

    A. Do you work from home or elsewhere using a computer?    Yes__ No__

    B. How do you access the office files on your computer?

          _____

          _____

          _____

    C. If so, discuss preservation of home data?

    D. Have you saved anything at home related to the "Accused Products"?

          _____

          _____

XII.    Conclusion

     Can you think of any other sources that might have any of your information about "Accused Products" that we have not addressed today?

          _____

          _____

    A. Determine the employee's general relationship to the issues in the litigation.

        1. *Key* – Has significant knowledge of/involvement with at least one relevant issue:

        2. *Secondary – Has tangential knowledge of one or more relevant fact;*

        3. *Custodial* – No first-hand knowledge of facts relevant to the subject matter of the action, but has knowledge relating to the location or retention or preservation of relevant information;

        4. *No relevant knowledge* relating to issues in litigation, including substantive issues and custodial issues.

**CIRCLE ONE:**      ***Key    Secondary    Custodial       No relevant knowledge***

    B. Future Involvement

      1. *Active* – Is this person still involved with the "Accused Products"

        •  Ask custodian to preserve all documentation going forward and advise that we will be conducting supplemental sweeps to gather additional ESI

      2. *Historical* – Is this person no longer involved in the "Accused Products"

        **CIRCLE ONE:**      ***Active       Historical***



**E-Discovery Playbook: Sample Custodian Interview Form**

**Checklist to Identify Types of Discoverable Digital Information**

This checklist will aid Counsel it identifying types of data formats, types of repositories, and types of often overlooked repositories for ESI.

*A. Types of Data Formats*
- o Identify records created in different applications such as spreadsheet, word processing, and [SPECIALTY SOFTWARE PROGRAMS]. These may be stored on the hard drive of a local terminal, exchange servers, USB drives, and backup disks. These records may reflect, for example, customer lists, financial records, purchase and sales reports, and personnel files.).
- o Identify original documents such as letters, memoranda, and invoices. Of particular interest are drafts of original documents such as letters or memos. A draft may contain a line or two discussing potential liability for a course of action that may not be included in the final letter or memo.
- o Computer operation logs recording usage information for instant messenger, shared drive, user drive, etc.
- o Logs and text of email, including 'trashed' or deleted messages, and message drafts.
- o Logs and text of internal instant messaging service from backup disk.
- o Voicemail transcriptions.

*B. Types of Repositories*
- o Databases used by [CLIENT], such as [_____].
- o Computer programs evidencing a particular process, incorporating specific information, or demonstrating the use of proprietary methodologies.
- o Email servers
- o File servers
- o Desktops and onsite laptops.
- o Home computers
- o PDAs
- o Shared directories
- o Backup disks
- o CDs, DVDs
- o Cell phones
- o Flash memory sticks, thumb drives
- o MP3 players
- o iPads
- o Voice over Internet Protocol (VoIP) phone systems, such as Skype
- o Online repositories:
    - o Corporate workflow programs such as Sharepoint
    - o Third-party applications such as Google docs, Salesforce.com, Dropbox, etc.
    - o Third-party email applications, such as Gmail or Yahoo!
    - o Social networks, such as Facebook, LinkedIn, and Twitter

# [Company Collecting]

**Evidence Item:** _____

**Holding Cabinet Inventory**

Case Number#: _____

Item #: _____

Evidence Tag ID #: _____

| Individual _storing_ evidence: | Date: | Time: |
|---|---|---|
| Name: | ID: | Phone: |
| Signature: | | |
| General Description of This Evidence: | | |
| | | |

**Note: all evidence accepted for storage should be _sealed_, _labeled_ and _initialed_ in accordance with best practices for evidence storage.**

| Status[1] | Destination | ID[2] or Tracking # | Name of Person Initiating This Action | Date | Time |
|---|---|---|---|---|---|
| | ☐ Internal<br>☐ External | | | | |
| | ☐ Internal<br>☐ External | | | | |
| | ☐ Internal<br>☐ External | | | | |
| | ☐ Internal<br>☐ External | | | | |
| | ☐ Internal<br>☐ External | | | | |
| | ☐ Internal<br>☐ External | | | | |
| | ☐ Internal<br>☐ External | | | | |
| | ☐ Internal<br>☐ External | | | | |
| | ☐ Internal<br>☐ External | | | | |
| | ☐ Internal<br>☐ External | | | | |
| | ☐ Internal<br>☐ External | | | | |

[1] "In" when receiving for cabinet storage or "Out" when releasing to investigator or other authorized person.

[2] For internal transfers, record ID of receiving person.  For external transfers, record receipt or case tracking number used by outside law enforcement agency (or other) to track their evidence internally.

_Law & Forensics © 2014._
_High Confidential Information_

Exhibit B

# Company Name

**[Address]**
**[City], [State] [Zip Code]**
**[Licenses if any]**

Item # _____

Evidence Tag ID # _____

_____
Size of Storage Device

## Registration of Physical Evidence

## Item # _____

Case #:  _____

| Court Case: | |
|---|---|
| Generic description of evidence: | |
| Item quantity: | |

| | | |
|---|---|---|
| Source of evidence: | | |
| Location acquired from: | | |
| Identifying details: | | |
| | | |
| | | |

| Acquired by: | ID:  N/A | Phone: |
|---|---|---|
| Date acquired: | Time acquired: | |

| Expected Evidentiary Value: |
|---|
| (Pending) |

| What to look for if further analysis required: |
|---|
| (Pending) |

| Additional comments: |
|---|
| |

| If item acquired is a storage device include the MD5 hash value for the entire image acquired: |
|---|
| MD5: _____ |

| Individual **providing** evidence: | Date: | Time: |
|---|---|---|
| Name: | ID:  N/A | Phone: |
| Signature: | | |

| Individual **receiving** evidence: | Date: | Time: |
|---|---|---|
| Name: | ID:  N/A | Phone: |
| Signature: | | |

*Law & Forensics © 2014.*
*High Confidential Information*