**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DANIEL SMALL, et al.,, | NO.  2:13-cv-00298-APG-PAL |
| *Plaintiff,* | |
| v. | **SPECIAL MASTER DANIEL B. GARRIE E-DISCOVERY SUMMARY AND ORDER** |
| UNIVERSITY MEDICAL CENTER OF SOUTHERN NEVADA , | |
| *Defendants.* | |

**BACKGROUND AND PRIOR PROCEEDINGS**

Special Master Garrie was appointed on March 3, 2014.  (Dkt. No. 149.)  On March 10, 2014, the parties, counsel for all parties, and ESI consultants for all parties, met with Special Master Daniel Garrie and United States Magistrate Judge Peggy Leen in chambers. (Dkt. No. 151.)  On March 18, 2014, Special Master Garrie memorialized his directives to the parties in a written order.  (Dkt. No. 154.)

Special Master Garrie conducted multiple hearings on the following dates: April 4, 2014; April 7, 2014; April 10, 2014; April 15, 2014; April 27, 2014; May 1, 2014; May 6, 2014; May 20, 2014; June 3, 2014; June 16, 2014; June 26, 2014; July 3, 2014; July 19, 2014; July 25, 2014; July 28, 2014; August 4, 2014; and August 8, 2014, with counsel, the parties' representatives, and consultants regarding UMC's ESI collection and production issues, as well as UMC's efforts to comply with the ESI Protocol with respect to collecting, searching, and producing ESI from databases.  UMC's paper production of responsive documents, and outstanding issues surrounding UMC preservation, collection, and production of ESI from the newly discovered timekeeping systems.

**A. UMC Failed To Comply With The ESI Protocol As To The Production Of Responsive ESI Contained In Databases.**

At the hearing on August 8, 2014, Counsel for UMC informed Special Master Garrie that Mr. Edmondson, UMC's existing ESI Vendor, failed to comply with the handling of databases as

set-forth in the Amended ESI Protocol (Dkt. 165) stipulated to by the Parties.  *See* (8/08/14 transcript), at 66-71 (discussing UMC's failure to identify databases as required under the ESI Protocol). At this hearing, it was established that Mr. Edmondson had not processed, searched, and produced the database ESI. *See* (8/8/14 transcript), at 67.

### B.  Hard Copy Document Production

At the April 22, 2014 hearing, Special Master Garrie ordered UMC to construct a document index for the hard copy document review hearing. *See* (4/22/14 transcript), at 227. During the June 16, 2014 hearing, the Special Master Garrie heard positions of both parties on hard copy review and substantial conferring by the parties off the record transpired. As a result of this dialogue, the parties reached an agreement regarding in-person review of hard copy documents at UMC, document indices, and custodian declarations. See (6/16/14 transcript), at 110:15-112:24; *see id.* at 106:23-107:5.

Between April and July of 2014, UMC worked to comply with these orders.  However, in late July of 2014, UMC counsel's asserted that Plaintiffs' counsel's use of the word "production" instead of "inspection" changed the protocol such that UMC was no longer required to comply with the prior orders and agreement it had reached around the production of paper documents. Instead UMC sought to produce departmental documents scanned on CDs, without indices, and submit custodian declarations at later dates. *See* Exs. A, B (Plaintiffs' and UMC's Letter Briefs).

### C.  Preservation, Collection, and Production of Responsive ESI from UMC Timekeeping Systems[1]

---

[1] The TeleTracker system includes meal period data for Environmental Services and Transport department employees and the CrimeStar system includes such data for public safety employees. This data is "not captured in Kronos."  *See* Ex. C June 25, 2014 Counsel Witty Letter.

2

1    At the July 28, 2014, August 4, 2014, and August 8, 2014 hearing, Special Master Garrie

2    ordered UMC to provide declarations from individuals including: <u>David Williams</u> a System

3    Administrator in UMC's information technology ("IT") department;[2] <u>Carmelito Mendoza</u>, a

4    Database Analyst in UMC's IT department;[3] <u>John Rendall</u>, Director of Environmental Services

5    & Patient Transport; <u>Jessica Monje</u>, Manager, Service Response Center; <u>Bill Pellegrino</u>,

6    Director, Patient Placement, <u>Tana Wisniewski</u>, IT Support for GRASP, and <u>Linda Williams</u>,

7    Nursing Supervisor.[4]

8         Special Master Garrie determined that UMC's IT department supports these timekeeping

9    systems by bifurcating support into application and database support. *See* (8/8/2014 transcript) at

10   14:8-21 (Mr. Mendoza testifying that he is the database owner but not the application owner for

11   the timekeeping systems within the IT department).  It was also established that these additional

12   timekeeping systems were used by members of the opt-in Plaintiffs class, and that each of these

13   systems can be used to track scheduled meal breaks, with the possible exception of GRASP). *See*

14   Ex. C (June 25, 2014 Witty Letter).[5]  It was also determined that all the timekeeping systems,

15   except TeleTracking and possibly Clarity depending on how user time entries were captured,

16   permitted users (including opt-in Plaintiffs) to overwrite the data entered.  This made it necessary

17   for UMC to have preserved a copy of the data in the timekeeping system to prevent possible loss

---

[2] Mr. Williams was identified as an individual knowledgeable about TeleTracking, Crimestar, GRASP, and Clarity applications at UMC.

[3] Mr. Mendoza was identified by Counsel for UMC as the only individual with the most knowledge concerning these systems from the database perspective.

[4] Mr. Williams identified John Rendall, Jessica Monje, and Bill Pellegrino as individuals at UMC knowledgeable about the TeleTracker timekeeping system. *See* Ex. D August 7, 2014 declaration of David Williams at ¶4.  Mr. Williams also identified Lorraine Noonan, Linda Williams, and Tana Wisniewski as individuals knowledgeable about GRASP. *Id.* at ¶6.

[5] Testimony on this point was often inconsistent or contradictory.  *See e.g.* Ex. E July 8, 2014 Williams Declaration at ¶ 4 (stating data was preserved); Ex. F August 7, 2014 Gurrola Declaration at p.3 (stating there is no data retention policy for CrimeStar).  At this stage, UMC's only option to demonstrate that responsive ESI was not destroyed from these three timekeeping systems is to allow Special Master Garrie to conduct an on-site forensic analysis of each of the systems and determine that responsive ESI was neither lost nor deleted.

3

1  of ESI.[6] *See* (8/4/14 transcript), at 125-127; Ex. G (8/7/2014 Linda Williams declaration), at ¶2

2  (stating users could alter data in GRASP during a 24 hour period and that GRASP has a 6 month

3  retention period); Ex. F (8/7/14 Gurrola declaration), at ¶¶ 4-5 (stating that managers and

4  supervisors can make changes to Crimestar reports).[7]

5      At the August 8, 2014 hearing, it was established by UMC's counsel that there is no

6  individual at UMC with sufficient skill, knowledge, or expertise with any of the four time-

7  keeping systems to ensure collection, search, and production of responsive ESI from these

8  systems.  *See* (8/8/2014 transcript) at 44:1-4, 44:18-25, 45:1-2, 48:13-17 (UMC agrees to

9  identify individuals who can address issues with proprietary database systems).

10

11

12

13      **IT IS HEREBY ORDERED THAT** UMC is to collect, search, and produce all

14  responsive ESI contained in all databases identified by Plaintiffs and UMC on or before August

15  11, 2014 pursuant to the ESI Protocol no later than August 29, 2014, and UMC is to retain a

16  vendor with appropriate skills and expertise to facilitate a timely and orderly production of this

17  ESI;

18      **IT IS HEREBY FURTHER ORDERED THAT** UMC is to provide scanned copies of

19  departmental documents, along with accompanying indexes and custodian of records

20

21  _____

22  [6] While Mendoza states that only he had the ability to delete data from timekeeping systems (and that he did not delete data), he also states that it may be possible for users of TeleTracker,
23  Crimestar, and GRASP to remove data from these systems.  See Ex. H August 1, 2014 declaration of Carmelito Mendoza at ¶4.  He also states he does not know of any specific data
24  retention policies for the timekeeping databases Clarity, TeleTracker, Crimestar, and Grasp.  *Id.* at ¶5.  It therefore at best unclear whether users could altered or removed timekeeping data.
25  [7] UMC witnesses have stated that the GRASP system does not contain responsive data, but were
26  unable to provide information from any witness with an IT function on this issue.  See Ex. I August 7, 2014 Declaration of Tana Wisniewski, IT Supervisor of Clinical Analysts, at ¶5
27  (stating that Linda Williams, a registered nurse, is the person with knowledge of data on the GRASP system).
28

4

declarations,[8] prepare a document index for these documents as previously agreed and ordered by the Special Master (4/22/2014 transcript at 227; 6/16/14 transcript, at 110:15-112:24; *see id.* at 106:23-107:5), and UMC is to produce at least seven (7) departments per week starting the week of August 18, 2014 with the document index and the appropriate custodian declarations relating to the hard-copy documents; and

**IT IS HEREBY FURTHER ORDERED THAT** UMC is to produce all responsive ESI contained in the Clarity, GRASP, TeleTracker, and CrimeStar timekeeping systems no later than September 3, 2014 in the following manner:

- On or before August 11, 2014 Plaintiffs shall review and identify additional database files for processing.[9]
- On or before August 11, 2014, UMC shall confirm that its new ESI vendor has seen and understood the Amended ESI Protocol [Dkt. 165] in this matter.[10]
- The parties shall coordinate a call on UMC proprietary database ESI for August 13, 2014 with all ESI vendors and the Special Master.[11]
- On or before August 14, UMC is to identify individual(s) with sufficient skill and expertise with each of the timekeeping systems at issue. After identifying the individual(s), UMC is to provide the credentials to Plaintiffs.
- On or before August 22, 2014, the individual(s) identified by UMC as an expert in the respective timekeeping system, is to go onsite to UMC and ascertain the following for the respective timekeeping system: How UMC uses the particular timekeeping system; What data was captured in the timekeeping system (e.g., lunch breaks or start time); How the database and application pieces for each of the timekeeping system has been implemented at UMC; What reports and other output the particular timekeeping system can provide; How each of these timekeeping systems are set-up at UMC.
- On or before August 29, 2014, UMC is to provide the Plaintiffs with a status update regarding its production of timekeeping system ESI.

---

[8] All productions will be in compliance with the ESI Protocol.

[9] The Parties discussed this deadline at the August 8, 2014 hearing.  See (8/8/2014 transcript) 68:2-9.

[10] The Parties agreed to this deadline at the August 8, 2014 hearing.  See (8/8/2014 transcript) at 35:16-25, 36:1-5, 66:21-23, 67:3-4.

[11] The Parties discussed and agreed to this deadline at the August 8, 2014 hearing.  See (8/8/2014 transcript) at 58:2-14.

- On or before September 3, 2014, UMC is to produce all responsive ESI for each of these time keeping systems to Plaintiffs in accordance with the ESI Protocol.

**ADDITIONAL HEARINGS**

A one-hour hearing is tentatively scheduled for August 15, 2014 at 14:00 PST to discuss any technical issues that may arise or require further clarification from the supplemental declarations of Mr. Mendoza, Mr. Schaibley, and Mr. Edmondson.


**SO ORDERED**:

_____

Daniel Garrie, Esq.

Electronic Discovery Special Master


DATED this 11th day of August, 2014.

6

Exhibit A



# TOSTRUD
LAW GROUP, PC

August 4, 2014

<u>VIA ELECTRONIC TRANSMISSION</u>

Special Master Daniel Garrie
Law & Forensics
16192 Coastal Highway
Lewes, DE 19958
Email: Daniel@ lawandforensics.com

Re: *Small, et al. v. University Medical Center of Southern Nevada,*
Case No: 2:13-cv-00298-APG-PAL; <u>Plaintiffs' Response re Hard Copy Index</u>

Special Master Garrie:

Plaintiffs submit this response to UMC's letter of July 31, 2014. This letter sets forth Plaintiffs' position concerning: (i) the review of hard copy documents in this matter, including documents maintained at the departmental level (*e.g.*, schedules, assignment sheets, attestation forms); (ii) UMC's related agreement, and the corresponding orders, to provide an index and contemporaneous custodian declarations, both of agreed-upon form and content, relating to the hard copy document productions; and (iii) and UMC's unilateral change of course as related to the foregoing, in violation of your prior orders.

During the June 16, 2014 hearing, after hearing the positions of both parties on hard copy review and substantial conferring by the parties off the record which resulted in the agreement regarding in-person review of hard copy documents at UMC, document indices, and custodian declarations, the Special Master issued an unambiguous order relating to the production the hard copy documents reflecting the parties' agreement. *See* Ex. A, 6/16/14 transcript, at 110:15-112:24; *see id.* at 106:23-107:5 (UMC confirmed its understanding of the prior order to provide an index, Counsel Witty stated: "We have agreed to a form for the index with plaintiffs' counsel."). UMC was first ordered to construct a document index for the hard copy document review during the April 22, 2014 hearing. *See*, Ex. B, 4/22/14 transcript, at 227. UMC also was ordered to clear approximately 15 departments per week. Ex. A, 6/16/14 transcript at 111:6-25.

In scheduling the first document review, Jon Tostrud wrote to Ms. Witty on July 8, 2014, to check on the status of departmental documents and informed Ms. Witty of Plaintiffs' counsel's intention "to move quickly through the hard copy documents." Ex. C (7/8/14 Jon Tostrud email). With no response from UMC, on July 10, 2014, Mr. Tostrud emailed the Special Master and Counsel Witty, reminding Counsel Witty of the Special Master's June 16, 2014 order regarding production of departmental documents (and other items). Ex. D (7/10/14 Jon Tostrud email). On July 10, 2014, Ms. Witty

responded, in pertinent part: "When Plaintiffs' counsel has completed inspection of the pay period documents, UMC will be able to produce documents from departments on schedule. **As UMC does not believe the pay period document inspection will be completed next week, those [departmental] documents are not being moved to the viewing space.**" Ex. E (7/10/14 Cayla Witty email) (emphasis added).

In response to Plaintiffs' counsel's objection to UMC's stated refusal to provide departmental documents, on July 10, 2014, the Special Master stated: "**I am Ordering UMC to comply immediately with my prior Orders or appeal to Judge Leen.**" Ex. F (7/10/14 Special Master email) (emphasis added). UMC did not immediately comply with the order to provide departmental documents for review, nor did it seek relief from Judge Leen. Rather, Counsel Foley responded on July 11, 2014, that "**UMC will produce the additional records from the departments but will need a bit of time.**" Ex. G (7/11/14 Margaret Foley email) (emphasis added). Plaintiffs' counsel conducted their review of the initial production of Ms. Panzeri's payroll files on July 16 and July 17. UMC provided no departmental documents for Plaintiffs' review.

On July 18, 2014, Mr. Tostrud again emailed UMC to follow up on the ordered production of departmental documents. *See* Ex. H (7/18/14 email chain). The Special Master again acknowledged UMC's violation of his prior orders, and requested that Plaintiffs propose sanctions for UMC's breach. *Id.* Plaintiffs' counsel responded and proposed appropriate sanctions for UMC's violations. *Id.* The Special Master stated that he would defer ruling on Plaintiffs' request for sanctions until July 25, 2014. *Id.*

On July 25, 2014, UMC proclaimed its new intention – contrary to the parties' prior agreements and the Special Masters orders – to produce departmental documents scanned on CDs, without indices, and to have custodian declarations follow at later dates. The Special Master did not order any of the requested changes at that time. On Tuesday, July 29, 2014, per the parties' previous communications, Plaintiffs arrived at UMC for scheduled document review. Again, no departmental documents were provided. Thus, Plaintiffs requested a conference with the Special Master. UMC's counsel's latest explanation for UMC's violations of the Special Master's orders -- a semantic argument claiming that Plaintiffs' counsel's use of the word "production" instead of "inspection" changed the protocol here[1] -- is belied by the significant record on this topic, including the 4/22 and 6/16 hearings. The Special Master thus reiterated his prior orders in a July 29, 2014 telephonic hearing, ordering UMC to provide departmental documents for Plaintiffs' continued inspection, as agreed, that week. Accordingly, Plaintiffs resumed their review on Wednesday, July 30 (which was to continue through August 1). The next day, on July 31, UMC informed Plaintiffs that UMC would provide no additional documents on Thursday or Friday. Ex. J (7/31/14 Kara Wolke email).[2]

While UMC repeatedly asserts confusion and misunderstandings as the reason for its unfounded changes of course in the hard copy review/production, the record on this

---

[1] *See* Ex. I (7/29/14 Margaret Foley email).

[2] Significantly, this occurred about 7 weeks after UMC was first ordered to clear 15 departments per week, and over a year after Magistrate Leen ordered these very documents to be produced.

2

matter is clear.  Moreover, even if there were confusion or uncertainty over the index or other hard copy production issues, UMC took no action to even attempt to clarify such confusion for a period of more than 5 weeks.  Indeed, the Special Master appears to have understood the prior agreement and order perfectly, stating: "**I assumed that the inspection was to occur on-site, and that there was an index to be provided.  And that after certain documents were identified, they were to be produced.**" *See* Ex. K (7/25/14 transcript, at 119:3 – 119:6) (emphasis added).

Pursuant to the clear record and the Special Master's orders, the issue of the document index should have been put to rest by this time.  At no time in the previous five weeks, however, did UMC seek relief from the Special Master's order regarding the hard copy production and index.  Moreover, rather than face the serious consequence of a contempt ruling for its repeated failures to comply with the Special Master Order, UMC chose to groundlessly assert confusion and "mutual mistake" in defense of its failures.[3]  For this behavior, UMC should be sanctioned and a formal discovery referee be appointed at UMC's expense for the duration of this lawsuit.[4]

UMC's misconduct in delaying, violating orders, and unilaterally changing agreed-upon conduct has been pervasive and unprecedented in this case.  Plaintiffs respectfully submit that UMC should not only be held to account for its misconduct, but also held to adhere to the Special Master's prior clear orders and its own agreements.  Accordingly, Plaintiffs respectfully request that UMC be ordered to produce the agreed-upon index and custodian declarations relating to the hard-copy documents.[5]  In the spirit of compromise and accommodation, however, in lieu of on-site inspection, Plaintiffs are willing to accept UMC's recent proposal to provide scanned copies of departmental documents, along with accompanying indexes and custodian of records declarations.  Further, Plaintiffs request that any such scanned/electronic productions be made in strict compliance with the ESI Protocol, and that UMC be placed on a strict schedule for this production that tolerates no further delay and prejudice to these proceedings by UMC.

---

[3] Ms. Foley states in her July 31, 2014 letter: "the doctrine of 'mutual mistake,' studied by first-year law students across the country, seemed to have come startlingly alive."  The facts at bar, however, do not come close to constituting any "mutual" mistake as defined by that doctrine.  In fact, any alleged mistake, as dubious as that claim may be, is strictly unilateral in nature, and 100% on UMC's side.  Moreover, this is not a subject of "informal special master proceedings" as UMC contends.  The hearings at issue were memorialized by a certified Court reporter to avoid any confusion or misunderstanding that UMC now claims occurred.

[4] UMC's excessive use of the excuse of confusion, and misunderstanding as a justification to not follow through on its discovery obligations – as well as its outright unabashed failures/refusals to follow orders – necessitates the continued oversight of a discovery master.  Indeed, even after the July 25 hearing where the Special Master unambiguously ordered UMC to follow through with its production obligations, on Thursday, July 31, UMC still failed to produce departmental documents as ordered.

[5] In light of UMC's acknowledgement and admission of its fault relating to this issue (see UMC's letter at p. 2, fn. 3), Plaintiffs refer to the Special Masters prior orders and ask that those orders be memorialized and renewed in a formal, filed Order with the Court.

3

Sincerely,

/s/ Jon A. Tostrud
Jon A. Tostrud

cc: Michael Mann
    Sid Rao
    Cayla Witty, Esq.
    Margaret G. Foley, Esq.
    Robert W. Freeman, Esq.
    Marc L. Godino, Esq.
    Kara Wolke, Esq.
    David O'Mara, Esq.
    Anthony M. Carter, Esq.
    Bruce Pixley
    Doug Forrest
    Joe Edmondson

4

# EXHIBIT A

Special Master's Hearing    June 16, 2014
***Volume V***

```
 1   much.

 2              I do want the remaining results provided --

 3              THE WITNESS:  Yes.

 4              SPECIAL MASTER GARRIE:  -- as soon as that

 5   is done.

 6              And please just show, counsel for UMC, the

 7   additional Kronos applications you mentioned.  While

 8   they've been provided in the entire Kronos database,

 9   I just want to make sure that all of the data --

10              THE WITNESS:  I can.

11              SPECIAL MASTER GARRIE:  Just show it to

12   them.  Just do as I asked.  Show them the application

13   to make sure.

14              THE WITNESS:  Okay.

15              SPECIAL MASTER GARRIE:  That's it.  Thank

16   you very much.

17              THE WITNESS:  Thank you.

18              SPECIAL MASTER GARRIE:  Let's go off the

19   record for a second.

20              (A discussion was held off the record.)

21              SPECIAL MASTER GARRIE:  I want to check in

22   really quickly with the hard copy index.

23              Counsel for UMC, can you please give me an

24   update?

25              MS. WITTY:  We have agreed to a form for
```

Special Master's Hearing   June 16, 2014
***Volume V***

```
 1   the index with plaintiffs' counsel.  We are beginning
 2   to contact the individual custodians for the specific
 3   groups of documents that have been identified as for
 4   the index.  This is a list of more than 130
 5   individuals throughout the UMC.
 6            SPECIAL MASTER GARRIE:  Is it clear why
 7   former counsel hadn't found these paper documents?  I
 8   realize you can't testify for former counsel, but I
 9   was reading through all of the e-mail exchanges
10   around this, and it's a little befuddling to me that
11   given that Ms. Panzeri testified that they were
12   literally in her office.  It wasn't like --
13            MS. WITTY:  A significant amount of the
14   documentation from Ms. Panzeri's office, as well as
15   some of the other documents that are referenced in
16   the hard copy index, will be duplicative of
17   information that has already been produced, either
18   through the opt-in packets or electronic versions.
19            However, we do believe that there is
20   specific information, most notably the attestation
21   forms, that were not kept prior to October of 2012,
22   and would not have been an initial document collected
23   by prior counsel.
24            SPECIAL MASTER GARRIE:  Okay.  I just
25   wondered.
```

All-American Court Reporters (702) 240-4393
www.aacrlv.com

Special Master's Hearing    June 16, 2014
***Volume V***

```
 1   readdress with plaintiffs' counsel.  The reason being
 2   is that many of these forms are for a specific date,
 3   and they have asked for the date range for the
 4   documents for each opt-in.
 5           If an opt-in had a document from October of
 6   2012, and another document from March of 2013, it's a
 7   huge span of time, but we only have two documents
 8   from that.  And because we believe that the more
 9   specificity the better, it takes an extreme amount of
10   time to go through all of those documents to make
11   sure that the dates are precise.
12           SPECIAL MASTER GARRIE:  Let's go off the
13   record.
14           (A discussion was held off the record.)
15           SPECIAL MASTER GARRIE:  I'm going to order
16   by the end of the week UMC to confer with their
17   client at lunch and hopefully identify a room to put
18   in the 48-plus banker boxes related to Ms. Panzeri's
19   collection, as discussed earlier in these hearings;
20   for plaintiffs to start reviewing pursuant to the
21   protocol set forth.
22           I'm also going to order UMC by the end of
23   next week to have identified all the 87 individuals
24   to collect the attestation forms from.
25           I'm going to also order UMC to, by the end
```

All-American Court Reporters (702) 240-4393
www.aacrlv.com

Special Master's Hearing    June 16, 2014
***Volume V***

```
 1    of next week, to have started producing the meeting
 2    minutes and other items Counsel Witty will state
 3    right now.
 4              MS. WITTY:  You're going to allow us time
 5    to look at the list?
 6              SPECIAL MASTER GARRIE:  Yes.  So after
 7    lunch, UMC will present specifically what will be
 8    coming on a roll-in basis.
 9              I'm also going to order UMC to do their
10    best efforts to clear 15 departments a week.
11    Recognizing from plaintiffs' side that there will be
12    some weeks when you will get 20 and some weeks you
13    will get five, because there will be departments of
14    one and then departments of hundreds.
15              So it will vary, so they have a plus or
16    minus factor of four.  So anywhere between 11 and 19
17    boxes could come across.
18              If it requires additional time, please let
19    me know after lunch.  But I'm assuming that once you
20    identify the individuals, it's just a matter of
21    getting on the phone with them and making them get
22    you the paperwork and then sending someone over to
23    collect it.
24              Am I missing something?  Counsel for UMC is
25    that --
```

Special Master's Hearing   June 16, 2014
***Volume V***

1          MS. WITTY:  The only thing that we ask is

2     that previously it had been discussed that UMC would

3     provide custodian of record declarations, if there

4     was any specific information.

5          SPECIAL MASTER GARRIE:  Fair enough.

6     Plaintiffs is to specify exactly what they want in

7     the custodian of record declarations, what

8     information they want.

9          MR. TOSTRUD:  And these are for the

10    individual departments, correct?

11         SPECIAL MASTER GARRIE:  As to whatever was

12    agreed upon earlier between you.

13         MR. TOSTRUD:  Okay.  That's fine.

14         SPECIAL MASTER GARRIE:  You have to provide

15    that to them by Wednesday.

16         MR. TOSTRUD:  Okay.

17         SPECIAL MASTER GARRIE:  Once you get that,

18    that's supposed to come with each box, right?  I'm

19    assuming -- is that reasonable?

20         MS. WITTY:  Yes.

21         SPECIAL MASTER GARRIE:  So as the boxes

22    come across, the declarations will come as well.

23         MS. WITTY:  That is the intention.

24         SPECIAL MASTER GARRIE:  Okay.  All right.

25          Let's go back off the record.

# EXHIBIT <u>B</u>

Special Master's Hearing - April 22, 2014
*** Volume III***

```
 1           MS. WOLKE:  Okay.
 2           THE SPECIAL MASTER:  Well, I'm assuming that
 3   you are not going to want everything off the index.
 4   So you are going to sample from the index first.
 5           MR. TOSTRUD:  I see.
 6           MS. WOLKE:  Okay.
 7           THE SPECIAL MASTER:  Incorrect terminology.
 8   I apologize.
 9           They are going to send you a very specific
10   list of documents from the index, in their entirety
11   are to be put into a separate room, for then Counsel
12   for Plaintiffs to go in at their leisure, in a room
13   that is not a sweatshop, that has air conditioning,
14   that doesn't need windows, is accessible from at least
15   9:00 to 5:00 and is made -- and if security or
16   whatever is required, they make it accessible and
17   available.
18           They will go to the office.  They will --
19   whatever you guys do with your documents, identify,
20   "This is something we want," this group.
21           You will then -- Counsel for UMC will then
22   take the entire whatever it exists as, following the
23   ESI protocol, produce them all.
24           Do you want them in paper form or would you
25   like them electronically?
```

# EXHIBIT <u>C</u>



## Re: UMC/Small: document inspection

1 message

**Jon Tostrud** <jtostrud@tostrudlaw.com>                              Tue, Jul 8, 2014 at 9:13 AM
To: "Witty, Cayla" <Cayla.Witty@lewisbrisbois.com>
Cc: "Marc L. Godino, Esq. (mgodino@glancylaw.com)" <mgodino@glancylaw.com>, "Anthony Carter
(acarter@tostrudlaw.com)" <acarter@tostrudlaw.com>, "david@omaralaw.net" <david@omaralaw.net>, "Kara Wolke
(kwolke@glancylaw.com)" <kwolke@glancylaw.com>, "daniel@lawandforensics.com"
<daniel@lawandforensics.com>, "Freeman, Robert" <Robert.Freeman@lewisbrisbois.com>, "Foley, Margaret"
<Margaret.Foley@lewisbrisbois.com>, "Ginapp, Kristol" <Kristol.Ginapp@lewisbrisbois.com>, "Adams, Michelle"
<Michelle.Adams@lewisbrisbois.com>, "Thayer, Lisa" <Lisa.Thayer@lewisbrisbois.com>, "Freeman, Kristen"
<Kristen.Freeman@lewisbrisbois.com>, Jon Tostrud <jtostrud@tostrudlaw.com>

Counsel Witty:

Plaintiffs will provide 72 hour notice. I simply wanted to give you as much advance notice as possible that we
intend to move quickly through the hard copy documents.  In order to keep costs down and proceed as efficiently
as possible, the hard copy review process will require tremendous coordination with UMC.

Special Master Garrie laid out a production schedule for hard copy documents, including, but not limited to,
schedules and assignment sheets.  Would you please advise on the status of that production?

Regards,
Jon

# EXHIBIT <u>D</u>



## Re: UMC/Small: document inspection

1 message

Anthony Carter <acarter@tostrudlaw.com>                    Mon, Aug 4, 2014 at 10:46 AM
To: Anthony Carter <acarter@tostrudlaw.com>

On Thu, Jul 10, 2014 at 1:34 PM, Jon Tostrud <jtostrud@tostrudlaw.com> wrote:
Special Master Garrie:

You ordered during the June 16, 2014 hearing the following:

(1) "I'm also going to order UMC by the end of next week to have identified all the 87 individuals to collect the attestation forms from." Page 110, lines 22-24

Plaintiffs are not aware if the identifications of these individuals has occurred?

(2) "I'm going to also order UMC to, by the end of next week, to have started producing the meeting minutes and other items..." Page 110, line 25-111, line2

Plaintiffs would like to know if these meeting minutes have been produced?

(3) "I'm also going to order UMC to do their best efforts to clear 15 departments a week. Recognizing from plaintiffs' side that there will be some weeks when you will get 20 and some weeks you will get five, because there will be departments of one and then departments of hundreds. So it will vary, so they have a plus or minus factor of four. So anywhere between 11 and 19 boxes could come across." Page 111, lines 9-17

Plaintiffs would like a status update, as requested earlier and above from Counsel Witty.

Plaintiffs are in the process of scheduling the time consuming and expensive process of document review, and are handicapped in their scheduling efforts by UMC's failure to provide an update regarding your prior orders relative to hard copy documents. Plaintiffs are aware that the Panzeri documents are available for review next week, but have not been provided an update relating to the assignment sheets, schedules and attestation forms, among other hard copy documents.

I am available for a call if your preference is to handle this directly on the phone.

Regards,
Jon

# EXHIBIT E



Anthony Carter <acarter@tostrudlaw.com>

## RE: UMC/Small: document inspection

1 message

**Witty, Cayla** <Cayla.Witty@lewisbrisbois.com>                    Thu, Jul 10, 2014 at 6:28 PM
To: Daniel Garrie <daniel@lawandforensics.com>, Jon Tostrud <jtostrud@tostrudlaw.com>
Cc: "Marc L. Godino, Esq." <mgodino@glancylaw.com>, Anthony Carter <acarter@tostrudlaw.com>,
"david@omaralaw.net" <david@omaralaw.net>, Kara Wolke <kwolke@glancylaw.com>, "Freeman, Robert"
<Robert.Freeman@lewisbrisbois.com>, "Foley, Margaret" <Margaret.Foley@lewisbrisbois.com>, "Ginapp, Kristol"
<Kristol.Ginapp@lewisbrisbois.com>, "Adams, Michelle" <Michelle.Adams@lewisbrisbois.com>, "Thayer, Lisa"
<Lisa.Thayer@lewisbrisbois.com>, "Freeman, Kristen" <Kristen.Freeman@lewisbrisbois.com>

Special Master Garrie,

I apologize for the delay, but these large group emails are being caught in our firm's spam filter. Please accept our response below.

1) Counsel for UMC noted that 87 different departments would need to be contacted. We have identified multiple timekeepers for attestation forms in many departments. There is no list of 87 individuals.

2) UMC has produced meeting minutes if found in ESI and responsive to the search terms. For hard copies, UMC is preparing minutes for departmental meetings for inspection.

3) When Plaintiffs' counsel has completed inspection of the pay period documents, UMC will be able to produce documents from departments on schedule. As UMC does not believe the pay period document inspection will be completed next week, those documents are not being moved to the viewing space.

Cayla
Sent from my Windows Phone

# EXHIBIT F



Anthony Carter <acarter@tostrudlaw.com>

## RE: UMC/Small: document inspection
1 message

**Daniel Garrie** <daniel@lawandforensics.com>                     Thu, Jul 10, 2014 at 6:46 PM
To: Jon Tostrud <jtostrud@tostrudlaw.com>, "Witty, Cayla" <Cayla.Witty@lewisbrisbois.com>
Cc: "Marc L. Godino, Esq." <mgodino@glancylaw.com>, Anthony Carter <acarter@tostrudlaw.com>,
david@omaralaw.net, Kara Wolke <kwolke@glancylaw.com>, "Freeman, Robert"
<Robert.Freeman@lewisbrisbois.com>, "Foley, Margaret" <Margaret.Foley@lewisbrisbois.com>, "Ginapp, Kristol"
<Kristol.Ginapp@lewisbrisbois.com>, "Adams, Michelle" <Michelle.Adams@lewisbrisbois.com>, "Thayer, Lisa"
<Lisa.Thayer@lewisbrisbois.com>, "Freeman, Kristen" <Kristen.Freeman@lewisbrisbois.com>, Bruce Pixley
<bruce@pixleyforensics.com>, Doug Forrest <dforrest@ilsteam.com>, daniel@lawandforensics.com


Counsel Tostrud –


I have reviewed your email and find that UMC has failed to comply with my Order. I am Ordering UMC to
comply immediately with my prior Orders or appeal to Judge Leen.


Special Master Garrie

# EXHIBIT G



Anthony Carter <acarter@tostrudlaw.com>

## FW: UMC/Small: document inspection

1 message

**Foley, Margaret** <Margaret.Foley@lewisbrisbois.com>                Fri, Jul 11, 2014 at 1:37 PM
To: "Focused Solution (daniel@lawandforensics.com)" <daniel@lawandforensics.com>
Cc: "Witty, Cayla" <Cayla.Witty@lewisbrisbois.com>, "Freeman, Robert" <Robert.Freeman@lewisbrisbois.com>,
"Jon Tostrud (jtostrud@tostrudlaw.com)" <jtostrud@tostrudlaw.com>, "mgodino@glancylaw.com"
<mgodino@glancylaw.com>, "Anthony Carter (acarter@tostrudlaw.com)" <acarter@tostrudlaw.com>, "David O'Mara,
Esq. (david@omaralaw.net)" <david@omaralaw.net>, "Kara Wolke (kwolke@glancylaw.com)"
<kwolke@glancylaw.com>, "Ginapp, Kristol" <Kristol.Ginapp@lewisbrisbois.com>, "Adams, Michelle"
<Michelle.Adams@lewisbrisbois.com>, "Thayer, Lisa" <Lisa.Thayer@lewisbrisbois.com>, "Freeman, Kristen"
<Kristen.Freeman@lewisbrisbois.com>, "Bruce Pixley (bruce@pixleyforensics.com) (bruce@pixleyforensics.com)"
<bruce@pixleyforensics.com>, "Doug Forrest (dforrest@ilsteam.com)" <dforrest@ilsteam.com>

Special Master Garrie,

I write with respect to the document inspection and production and timing generally.

**DEPARTMENTAL DOCUMENTS AND PAY PERIOD DOCUMENTS AT UMC**

UMC will produce the additional records from the departments but will need a bit of time.  We have been
gathering them, but will need a bit of time to gather the rest and scan and produce them as a consequence of
the misunderstanding among counsel about the import of the verbal directive from the June 16th hearing.

Both Counsel Witty and myself believe that these documents were to be prepared for inspection, with the
preliminary steps of creating a draft index, plaintiffs' counsel reviewing the index, and then the items on the
index selected for viewing by plaintiffs were to be made available for inspection.  Unfortunately, this topic
seems to have been the subject of one or more off-the-record discussions not commemorated in the hearing
transcripts.  Based on our understanding and hearing notes, Counsel Witty and I prioritized and scheduled the
departmental documents to be gathered for counsel's inspection following the review of the pay period
documents, which are quite voluminous.  We have been working with UMC personnel to have these boxes of
pay period documents put in a room in preparation for counsel's arrival next week and can confirm many of
the boxes are in the room today.

I expect to be able to give you a status report on the anticipated production by the middle of next week.  After
speaking to one of the paralegals currently working on document identification and gathering on-site at UMC
today, I understand there are several boxes and filing cabinet drawers of documents identified, which are
ready to be copied starting next week for the initial round of rolling production, to continue under the

schedule made for inspection.


**TIMING**


I apologize that the production cannot begin immediately per your order, but in the past you have expressed recognition of the numerous tasks ordered of UMC and advised UMC counsel of some flexibility in priorities and stated deadlines.  Notably, at the hearing last Friday, you recognized that some priorities may need to be shifted in light of others, including the proposed findings of fact and conclusions of law due today.  With the number of orders extant and additional orders made over the course of the hearings, UMC stated it would continue to produce as best it could and notify the group about possible extensions needed.  Please see attached excerpts from July 3 rough transcript at pages 107-113.


Also, at the hearing on June 4th, you stated that some deadlines might be extended if needed and UMC is to devote additional associate and other resources to this case.  Additionally, you stated that counsel would have one week to work on the findings of fact and conclusions of law.  Please see attached excerpts from June 4 hearing at pages 132, 180,186.


UMC has added numerous additional attorney and paralegal resources to comply with pending requests per your request.  Using today as a snapshot, there are five attorneys and two paralegals working on this case as we speak.  UMC counsel would be most grateful for the opportunity to have one day (not one week as contemplated) to work on the proposed findings of fact and conclusions of law as they are due today.


Thank you for your consideration,


Margaret


**Margaret G. Foley**
**Partner**
Las Vegas Rainbow
702.693.4366 or x4366




**Margaret G. Foley**
Partner
Margaret.Foley@lewisbrisbois.com


6385 South Rainbow Blvd., Suite 600
Las Vegas, NV 89118

**LewisBrisbois.com**     T: 702.693.4366  F: 702.893.3789

# EXHIBIT H



Anthony Carter <acarter@tostrudlaw.com>

## Re: FW: UMC/Small: document inspection

1 message

**Jon Tostrud** <jtostrud@tostrudlaw.com>                                      Fri, Jul 18, 2014 at 5:21 PM
To: Daniel Garrie <daniel@lawandforensics.com>
Cc: "Foley, Margaret" <Margaret.Foley@lewisbrisbois.com>, "Witty, Cayla" <Cayla.Witty@lewisbrisbois.com>,
"Freeman, Robert" <Robert.Freeman@lewisbrisbois.com>, "Marc L. Godino, Esq." <mgodino@glancylaw.com>,
Anthony Carter <acarter@tostrudlaw.com>, "David O'Mara, Esq." <david@omaralaw.net>, Kara Wolke
<kwolke@glancylaw.com>, "Ginapp, Kristol" <Kristol.Ginapp@lewisbrisbois.com>, "Adams, Michelle"
<Michelle.Adams@lewisbrisbois.com>, "Thayer, Lisa" <Lisa.Thayer@lewisbrisbois.com>, "Freeman, Kristen"
<Kristen.Freeman@lewisbrisbois.com>, "Bruce Pixley (bruce@pixleyforensics.com)" <bruce@pixleyforensics.com>,
Doug Forrest <dforrest@ilsteam.com>, Jon Tostrud <jtostrud@tostrudlaw.com>

Special Master Garrie:

As sanctions for UMC's violations of your clear and unambiguous Order referenced in your prior email, Plaintiffs
seek the following:

(1) A per diem fine of $5,000.00;

(2) Attorneys' fees; and

(3) Costs.

Additional sanctions are available and Plaintiffs are willing to brief this issue for you no later than end of day
Monday if you would like.

Regards,
Counsel Tostrud

On Fri, Jul 18, 2014 at 4:09 PM, Daniel Garrie <daniel@lawandforensics.com> wrote:

> Counsel for UMC –
>
> Comply with my prior Order.  Please clarify as to the hold-up and either respond in writing or call Plaintiff.
>
>
> Counsel for Plaintiffs –
>
> What relief would request for UMC breach of the Order?
>
>
> Special Master Garrie

**From:** Jon Tostrud [mailto:jtostrud@tostrudlaw.com]
**Sent:** Friday, July 18, 2014 5:45 PM
**To:** Foley, Margaret
**Cc:** Focused Solution (daniel@lawandforensics.com); Witty, Cayla; Freeman, Robert; mgodino@glancylaw.com; Anthony Carter (acarter@tostrudlaw.com); David O'Mara, Esq. (david@omaralaw.net); Kara Wolke (kwolke@glancylaw.com); Ginapp, Kristol; Adams, Michelle; Thayer, Lisa; Freeman, Kristen; Bruce Pixley (bruce@pixleyforensics.com) (bruce@pixleyforensics.com); Doug Forrest (dforrest@ilsteam.com); Jon Tostrud
**Subject:** Re: FW: UMC/Small: document inspection


Counsel Foley:

Plaintiffs would appreciate an update on the overdue production of schedules, assignment sheets, payroll correction and attestation forms, and other hard copy documents from the 87 custodians.  As you know, Special Master Garrie ordered this several weeks ago.  Notwithstanding UMC's violation of Special Master Garrie's order, Plaintiffs are working diligently to schedule and plan for the review of such documents.  Your refusal to provide specific information concerning the production of the departmental materials makes it virtually impossible to schedule the review and, in fact, further prejudices Plaintiffs in this matter.  Please provide details by the close of business today as Plaintiffs intend to review those documents next week at UMC.

Regards,

Counsel Tostrud

# EXHIBIT I



## RE: UMC -- request for immediate hearing

1 message

**Foley, Margaret** <Margaret.Foley@lewisbrisbois.com>                    Tue, Jul 29, 2014 at 11:29 AM
To: Jon Tostrud <jtostrud@tostrudlaw.com>, "daniel@lawandforensics.com" <daniel@lawandforensics.com>
Cc: "kwolke@glancylaw.com" <kwolke@glancylaw.com>, "acarter@tostrudlaw.com" <acarter@tostrudlaw.com>,
"Marc L. Godino" <MGodino@glancylaw.com>, "<rantonio@glancylaw.com>" <RAntonio@glancylaw.com>, David
O'Mara <david@omaralaw.net>, "Witty, Cayla" <Cayla.Witty@lewisbrisbois.com>, "Freeman, Robert"
<Robert.Freeman@lewisbrisbois.com>

Special Master Garrie:

Plaintiffs' counsel are aware the documents they seek are to be produced to them instead of inspected.  They
failed to respond to emails last week asking them the status of their inspection.  There is no dispute here from
UMC's standpoint.  I agreed as a courtesy to have a call with Special Master Garrie and will forward the relevant
emails now.

Thank you,

Margaret Foley


Margaret G. Foley
Partner
Margaret.Foley@lewisbrisbois.com
Lewis Brisbois Bisgaard & Smith LLP
6385 South Rainbow Blvd., Suite 600
Las Vegas, NV 89118
T: 702.693.4366  F: 702.893.3789

www.LewisBrisbois.com

This e-mail may contain or attach privileged, confidential or protected information intended only for the use of the
intended recipient. If you are not the intended recipient, any review or use of it is strictly prohibited. If you have
received this e-mail in error, you are required to notify the sender, then delete this email and any attachment from
your computer and any of your electronic devices where the message is stored.

# EXHIBIT J



Anthony Carter <acarter@tostrudlaw.com>

## Re: document inspection today
1 message

Kara Wolke <KWolke@glancylaw.com>                                               Thu, Jul 31, 2014 at 11:58 AM
To: "Witty, Cayla" <Cayla.Witty@lewisbrisbois.com>
Cc: "Foley, Margaret" <Margaret.Foley@lewisbrisbois.com>, "Adams, Michelle" <Michelle.Adams@lewisbrisbois.com>, "Thayer, Lisa" <Lisa.Thayer@lewisbrisbois.com>, "Freeman, Kristen" <Kristen.Freeman@lewisbrisbois.com>, "Marc L. Godino" <MGodino@glancylaw.com>, J Tostrud <jtostrud@tostrudlaw.com>, Anthony Carter <acarter@tostrudlaw.com>, Rayo Antonio <RAntonio@glancylaw.com>, Daniel Garrie <daniel@lawandforensics.com>

Ms. Witty:
We're disappointed that UMC has failed to provide departmental documents for our review today, and we do believe this is a violation of Special Master Garrie's previous orders on hard copy review, including his order from as recently as this past Tuesday.

But thank you for finally letting us know that no additional documents are ready. Now that we at least know the status, we do not think a call with Special Master Garrie is necessary at this time.

Please let us know when the inspection can resume.

Regards,
Kara

Sent from my iPhone

On Jul 31, 2014, at 11:43 AM, "Witty, Cayla" <Cayla.Witty@lewisbrisbois.com> wrote:

Kara,

Your patience is appreciated.  At this time, UMC does not have additional departmental documents for inspection. While counsel is working furiously to collect from the departments, logistically UMC is not able to move significant documents immediately due to the ongoing Joint Commission survey. We will notify you immediately when we have an update on new documents.

I am available to conference at any time this afternoon.

Yours sincerely,

Cayla*

P.S. This email was likely written on a mobile device. Please forgive any shortened phrases, auto-corrected words, or other grammatical oddities. Thank you.



**Cayla Witty**
Attorney
Cayla.Witty@lewisbrisbois.com
6385 South Rainbow Blvd., Suite 600
Las Vegas, NV 89118
T: 702.693.4387 F: 702.893.3789

LewisBrisbois.com   

Representing clients from coast to coast. View our nationwide locations.

This e-mail may contain or attach privileged, confidential or protected information intended only for the use of the intended recipient. If you are not the intended recipient, any review or use of it is strictly prohibited. If you have received this e-mail in error, you are required to notify the sender, then delete this email and any attachment from your computer and any of your electronic devices where the message is stored.

# EXHIBIT K

Rough Draft of Special Master's Hearing    July 25, 2014
*** Telephonic ***

 1    communications from you, Special Master, that spoke
 2    to production and not inspection.
 3            SPECIAL MASTER GARRIE:  I assumed that the
 4    inspection was to occur on-site, and that there was
 5    an index to be provided.  And that after certain
 6    documents were identified, they were to be produced.
 7            So I'm not -- I understand that UMC might
 8    have interpreted that differently.  I'm not exactly
 9    sure how that was done.
10            But at least I understand that in the
11    short.  I'm going to let UMC provide me -- I'm going
12    to put all parties -- plaintiffs, is there anything
13    you would like to state?
14            MR. GODINO:  Other than from our
15    perspective, there has been no confusion.  There's
16    been no specific correspondence that would support
17    what was just stated.
18            SPECIAL MASTER GARRIE:  Okay.  So counsel
19    for UMC, I'm going to -- I'm going to take a minute
20    and think about what was just said, and read my
21    notes.  So I'm going to ask the parties to wait for a
22    minute or two.
23            (A discussion was held off the record.)
24            SPECIAL MASTER GARRIE:  Counsel for UMC, I
25    have heard your arguments as you set forth.  I do not

Exhibit B

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
ATTORNEYS AT LAW

6385 S. Rainbow Boulevard, Suite 600
Las Vegas, Nevada 89118
Telephone: 702.893.3383
Fax: 702.893.3789
www.lewisbrisbois.com

MARGARET G. FOLEY
DIRECT DIAL: 702.693.4366
MARGARET.FOLEY@LEWISBRISBOIS.COM

CAYLA WITTY
DIRECT DIAL: 702.693.4387
CAYLA.WITTY@LEWISBRISBOIS.COM

July 31, 2014

File No.
32352.0016

**VIA ELECTRONIC MAIL ONLY**

Special Master Daniel Garrie
E-Mail: daniel@lawandforensics.com

RE:    Recent Paper Documents Indexing and Production Issues in *Small, et al. v. UMC*

Dear Special Master Garrie:

Please accept this briefing from UMC on the interrelated indexing and production issues involving certain UMC paper documents, as discussed at the telephonic hearing of Friday, July 25th. To summarize, the parties seemed earlier this summer to be proceeding in a collaborative manner towards document inspection at UMC. The parties were following an indexing process, directed and approved by the Court, for identifying and selecting documents for Plaintiffs' counsel to inspect.

The protocol was quite successful as to **payroll period documents** kept by Jackie Panzieri. These documents have been reviewed at UMC by Plaintiffs' counsel, and UMC plans to copy and send them as soon as the Court will permit.

Unfortunately, the process went awry for the **departmental documents** concerning scheduling, attestations, and meeting minutes. Based on the Special Master proceedings and discussions among counsel, an index was jointly prepared by the parties to identify documents. As the parties prepared for the inspection of documents, communications broke down. Following Mr. Tostrud's insistence in emails that UMC had violated a court order, the Special Master ordered by email on July 10th that UMC begin "producing" the documents "immediately" to comply with his order of June 16th.[1] UMC therefore began scanning the documents and overnighting them to Plaintiffs on CD's to comply.[2] It became apparent just this past week

---

[1] *See* attached **Exhibit A** (email chain among counsel and Special Master Garrie dated July 10th.and culminating in order to UMC to produce documents immediately per prior orders).

[2] A number of federal courts have explained that, for documents, the default response to a request for production is to simply turn over the documents to the requesting party. *See, e.g., Compagnie des Bauxites v. Ins. Co. of N. Am.*, 651 F.2d 877, 883 (3d Cir. 1981); *Caruso v. Coleman Co.*, 157 F.R.D. 344, 349 (E.D. Pa. 1994) ("where the volume of [documentary] material sought would make copying and transporting burdensome and oppressive to the producing party . . . the court may decline to order production and may instead order that the requesting party inspect the documents"); *Baine v. General Motors Corp.*, 141 F.R.D. 328, 331 (M.D. Ala. 1991) (upon proper showing of burden, "the court may demure from ordering production and may instead order inspection in a manner convenient to the party in possession."); *see also* 7-34 Moore's Federal Practice - Civil § 34.13[2][a] ("[i]n lieu of actual production of
(footnote continued)

ATLANTA • BEAUMONT • BOSTON • CHARLESTON • CHICAGO • DALLAS • DENVER • FORT LAUDERDALE • HOUSTON • LA QUINTA • LAFAYETTE • LAS VEGAS • LOS ANGELES • MADISON COUNTY
NEW ORLEANS • NEW YORK • NEWARK • ORANGE COUNTY • PHILADELPHIA • PHOENIX • SACRAMENTO • SAN BERNARDINO • SAN DIEGO • SAN FRANCISCO • SEATTLE • TAMPA • TEMECULA • TUCSON

4823-0685-9548.1

Special Master Daniel Garrie
July 31, 2014
Page 2

that serious misunderstandings between the parties had occurred with respect to the production. Making the situation even worse, undersigned UMC counsel learned there had been no meeting of the minds as to what the July 10th order, incorporating the June 16th order,[3] meant by "producing" documents "immediately." UMC's undersigned counsel believed in good faith that they were complying with the July 10th order, but events of the past week revealed that UMC's interpretation of "immediately" "producing" the documents did not match the Special Master's expectation of how the July 10th order was to be carried out. To UMC's counsel's great dismay, the doctrine of "mutual mistake," studied by first-year law students across the country, seemed to have come startlingly alive.[4]  UMC thought that the July 10th order was instructing them to scan and send the documents, while Special Master Garrie clearly believed he was telling UMC to ready the documents for an on-site inspection.  UMC, informed of its error, has ceased scanning documents and is making them available for inspection pending any further order of the Court.

Indexing of Documents

_UMC believes it has properly complied with the indexing process ordered.  The index was jointly prepared by the parties to identify documents before inspection, not to facilitate document review on-site as asserted.[5] Beginning at the April Special Master hearings, the parties discussed how the index would be prepared to educate Plaintiffs' counsel as to the hard-copy documents in Ms. Panzieri's office and the hospital departments that Plaintiffs could review on-site at UMC.[6]  A letter and draft index from Ms. Witty to Special Master Garrie detailing discussions for the index creation by the parties is attached hereto as Exhibit B.

Communications Regarding Production of Hard Copy Documents

UMC has expressed a multitude of concerns with regards to ongoing communications relating to hard copy documents. Specifically, during the week of July 7, 2014, Plaintiffs' communications to the Special Master and parties altered the review process from a inspection at UMC to full-scale production of scanned and OCR'd attestation forms, departmental meeting minutes, and schedule documents. UMC has begun this process, and as noted on July 25, 2014, had planned to continue to make near-daily productions in

---

documents, a party may . . .allow the requesting party to inspect and copy the documents . . . [t]he answer to a request for production is generally either: (1) actual production of the documents, or (2) an objection signed by the attorney making the objection."). UMC understood the immediate production to mean produce the documents directly. UMC had assumed this direct production would benefit Plaintiffs' counsel as well, given the context that Mr. Tostrud had made clear in an email dated June 27[th] that "[i]t is very expensive and time-consuming for Plaintiffs to engage in this review".  See Exhibit A at 5.

[3] As described by Magistrate Judge Brazil, one of the dangers of informal special master proceedings is imprecision that can lead to further problems. "Informality may create a related danger of imprecision. If the neutral renders fuzzy decisions, or imposes poorly-specified obligations, he sets the stage for breaches, disputes, and disillusion. . . . These unfortunate consequences of imprecision can be especially troublesome and costly in complex cases, where duties are less self-evident and where the ripple effects of poor communication on one matter can extend to many others." See Brazil, SYMPOSIUM ON LITIGATION MANAGEMENT: Special Masters in Complex Cases, 53 U. Chi. L. Rev. 394, 420-21 (Spring, 1986). UMC respectfully submits that ambiguity in the July 10th order, incorporating in turn the slightly-unclear June 16th oral order, has led UMC to foreseeably misinterpret its production obligations here. UMC's unintentional missteps should be forgiven and no sanctions ought to be imposed in this unfortunate situation. UMC stands corrected and respectfully seeks the Court's direction on where to go from here.

[4] In the famous case of Raffles v. Wichelhause, 159 Eng. Rep. 375 (1864), the parties agreed to a sale of cotton to be transported from Bombay by a ship called Peerless. However, there were two ships named Peerless, one sailing in October and the other in December. The seller understood the deal to refer to the December ship, while the buyer thought the October Peerless would bring his cotton. See id. Here, analogously, UMC thought "production" meant one thing while the Court thought it meant another thing.

[5] See Rough Transcript 7/25/14 at 115-117 (parties' respective positions explained by Ms. Witty and Mr. Godino).

[6] See Transcript 4/22/14 at 200-231, Transcript 5/1/14 at 54-55, Transcript 5/6/14 at 194-196, Transcript 6/16/14 at 106-112.

---

Special Master Daniel Garrie
July 31, 2014
Page 3

accordance with the Second Amended ESI Protocol Order until ordered halted by Special Master Garrie.
Moreover, Plaintiffs and the Special Master were on notice as of July 11th that the departmental documents
would be scanned and produced, not set out for inspection at UMC, in response to Special Master Garrie's
and Counsel Tostrud's emails.  Ms. Foley made clear in her email of June 11th at 1:37 p.m.that the
departmental documents would be gathered, scanned and produced as a result of Special Master Garrie's
order, rather than produced for inspection, while the pay period documents would still be made available for
inspection.[7]

Notwithstanding this dispute as to departmental documents (described more fully above), UMC  provided pay
period documents used by the Payroll department in processing for inspection on July 16, 2014. This group
of documents initially contained 81 boxes with documents ranging from 2008 through 2012. Plaintiffs' counsel
inspected these documents over 1.5 days. Following this brief inspection, counsel for UMC attempted to
determine what all had been accomplished. The parties disagreed about the box count, there was an issue
with providing a custodian of record declaration, and no clear understanding was reached with regard to the
need for ongoing inspection of the pay period documents.

When Plaintiffs' counsel returned on July 28, 2014 to continue, it was only then that it was understood that
Plaintiffs' counsel had finished with the 81 boxes, rather than 63 boxes as Plaintiffs' counsel had asserted.
Thirteen additional boxes from 2013 were acquired for inspection to start July 29, 2014 to accommodate
Plaintiffs' counsel, despite their failure to respond to specific questions last Thursday put to them by UMC
counsel in emails concerning: (1) the box count,(2) the meaning of Plaintiffs' post-it notes saying "done" on
certain boxes, and (3) which boxes might be moved out so others could be moved in.

Mr. Godino called Ms. Foley on the morning of July 29th and asserted his readiness to review additional
documents. Ms. Foley explained that the additional 13 boxes of pay period documents were all that had
been prepared for inspection, because the departmental documents were being scanned and produced in full
on CD to Plaintiffs' counsel. Moreover, Ms. Foley had not received a response to emailed questions
Thursday afternoon that, if answered, might have warned UMC of some potential misunderstanding
regarding the inspection.

Further, Plaintiffs' counsel was fully aware that UMC was sending them documents in addition to making the
Panzieri documents available for inspection.  The departmental document production was discussed on the
telephone with Special Master Garrie Friday, July 25, 2014, and on July 28, 2014. Plaintiffs' counsel
attended both of those telephonic hearings and verified that they had received documents from UMC on CD.

---

[7] In her lengthy email sent to Special Master Garrie in advance of the July 29th telephone conference
regarding document production, Counsel Wolke specifically referenced Counsel Foley's email of June 11th at
1:37 p.m., but neglected to acknowledge the email's content as a whole, which specifically stated that
departmental documents would be gathered, scanned, and produced, as opposed to payroll period
documents to be made available for inspection.

Special Master Daniel Garrie
July 31, 2014
Page 4

Very truly yours,

Margaret G. Foley of
Cayia Witty for
LEWIS BRISBOIS BISGAARD & SMITH LLP

MGF:gfr
Attachments
cc:      All Counsel (by email)

EXHIBIT "A"

## Foley, Margaret

| | |
|---|---|
| **From:** | Daniel Garrie <daniel@lawandforensics.com> |
| **Sent:** | Thursday, July 10, 2014 6:47 PM |
| **To:** | 'Jon Tostrud'; Witty, Cayla |
| **Cc:** | 'Marc L. Godino, Esq.'; 'Anthony Carter'; david@omaralaw.net; 'Kara Wolke'; Freeman, Robert; Foley, Margaret; Ginapp, Kristol; Adams, Michelle; Thayer, Lisa; Freeman, Kristen; 'Bruce Pixley'; 'Doug Forrest'; daniel@lawandforensics.com |
| **Subject:** | RE: UMC/Small: document inspection |

Counsel Tostrud –

I have reviewed your email and find that UMC has failed to comply with my Order. I am Ordering UMC to comply immediately with my prior Orders or appeal to Judge Leen.

Special Master Garrie

**From:** Jon Tostrud [mailto:jtostrud@tostrudlaw.com]
**Sent:** Thursday, July 10, 2014 9:40 PM
**To:** Witty, Cayla
**Cc:** Daniel Garrie; Marc L. Godino, Esq.; Anthony Carter; david@omaralaw.net; Kara Wolke; Freeman, Robert; Foley, Margaret; Ginapp, Kristol; Adams, Michelle; Thayer, Lisa; Freeman, Kristen; Jon Tostrud; Bruce Pixley (bruce@pixleyforensics.com); Doug Forrest
**Subject:** Re: UMC/Small: document inspection

Special Master Garrie:

With all due respect, and for the record, UMC's position with respect to #3 above is a complete reversal of the position that we painstakingly detailed out, and agreed to, in court. The parties clearly and unequivocally agreed on a rolling production of schedules, assignment sheets and attestation forms. Moreover, and most importantly, you ORDERED such a production to occur.

UMC has never sought relief from your order and, as Counsel Witty once again confirmed this evening with her email, UMC is in contempt of court. Plaintiffs intend to address this issue in our July 11 submission and will contact UMC counsel Monday to schedule a status conference with Judge Leen.

Please contact me with any questions or concerns.

Regards,
Jon


On Thu, Jul 10, 2014 at 6:28 PM, Witty, Cayla <Cayla.Witty@lewisbrisbois.com> wrote:

Special Master Garrie,

I apologize for the delay, but these large group emails are being caught in our firm's spam filter. Please accept our response below.

1) Counsel for UMC noted that 87 different departments would need to be contacted. We have identified multiple

timekeepers for attestation forms in many departments. There is no list of 87 individuals.

2) UMC has produced meeting minutes if found in ESI and responsive to the search terms. For hard copies, UMC is preparing minutes for departmental meetings for inspection.

3) When Plaintiffs' counsel has completed inspection of the pay period documents, UMC will be able to produce documents from departments on schedule. As UMC does not believe the pay period document inspection will be completed next week, those documents are not being moved to the viewing space.

Cayla
Sent from my Windows Phone

---

**From:** Daniel Garrie
**Sent:** 7/10/2014 5:06 PM
**To:** 'Jon Tostrud'; Witty, Cayla
**Cc:** 'Marc L. Godino, Esq.'; 'Anthony Carter'; david@omaralaw.net; 'Kara Wolke'; Freeman, Robert; Foley, Margaret; Ginapp, Kristol; Adams, Michelle; Thayer, Lisa; Freeman, Kristen
**Subject:** RE: UMC/Small: document inspection

Counsel for UMC –


Please advise before 5pm PST today as to the status of the duties set-forth below.


Daniel Garrie




**From:** Jon Tostrud [mailto:jtostrud@tostrudlaw.com]
**Sent:** Thursday, July 10, 2014 4:34 PM
**To:** Witty, Cayla; Focused Solution
**Cc:** Marc L. Godino, Esq. (mgodino@glancylaw.com); Anthony Carter (acarter@tostrudlaw.com); david@omaralaw.net; Kara Wolke (kwolke@glancylaw.com); Freeman, Robert; Foley, Margaret; Ginapp, Kristol; Adams, Michelle; Thayer, Lisa; Freeman, Kristen; Jon Tostrud
**Subject:** Re: UMC/Small: document inspection


Special Master Garrie:

You ordered during the June 16, 2014 hearing the following:

(1) "I'm also going to order UMC by the end of next week to have identified all the 87 individuals to collect the attestation forms from." Page 110, lines 22-24

Plaintiffs are not aware if the identifications of these individuals has occurred?

2

(2) "I'm going to also order UMC to, by the end of next week, to have started producing the meeting minutes and other items..." Page 110, line 25-111, line2

Plaintiffs would like to know if these meeting minutes have been produced?

(3) "I'm also going to order UMC to do their best efforts to clear 15 departments a week. Recognizing from plaintiffs' side that there will be some weeks when you will get 20 and some weeks you will get five, because there will be departments of one and then departments of hundreds. So it will vary, so they have a plus or minus factor of four. So anywhere beteween 11 and 19 boxes could come across." Page 111, lines 9-17

Plaintiffs would like a status update, as requested earlier and above from Counsel Witty.

Plaintiffs are in the process of scheduling the time consuming and expensive process of document review, and are handicapped in their scheduling efforts by UMC's failure to provide an update regarding your prior orders relative to hard copy documents. Plaintiffs are aware that the Panzeri documents are available for review next week, but have not been provided an update relating to the assignment sheets, schedules and attestation forms, among other hard copy documents.

I am available for a call if your preference is to handle this directly on the phone.

Regards,
Jon

On Tue, Jul 8, 2014 at 9:13 AM, Jon Tostrud <jtostrud@tostrudlaw.com> wrote:

Counsel Witty:

Plaintiffs will provide 72 hour notice. I simply wanted to give you as much advance notice as possible that we intend to move quickly through the hard copy documents. In order to keep costs down and proceed as efficiently as possible, the hard copy review process will require tremendous coordination with UMC.

Special Master Garrie laid out a production schedule for hard copy documents, including, but not limited to, schedules and assignment sheets. Would you please advise on the status of that production?

Regards,
Jon

On Mon, Jul 7, 2014 at 5:54 PM, Witty, Cayla <Cayla.Witty@lewisbrisbois.com> wrote:

Counsel Tostrud,

UMC is confirming that the document inspection room will be available July 16 & 17. The inspection room is located on the 5th floor of the Trauma Building, Conf. Room 510. Could you please provide us with how many parking spaces will

3

be needed for the group so that we can arrange for parking and have someone available to meet and escort you to the inspection room?

As for the weekly inspection dates, could you please explain how the 72 hour advance notice will work if you intend to be in Las Vegas for inspection each week? We will keep you up to date on the availability of documents in accordance with the proposed schedule as well as monitor how quickly the inspections move. I can also inform you that there will be no hospital governing board meeting agendas or minutes to inspect in hard copy format as those documents are only kept in electronic form. The electronic folders that contain these documents are a part of the 7 high priority custodian Q drive repository, and have been searched and will be produced in accordance with the ESI protocol order.

If you have additional information to confirm or discuss, please let us know when you are available to do so this week.

Thank you.

Cayla*

**From:** Jon Tostrud [mailto:jtostrud@tostrudlaw.com]
**Sent:** Monday, July 07, 2014 3:55 PM
**To:** Witty, Cayla
**Cc:** Marc L. Godino, Esq. (mgodino@glancylaw.com); Anthony Carter (acarter@tostrudlaw.com); david@omaralaw.net; Kara Wolke (kwolke@glancylaw.com); daniel@lawandforensics.com; Freeman, Robert; Foley, Margaret; Ginapp, Kristol; Adams, Michelle; Thayer, Lisa; Freeman, Kristen; Jon Tostrud
**Subject:** Re: UMC/Small: document inspection

Counsel Witty:

Will you please confirm that the document repository will be available July 16 and 17? We plan on arriving at 9:30 am the morning of the 16th. I also request that you confirm the other details in my prior email (ie that the repository be made available on a weekly basis beginning July 16). I am happy to discuss this if you'd like to. Regards,

Jon

On Fri, Jun 27, 2014 at 11:33 AM, Jon Tostrud <jtostrud@tostrudlaw.com> wrote:

Counsel Witty:

Please add Marc Godino to the list of attorneys attending the July 16 and 17 review.

4

Regards,
Jon


On Fri, Jun 27, 2014 at 11:18 AM, Jon Tostrud <jtostrud@tostrudlaw.com> wrote:

Counsel Witty:

Thanks for arranging the room at UMC.  Attached is a draft custodian of records declaration.

Plaintiffs plan their first review of documents on July 16 and 17.  Lawyers attending that first session will be
Jon Tostrud, Anthony Carter, Kara Wolke and Rayo Antonio.

Going forward, Plaintiffs will provide UMC with at least 72 hour advance notice of their intent to review
documents and the individual lawyers who will be engaged in the review process.  Plaintiffs most likely will
review documents on a weekly basis and be at the hospital for 2-3 days a week for the next several
months.  We expect that UMC will advise Plaintiffs if the hard copy document production schedule ordered by
Special Master Garrie cannot be met.  It is very expensive and time-consuming for Plaintiffs to engage in this
review and we would like to avoid the situation where we show up to review documents only to learn that
UMC has not met the production schedule.

Finally we will keep the total number of reviewers at any one time under 10 lawyers.

Please contact me with any questions or concerns.



Regards,
Jon




On Fri, Jun 20, 2014 at 11:46 AM, Witty, Cayla <Cayla.Witty@lewisbrisbois.com> wrote:

Plaintiffs:


UMC has arranged for a room for inspection to begin. UMC needs to know the specific dates and times
counsel will be inspecting documents.


Also, UMC requests that the individuals appearing for inspection of documents be identified ahead of
appearing and, if at all possible be limited to less than 10. Space at UMC is at a dire premium, and the room
will be very restricted with 10 individuals within. Due to privacy concerns and confidentiality of information,

EXHIBIT "B"

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

6385 S. Rainbow Boulevard, Suite 600
Las Vegas, Nevada 89118
Telephone: 702.893.3383
Fax: 702.893.3789
www.lewisbrisbois.com

MARGARET G. FOLEY
DIRECT DIAL: 702.693.4366
MARGARET.FOLEY@LEWISBRISBOIS.COM

CAYLA WITTY
DIRECT DIAL: 702.693.4387
CAYLA.WITTY@LEWISBRISBOIS.COM

May 15, 2014

File No.
32352.16

## VIA ELECTRONIC MAIL ONLY

Daniel Garrie, Esq.
Electronic Discovery Special Master
6506 3rd Avenue, Suite C
Seattle, WA  98117
E-Mail: daniel@lawandforensics.com

> Re:   Small v. UMC, USDC Case No. 2:13-cv-00298-APG-PAL
>        Response to proposed index for hard copy documents

Dear Special Master Garrie:

Please accept this letter in response to Plaintiffs' May 12, 2014 first draft of a hard copy document index. We appreciate Plaintiffs taking the first step in this discussion, but we have several concerns that we believe undermine the value of an undertaking such as this index.

### Vague Terms

Several of the terms listed in the far-left column are vague to the point that UMC cannot begin to index any documents. While we do not want to unnecessarily complicate the index form, it is necessary that we have a full and complete understanding of what information is sought to prevent ongoing discovery disputes in this area.

The terms that UMC requests further clarification for are the following: Board Minutes, Calendars, Budgets, Correspondence, and Department of Labor. UMC acknowledges that documents that could be classified as relating to one of these terms could be relevant (and many such documents have been produced in ESI and otherwise). However, due to the breadth of unrelated topics that might touch on these terms, UMC requests additional specification. For example, Plaintiffs' Request for Production of

ATLANTA • BEAUMONT • BOSTON • CHARLESTON • CHICAGO • DALLAS • DENVER • FORT LAUDERDALE • HOUSTON • LA QUINTA • LAFAYETTE • LAS VEGAS • LOS ANGELES • MADISON COUNTY

NEW ORLEANS • NEW YORK • NEWARK • ORANGE COUNTY • PHILADELPHIA • PHOENIX • SACRAMENTO • SAN BERNARDINO • SAN DIEGO • SAN FRANCISCO • SEATTLE • TAMPA • TEMECULA • TUCSON

Daniel Garrie, Esq.
May 15, 2014
Page 2

Documents No. 23 requests minutes from meetings discussing wage-and-hour matters related to meal periods and overtime pay. This is significantly different from "Board Minutes." Similarly, UMC continues to identify and produce documents related to the 2012 and 2013 Department of Labor investigation into admitting representatives' complaints regarding lunch interruptions. But the term "Department of Labor" would touch on FMLA and other unrelated issues. If UMC does not receive additional clarification of these terms, it fears that this discovery dispute will continue significantly longer than needed, and will require extraneous time and expense to complete indexing.

### Unnecessary Elements

There are two elements identified in Plaintiffs' first draft which UMC believes are unnecessary. First, along the columns listed, Plaintiffs list "Missing Documents." UMC argues that this is argumentative, asks for legal conclusion, and cannot be determined for such an index. This is improper in such an index, and will not be included in any index prepared.

Second within the far-left column, Plaintiffs list "Annual Financial Audits." UMC finds this element is vague as to the prospective hospital department and purpose in discovery. Further, UMC cannot determine how this document would be responsive to Plaintiffs' Requests for Production of Documents.

### Requested Changes

To assist in streamlining the indexing process, UMC has created a second draft proposal for the hard copy document index. A copy is enclosed with this letter. UMC will provide simple explanations for several alterations.

For clarification purposes, UMC delineated that the requested document types apply to opt-in plaintiffs. Following that, UMC has provided two options [listed under "Work Schedules"] to further identify document repositories. The first option is to request only the documents relating to one of the 600-plus opt-ins. This will significantly increase the time required for indexing. The second option is to identify the group for which each opt-in is a part; the option shows Admitting Representatives as one group, nurses on 3 West as another.

UMC also outlined more information for the columns. UMC aims to make sure the information allows Plaintiffs to determine if a document needs to be inspected. The altered columns are as follows:

- Document Description/Type
- Physical Location

Daniel Garrie, Esq.
May 15, 2014
Page 3

- UMC staff responsible/Source
- Estimated Volume with Source
- Date Range
- Duplicate of previous production?

With regards to the estimated volume with the source, UMC asks that Plaintiffs define how this should be conveyed (e.g., number of boxes, size of binders, page counts, etc.). Then, when assessing date range, UMC will restrict the index to documents responsive to Plaintiffs' Requests for Document Production, i.e., from July 27, 2009 to current. If Plaintiffs are interested in specific time frames within that period for specific document types, UMC is open to discussing more targeted indexing.

UMC looks forward to continued discussion on this topic. With further discussion we can set a reasonable time frame for completing this process. At this time, UMC is unable to assess the time required for indexing documents as the form of the index is vital to understanding the scope of the project.

If further clarification or concerns can be addressed, please do not hesitate to raise these issues.

Very truly yours,

Margaret G. Foley of
Cayla Witty for
LEWIS BRISBOIS BISGAARD & SMITH LLP

MGF:CW
Enclosure
cc:    Plaintiffs' Counsel and ESI Experts

SMALL V. UMCSN, USDC CASE NO. 2:13-CV-00298-APG-PAL

## INDEX FOR HARD COPY DOCUMENTS

| Document Description/Type | Physical Location | UMC Staff Responsible/ Source | Estimated Volume with Source | Date Range | Duplicate of Previous Production? |
|---|---|---|---|---|---|
| Work Schedules for Opt-In-Plaintiffs | | | | | |
| Opt-in A | | | | | |
| Opt-in B | | | | | |
| or | | | | | |
| Admitting Dept | | | | | |
| Nursing 3 West | | | | | |
| Opt-In Plaintiff Assignment Sheets | | | | | |
| Opt-In Plaintiff Corrections Forms | | | | | |
| Opt-In Plaintiff Attestation Forms | | | | | |
| Opt-In Plaintiff Processed PARS | | | | | |
| Opt-In Plaintiff Payroll Adjustments Forms | | | | | |
| Opt-In Plaintiff Off-Cycle Forms | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

4839-1883-8987.1

1

SMALL V. UMCSN, USDC CASE NO. 2:13-CV-00298-APG-PAL

INDEX FOR HARD COPY DOCUMENTS

2

4839-1888-8987.1

Exhibit C

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
ATTORNEYS AT LAW

6385 S. Rainbow Boulevard, Suite 600
Las Vegas, Nevada 89118
Telephone: 702.893.3383
Fax: 702.893.3789
www.lewisbrisbois.com

**CAYLA WITTY**
DIRECT DIAL: 702.693.4387
CAYLA.WITTY@LEWISBRISBOIS.COM

June 25, 2014

File No.
32352.16

**CONFIDENTIAL COMMUNICATION**

**VIA ELECTRONIC MAIL ONLY**

Daniel Garrie, Esq.
Special Master
6506 Third Avenue, Suite C
Seattle, WA 98117
E-Mail: daniel@lawandforensics.com

   Re: <u>Small v. UMC, Case No. 2:13-cv-298-APG-PAL</u>
      UMC Time-tracking Systems Oustide of Kronos and Clarity

Dear Special Master:

  Please accept the following letter in accordance with your request at the June 16, 2014 hearing for additional information regarding UMC time-tracking systems.

  <u>TeleTracking</u>

  UMC uses TeleTracking v.3.0.1.4 in two departments. The Environmental Services (EVS) department uses BedTracker (Sodexo ST), and the Transport department uses ServiceTracker (Sodexo CMS/XT); both components are used to track assignments, tasks, and locations for employees in these departments, including certain opt-in plaintiffs. Because the employees in these departments do not maintain a central location during shifts, they track their breaks (including meal periods) through the TeleTracking system. Enclosed with this letter are the instructions provided to employees to explain how to use the system. The employee calls in and enters a code to mark that the employee is on break. When the break is completed, the employee calls in to enter a code to mark that the employee is no longer on break. This data is not captured in Kronos, because these departments only use Kronos for clocking in and out for the work day.

  UMC is compiling the user manuals for these systems and will provide these documents with a complete copy of the databases. UMC will also provide a list of the

ATLANTA • BEAUMONT • BOSTON • CHARLESTON • CHICAGO • DALLAS • DENVER • FORT LAUDERDALE • HOUSTON • LA QUINTA • LAFAYETTE • LAS VEGAS • LOS ANGELES • MADISON COUNTY
NEW ORLEANS • NEW YORK • NEWARK • ORANGE COUNTY • PHILADELPHIA • PHOENIX • SACRAMENTO • SAN BERNARDINO • SAN DIEGO • SAN FRANCISCO • SEATTLE • TAMPA • TEMECULA • TUCSON

CONFIDENTIAL COMMUNICATION
Daniel Garrie, Esq.
June 25, 2014
Page 2

affected opt-in plaintiffs in these departments. Mr. John Rendall, Director of Sodexo at UMC, who supervises both the EVS and Transport staff is assisting with compiling the requested list of opt-in plaintiffs affected; Mr. Rendall also provided the brief explanation of use represented above.

No specific system administrator at UMC is assigned to these databases. Instead, the six system administrators at UMC share responsibilities for all of the databases. Once UMC has produced the full Sodexo databases to Plaintiffs, UMC can arrange for the technical staff to conference with Plaintiffs' ESI consultants regarding this repository.

<u>CrimeStar Records Management System</u>

The Public Safety department at UMC uses Crimestar RMS version 9.9 as their computer-assisted dispatch. Public safety officers at UMC, including certain opt-in plaintiffs, clock-in (and out) for duty through Kronos, the official UMC time-keeping system. Once officially clocked in, the officers are dispatched via radio reports to their assignments. This radio communication is tracked in the computer-assisted dispatch system Crimestar. The public safety officers do not personally enter information into Crimestar; the dispatcher is required to enter in Crimestar the related codes and assignments sent via radio to the officers. One of the codes entered into Crimestar includes a meal break code. The officer would radio in that s/he was taking a break, and the dispatcher would enter this code into Crimestar. When the officer finished the break period, s/he would radio back in to inform the dispatcher that the break was finished. This would also be entered into Crimestar. This data is not captured in Kronos, because the Public Safety officers only use Kronos for clocking in and out for the work day.

UMC is compiling the user manuals for this system and will provide these documents with a complete copy of the database. UMC will also provide a list of the affected opt-in plaintiffs in this department. Mr. Ruben Gurrola, Director of Public Safety at UMC, is assisting with compiling the requested list of opt-in plaintiffs affected; Mr. Gurrola also provided the brief explanation of use represented above.

No specific system administrator at UMC is assigned to this database. However, System Administrator David Williams has the most experience with this complex database. Due to the sensitive nature of the information contained within this database relating to patient care and safety concerns at the hospital, access to this database is extremely limited at UMC. Mr. Williams will be made available to conference with Plaintiffs' ESI consultants regarding this repository, but UMC respectfully requests that the questions directed at Mr. Williams be restricted to the relevant technical structure of Crimestar and not the specific content of database.

CONFIDENTIAL COMMUNICATION
Daniel Garrie, Esq.
June 25, 2014
Page 3

The three databases outlined above are the time-tracking systems disclosed in the June 16, 2014 Special Master hearing by counsel for UMC. These systems, along with the Kronos and Clarity systems, are the universe of time-tracking systems at UMC. These systems will be produced in full, and UMC will coordinate with Plaintiffs with any continuing technical concerns relating to these systems. The production of these databases is subject to the Second Amended ESI Protocol Order and the Confidentiality and Protective Order in place in this litigation. All information within these databases shall be deemed confidential and will be restricted in use to the to-be-identified opt-ins with related data contained in these databases.

If you have any questions regarding this information, please direct them to me at your earliest convenience.

Yours sincerely,

Cayla Witty for
LEWIS BRISBOIS BISGAARD & SMITH LLP

CW
cc:   Plaintiffs' Counsel
      Plaintiffs' ESI Consultants
      Doug Spring

Exhibit D

1  ROBERT W. FREEMAN
Nevada Bar No. 3062
2  MARGARET G. FOLEY
Nevada Bar No. 7703
3  CAYLA WITTY
Nevada Bar No. 12897
4  **LEWIS BRISBOIS BISGAARD & SMITH LLP**
6385 S. Rainbow Boulevard, Suite 600
5  Las Vegas, Nevada 89118
702.893.3383
6  FAX: 702.893.3789
*Attorneys for Defendant University*
7  *Medical Center of Southern Nevada*

8

9              **UNITED STATES DISTRICT COURT**

10                   **DISTRICT OF NEVADA**

11                              ***

12  DANIEL SMALL, CAROLYN           CASE NO. 2-13-cv-0298-APG - PAL
    SMALL. WILLIAM CURTIN, DAVID
13  COHEN, LANETTE LAWRENCE, and
    LOUISE COLLARD, Individually, and
14  on Behalf of All Other Persons      **DECLARATION OF**
    Similarly Situated,                 **DAVID J. WILLIAMS**
15
                 Plaintiff,
16
17  vs.

18  UNIVERSITY MEDICAL CENTER
    OF SOUTHERN NEVADA;
19
                 Defendant.
20

21      I, David J. Williams, hereby declare as follows:

22      1.     I am a System Administrator in the University Medical Center of

23  Southern Nevada (UMC) Information Technology Department (IT). The facts set

24  forth herein are of my own personal knowledge and if sworn I could and would

25  testify competently thereto.

26      2.     On August 4, 2014, I participated in a Special Master hearing via

27  teleconference related to the litigation titled *Small et al. v. University Medical*

28  *Center of Southern Nevada.* I was asked to provide several pieces of information

1  with a supplemental declaration, including contact details for super-users for several

2  timekeeping applications, CrimeStar upgrade details, modules used in Teletracking,

3  and UMC Human Resources access to Clarity.

4  **TIMEKEEPING APPLICATION SUPERUSERS**

5  3.      For Clarity, Mike Oliveri, UMC Senior EHR/ERP Analyst, would be

6  most knowledgeable on this system application. Mr. Oliveri can be reached at

7  mike.oliveri@umcsn.com or (702) 383-6264.

8  4.      For Teletracking, the following individuals would be most

9  knowledgeable on this system application:

10  ▪ John Rendall, Director of Environmental Services & Patient Transport,

11  john.rendall@umcsn.com or (702)765-7930;

12  ▪ Jessica Monje, Manager, Service Response Center,

13  Jessica.monje@umcsn.com or (702) 207-8843; and

14  ▪ Bill Pellegrino, Director, Patient Placement, bill.pellegrino@umcsn.com

15  or (702) 671-1053.

16  5.      For CrimeStar, Ruben Gurrola, Director of Public Safety would be

17  most knowledgeable on this system application. Mr. Gurrola can be reached at

18  ruben.gurrola@umcsn.com or (702) 383-6253.

19  6.      For GRASP, the following individuals would be most knowledgeable

20  on this system application:

21  ▪ Lorraine Noonan, Director of Nursing Operations,

22  Lorraine.noonan@umcsn.com or (702) 383-2548;

23  ▪ Linda Williams, nursing supervisor, linda.williams@umcsn.com or (702)

24  383-2246; and

25  ▪ Tana Wisniewski, Supervisor, Clinical Analysts, would be responsible for

26  UMC IT support for the GRASP application,

27  tana.wisniewski@umcsn.com or (702) 544-5448.

28

LEWIS
BRISBOIS

4822-2940-9819.2                                    2

**CRIMESTAR**

7.      I was asked to determine the last CrimeStar application upgrade at UMC. Attached please find as Exhibit A the email change management ticket for the most recent CrimeStar upgrade, dated April 30, 2012.

**TELETRACKING**

8.      With regard to Teletracking, I was asked to detail the modules at use in the Sodexo Teletracking software suite.

9.      The Sodexo **TELETRACKING** software suite is divided into two separate sets of servers: (1) Capacity Management Suite (CMS), and (2) Service Tracking (ST).

10.    CMS consists of the following:

a.   BedTracking - Used primarily by Administration, ODA, PPC and the nurses on the floor.  For obvious reasons this product is used to monitor and maintain patient census and coordinate patient location depending upon type and acuity of care.

b.   PreAdmitTracking (with electronic Bedboard) - Used primarily by Trauma and ER and Admitting.

c.   TransportTracking - used primarily by Transportation and EVS.

d.   PatientTracking - Used primarily by Administration, ODA, PPC and the nurses on the floor.  For obvious reasons this product is used to monitor and maintain patient census and coordinate patient location depending upon type and acuity of care.

e.   Standard and Custom Reporting

f.   All of these are separate applications within the software suite.

g.   There are production, test and train servers for CMS (umccmsprod, umccmstrain, umccmstest)

11.    ST consists of ServiceTracking only. There are production, test and train servers for ST (umcstprod, umcsttrain, umcsttest).

**CLARITY**

12.    For Clarity, I was asked to determine who in human resources or related to human resource functions at UMC had access to Clarity and when they last used Clarity.

1    13.    Attached as Exhibit B is a list of the individuals I identified with an HR

2  or related function that had a Clarity ID. I noted the date of the first timesheet

3  located (if any), the date of the last timesheet found (if any), the date of last access

4  into Clarity (if any). A key to my column headings is included with the list.

5    14.    I was also asked to provide a list of possible reports that can be run in

6  Clarity. I have attached screenshots of the report directory from Clarity as Exhibit C.

7  I cannot guarantee that any of these report options are actually capable of being used

8  in Clarity currently.

9

10    I hereby declare under penalty of perjury under the laws of the State of

11  Nevada that the foregoing statements are true and correct to the best of my

12  knowledge and that this declaration was executed on August 7, 2014, in Las Vegas,

13  Nevada.

14

15                    DAVID J. WILLIAMS

16

17

18

19

20

21

22

23

24

25

26

27

28

LEWIS
BRISBOIS

4822-2940-9819.2                              4

Exhibit A

**Witty, Cayla**

| | |
|---|---|
| **From:** | SPFSQL <SPFSQL@umcsn.com> |
| **Sent:** | Monday, April 30, 2012 10:46 AM |
| **To:** | David Williams; isdept-D |
| **Cc:** | Tod Miller |
| **Subject:** | Change Management Notice - Upgrade Crimestar Application |

**Title:** Upgrade Crimestar Application
**Start Time:** Monday, April 30, 2012  8:00:00 AM
**End Time:** Monday, April 30, 2012  11:00:00 AM
**Where:** Datacenter
**Why:** Public Safety Request Functional Improvement
**What:** Upgrade Crimestar Application to Latest Levels
**Responsible IT Employee:** Dave Williams
**Users Affected:** Public Safety
**Area of Responsilibity:** IT Development
**Type of Change:** Standard (Lvl 3)
**Status:** Completed
**Risk Assessment:** Yes
**Risk Assessment #:** 133
**Rollback Plan:** Yes
**Rollback Plan Details:** Roll back upgrade as necessary from backups
**Other Information:**

**Also Notify:** Tod.Miller@umcsn.com

**Created by:** David Williams
**Modified by:** David Williams
**Approved by:** CAB
**Approval Date:** Wednesday, April 18, 2012

**View the Calendar:** http://umcitweb/Lists/ChangeManagement/calendar.aspx

Exhibit B

| Name / LogonID | Start Date | End Date | Last Access | Comments |
|---|---|---|---|---|
| Stephanie Merrill / hrsteph | 10/3/2011 | 2/4/2013 | None | There is no time logged for Stephanie Merrill. It appears to me that Mike Oliveri or Sean Grauer filled in and approved her timesheets. From 7/30/2012 until present, the timesheets were not even submitted for approval. |
| John Espinoza / jespinoza | N/A | N/A | None | John has an ID, but I could not locate any resources under his resource ID or logon ID |
| Doug Spring / hrdspring | N/A | N/A | None | Doug has an ID, but I could not locate any resources under his resource ID or logon ID |
| Mary Sinclair / hrmary | 7/5/2010 | 6/23/2014 | 7/29/2013 | Mary had a few timesheets utilized, but they only showed a few hours on each time sheet. Most were not even opened or filled out or approved. |
| Jackie Panzeri | N/A | N/A | None | I could locate no resources or an ID belonging to Jackie Panzeri in Clarity |

Search was done for ALL resources attached to the person from 1/1/2006 to 8/5/2014
Name - Employee Name
LogonID - Employee logon ID and Resource ID in Clarity
Start Date - Date of first timesheet found
End Date - Date of last timesheet found
Last Access - Date of last access into Clarity
Comments - as stated

Exhibit C





Exhibit E

1  ROBERT W. FREEMAN
   Nevada Bar No. 3062
2  MARGARET G. FOLEY
   Nevada Bar No. 7703
3  CAYLA WITTY
   Nevada Bar No. 12897
4  **LEWIS BRISBOIS BISGAARD & SMITH** LLP
   6385 S. Rainbow Boulevard, Suite 600
5  Las Vegas, Nevada 89118
   702.893.3383
6  FAX: 702.893.3789
   *Attorneys for Defendant University*
7  *Medical Center of Southern Nevada*

8

9              **UNITED STATES DISTRICT COURT**

10                 **DISTRICT OF NEVADA**

11                        ***

12  DANIEL SMALL, CAROLYN            CASE NO. 2-13-cv-0298-APG - PAL
    SMALL. WILLIAM CURTIN, DAVID
13  COHEN, LANETTE LAWRENCE, and
    LOUISE COLLARD, Individually, and
14  on Behalf of All Other Persons       **DECLARATION OF**
    Similarly Situated,                  **DAVID J. WILLIAMS**
15
            Plaintiff,
16
17  vs.

18  UNIVERSITY MEDICAL CENTER
    OF SOUTHERN NEVADA;
19
            Defendant.
20

21      I, David J. Williams, hereby declare as follows:

22      1.      I am a System Administrator in the University Medical Center of

23  Southern Nevada (UMC) Information Technology Department (IT). The facts set

24  forth herein are of my own personal knowledge and if sworn I could and would

25  testify competently thereto.

26      2.      I first learned about the *Small v. UMC* lawsuit in July 2013 via an email

27  from UMC Human Resources. At that time, I was not contacted or notified to

28  preserve any information related to the lawsuit.

4822-2940-9819.2

3.     Toward the end of March 2014, I was instructed by IT management, Ernie McKinley, the Chief Information Officer, with Susie Kisner present, to review Blackberry Enterprise Server settings and begin retaining SMS messages sent by certain UMC employees. This was the first I heard of data preservation for this lawsuit although I did not immediately know the reason for the change at the time of the request. Through a later telephone conference, various in-person conversations, and email communications, with Lonnie Richardson, Susie Kisner, and others, I learned of the reason for the change that was requested which was in response to this litigation. The preservation efforts were later expanded to workstations and other data repositories in mid-April 2014.

4.     Individually, and with the cooperation with the other system administrators, I continued to preserve the confidentiality, integrity, and availability of the systems under my purview.  Part of these responsibilities included verifying the back-ups of all systems that are retained in CommVault, our backup system. I did verify that UMC is backing up several hundred applications contained on numerous servers, including Clarity, TeleTracking, Crimestar, and GRASP, which I understand to be of particular interest in this matter.  I know that others were tasked with collecting desktop hard-drives and other efforts, but I was not responsible for those activities.

5.     I have worked at UMC since April 19, 2004. A true and correct copy of the job description for my position is attached hereto as Exhibit A.

6.     There are six (6) System Administrators at UMC, including me. The other System Administrators are: David Bennett, Gerald (Jerry) Bevil, Joel Aguilar, Jason Clark, and Darin DeCounter. We share responsibility for all systems at UMC within certain specifications, basically broken down by OS platforms. For example, four System Administrators work on Windows systems of which the Clarity system is one.

LEWIS
BRISBOI
S

1    7.    UMC began using the Clarity project management software around
2  May of 2006. I personally installed it with the help of consultants and have been the
3  main System Administrator maintaining it with the help of Carmelito Mendoza, the
4  Database Administrator. I was only responsible for the system configuration, not the
5  use of the application. Clarity was meant to be a project management tool, as UMC
6  was trying to establish a formal PMO. After the removal of Lacy Thomas who was
7  the CEO at the time Clarity was brought in, Clarity devolved into collecting data for
8  analysis of time spent by UMC staff on projects versus working tickets generated in
9  UMC's problem tracking system. Clarity was meant to manage projects and
10  estimate workloads.  To my knowledge the entries did not determine any employee
11  pay.

12    8.    IT staff entered time spent each day in particular areas, such as
13  break/fix or specific projects as line items. I was not provided with any hard copy
14  form to aid in timekeeping or instructed or advised to record outside of Clarity what
15  I did each day to aid me in putting my time on assigned tasks into Clarity, and I do
16  not know of anyone who received such instruction or aid.

17    9.    The IT staff entering time into Clarity were supposed to honestly track
18  hours worked, however, data entered into Clarity did not affect pay. I created the
19  attached document, identified as Exhibit D, which demonstrates via screen shots an
20  option box located near the bottom wherein breaks/lunches could be selected as a
21  line item.   Only the hours in Kronos generated pay, not the time recorded in Clarity.
22  Because I am an exempt employee, I logged into Kronos at the beginning of the day
23  and was paid for the salary time clocked in Kronos.

24    10.    When an employee entered their time in Clarity, the entry was time and
25  date-stamped. I did not learn this until recently. Ideally, time should have been
26  entered on a daily basis, but workload for many employees made this difficult.  I do
27  not know of any other automatic data that was captured when an employee entry
28  was submitted.

LEWI
S
BRISBOI
S

4822-2940-9819.2                                           3

11.     Reports were run on a periodic basis by the data owner, Mike Oliveri. Other members of UMC management received reports from Clarity, and an employee's timesheet entries were approved by the employee's supervisor. I do not know what the specific content was or the number of reports other than that the reports gave management a breakdown of the time spent per project/break-fix bucket. I believe that Mr. Oliveri also ran reports detailing progress on projects and the hours people worked when Clarity was used to manage projects. We worked together several times to resolve problems with running the reports.  Eventually, ITROI was contracted to assist Mr. Oliveri in resolving the errors. I was not privy to the information contained within the reports Mr. Oliveri or ITROI generated.

12.     Data within Clarity was also archived, or marked inactive, on a periodic basis. Mr. Oliveri was also was responsible for this activity. Once data was complete for all personnel for a period, it was archived. Users could not update the information or see the data in the application portal after this archival of data.

13.     To my knowledge, no data was ever completely removed or deleted from the Clarity system. As described above, the data may not be viewed by a user, but the data was retained in the Clarity system as inactive or archived data.

14.     The Clarity database was housed on a server at UMC. This server, UMCCLARITY, contains the database and all the application programs, reporting tools, etc. This server was shut down on May 5, 2014 after I received an email from Mr. Oliveri indicating that UMC would no longer be using the product. After confirming with management, I turned the system off following standard operating procedure. The data within Clarity is no longer being input or updated to my knowledge, and it has not been moved, altered, lost, or deleted to my knowledge.

15.     To my knowledge, UMC does not have any system similar to Clarity in place currently or since the system was shut down.

16.     At the request of counsel, I restored the Clarity system to functionality in anticipation of remote-viewing by the Special Master on June 16, 2014. I booted

LEWIS
BRISBOI
S

4822-2940-9819.2                                        4

1   the server (which is in a VM environment), did some maintenance to VMware tools
2   and applied outstanding Windows maintenance and rebooted several times to finish
3   these tasks. I waited several hours and then restarted the Niku admin console. From
4   there, I brought up the application, and confirmed that it was ready for use from the
5   application webpage's response. I logged in and shut down the admin console.

6       17.    Clarity is up and running currently. I utilized the system, at the request
7   of counsel, to verify and compare a list of complainants to the users I could find. I
8   logged into the product with an administrator logon and password, and clicked on
9   the timesheet filter icon in the upper-right hand corner. Attached hereto as Exhibit B
10  is a screenshot of the timesheet filter. This screenshot shows the fields I filled to
11  create a list of possible users. I then manually scanned the list of users against the
12  list of opt-in plaintiffs, and supplied a verification report to counsel for UMC. A
13  copy of the verification report is attached hereto as Exhibit C.

14      18.    All obtainable e-mails referenced within this Declaration are attached
15  hereto as Exhibit E.

16

17      I hereby declare under penalty of perjury under the laws of the State of
18  Nevada that the foregoing statements are true and correct to the best of my
19  knowledge and that this declaration was executed on July 8, 2014, in Las Vegas,
20  Nevada.

21
22                              DAVID J. WILLIAMS
23
24
25
26
27
28

Exhibit F

1  ROBERT W. FREEMAN
Nevada Bar No. 3062
2  MARGARET G. FOLEY
Nevada Bar No. 7703
3  CAYLA WITTY
Nevada Bar No. 12897
4  **LEWIS BRISBOIS BISGAARD & SMITH LLP**
6385 S. Rainbow Boulevard, Suite 600
5  Las Vegas, Nevada 89118
702.893.3383
6  FAX: 702.893.3789
*Attorneys for Defendant University*
7  *Medical Center of Southern Nevada*

8

9                    **UNITED STATES DISTRICT COURT**

10                        **DISTRICT OF NEVADA**

11                                 ***

12  DANIEL SMALL, CAROLYN            CASE NO. 2-13-cv-0298-APG - PAL
SMALL. WILLIAM CURTIN, DAVID
13  COHEN, LANETTE LAWRENCE, and
LOUISE COLLARD, Individually, and
14  on Behalf of All Other Persons      **DECLARATION OF**
Similarly Situated,                 **RUBEN GURROLA**
15                                     **REGARDING CRIMESTAR**
              Plaintiff,             **QUESTIONS FROM SPECIAL**
16                                     **MASTER GARRIE**
       vs.
17
UNIVERSITY MEDICAL CENTER
18  OF SOUTHERN NEVADA;

19              Defendant.

20

21        I, RUBEN GURROLA, hereby declare as follows:

22        1.     The facts set forth herein are of my own personal knowledge and if

23  sworn I could and would testify competently thereto.

24        2.     I work at UMC as Director of Public Safety. I was asked to answer the

25  questions listed below with regards to the CrimeStar application in use at UMC to

26  the best of my ability. I spoke with __John Foster_____ to

27  assist me with answering these questions.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4822-2940-9819.1

1

2 • What is the retention schedule for the CrimeStar timekeeping systems?

3 There is no known retention schedule

4

5 • How far back does the data go for the CrimeStar timekeeping systems?

6 The CrimeStar timekeeping system goes back to May of 2003.

7

8 • Can users delete data from the CrimeStar timekeeping

9 systems? And, if so, which systems? Who is able to delete data

10 from the systems? Once deleted, is the data gone permanently?

11 Data can only be deleted by System Administrators Ruben Gurrola

12 and John Foster. Yes, it is gone permanently.

13

14 • Did UMC at any point during the time period at issue migrate

15 or upgrade the CrimeStar timekeeping systems? If yes, please

16 include a statement that details when UMC performed the migration

17 and what data they migrated and how it was migrated.

18 I do not have knowledge of the system ever being upgraded.

19

20 • How does the data entered by the users in the CrimeStar

21 systems differ from data captured in Kronos? Please provide a

22 statement that identifies the additional data that is captured in the

23 CrimeStar timekeeping system that is not captured in Kronos.

24 CrimeStar data is entered by a dispatcher in our control center;

25 Kronos is based on the employee clocking in and out for lunch. The

26 systems are separate Kronos and CrimeStar are not related in

27 anyway.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1
2
3    •    Is information on the duration of meal breaks available in the
4    CrimeStar system? If this data is not available, what relevant data is
5    captured by the system?
6    Yes, start time and end time.
7
8    •    For the CrimeStar timekeeping systems, how long is the data
9    kept that is entered by the users? Include the data retention policies
10   for each of these systems.
11   No data retention policy for this system.  No known limit on how
12   long data is kept.
13
14
15
16   I hereby declare under penalty of perjury under the laws of the State of
17   Nevada that the foregoing statements are true and correct to the best of my
18   knowledge and that this declaration was executed on August 7, 2014, in Las Vegas,
19   Nevada.
20
21   _____
22   RUBEN GURROLA
23
24
25
26
27
28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4822-2940-9819.1                                3

Exhibit G

1  ROBERT W. FREEMAN
   Nevada Bar No. 3062
2  MARGARET G. FOLEY
   Nevada Bar No. 7703
3  CAYLA WITTY
   Nevada Bar No. 12897
4  **LEWIS BRISBOIS BISGAARD & SMITH LLP**
   6385 S. Rainbow Boulevard, Suite 600
5  Las Vegas, Nevada 89118
   702.893.3383
6  FAX: 702.893.3789
   *Attorneys for Defendant University*
7  *Medical Center of Southern Nevada*

8

9              **UNITED STATES DISTRICT COURT**

10                **DISTRICT OF NEVADA**

11                        \*\*\*

12  DANIEL SMALL, CAROLYN           CASE NO. 2-13-cv-0298-APG - PAL
    SMALL. WILLIAM CURTIN, DAVID
13  COHEN, LANETTE LAWRENCE, and
    LOUISE COLLARD, Individually, and
14  on Behalf of All Other Persons       **DECLARATION OF**
    Similarly Situated,                  **LINDA WILLIAMS**
15                                        **REGARDING GRASP**
16              Plaintiff,                **QUESTIONS FROM SPECIAL**
                                          **MASTER GARRIE**
17       vs.

18  UNIVERSITY MEDICAL CENTER
    OF SOUTHERN NEVADA;

19          Defendant.

20

21       I, LINDA WILLIAMS, hereby declare as follows:

22       1.    The facts set forth herein are of my own personal knowledge and if

23  sworn I could and would testify competently thereto.

24       2.    I work at UMC as a Float Pool RN – Critical Care. I was asked to

25  answer the questions listed below with regards to the GRASP application in use at

26  UMC to the best of my ability. I spoke with Not Applicable to assist me with

27  answering these questions.

28

LEWI
S
BRISBO
IS       4822-2940-9819.1

1 • What is the retention schedule for the GRASP system?

2 *Information entered into the GRASP workload can be changed for 24*

3 *hours from the beginning of the shift in which it was started. Shifts*

4 *begin at 7 AM and 7 PM. After 24 hours the workload screen will gray*

5 *out and can't be changed. Staffing Data entered into "Actual Staffing"*

6 *in the Staffing Screen is viewable and therefore can be changed for the*

7 *previous 6 months. All data entered into the system, including any*

8 *changes to data is saved in the GRASP Database each day at midnight.*

9 *Data entered into the system from midnight is called "Transactional*

10 *Data". The current GRASP 3.10 program is the initial web version of*

11 *GRASP. This system was installed and used at UMC beginning 2/11.*

12 *All data entered from this date can be utilized in reports. In addition*

13 *any changes to the workload tool and unit budgets used are maintained*

14 *in the MistroClef Administrative Console.*

15 • How far back does the data go for the GRASP system?

16 *Data in the current version of GRASP, which is the first web version, is*

17 *available from February 2011. It is further limited by available*

18 *reports.*

19

20 • Can users delete data from the GRASP system? And, if so,

21 which systems? Who is able to delete data from the systems? Once

22 deleted, is the data gone permanently?

23 *The workload tool and the Questionnaire, used only when*

24 *validating the workload tool, can be changed for 24 hours from the*

25 *beginning of a shift and then is grayed out.*

26 • Did UMC at any point during the time period at issue migrate

27 or upgrade the GRASP system? If yes, please include a statement

28

LEWIS BRISBOIS

4822-2940-9819.1

2

1  that details when UMC performed the migration and what data they
2  migrated and how it was migrated.

3  *No, there is an upgrade to the system, but UMC has not installed or*
4  *tested the upgrade.*

5  •    How does the data entered by the users in the GRASP system
6  differ from data captured in Kronos? Please provide a statement that
7  identifies the additional data that is captured in the GRASP system
8  that is not captured in Kronos.

9  *Kronos is a payroll system in which all data is entered*
10 *electronically. Reports generated are from actual data. In GRASP*
11 *staffing data is entered manually and is therefore less reliable. Up*
12 *until about 6 months ago there was a secretary in the nursing office*
13 *entering staffing data. Most units don't currently enter staffing*
14 *data.*

15 •    Is information on the duration of meal breaks available in the
16 GRASP system? If this data is not available, what relevant data is
17 captured by the system?

18 *No, GRASP considers staffing for the ADC (average daily census)*
19 *of a unit and adds time for each employee for each of the 3 fifteen*
20 *minute breaks for a 12 hours shift. Since the lunch break is on the*
21 *employees time, they work 12.5 hours and are paid 12 hours time,*
22 *GRASP does not consider the 30 minute meal break.*

23 •    For the the GRASP system, how long is the data kept that is
24 entered by the users? Include the data retention policies for each of
25 these systems.

26 *Data can be viewed for 6 months, but it is my understanding reports*
27 *can be generated from when the current system was installed in*
28 *February 2011.*

LEWI
S
BRISBO
IS

4822-2940-9819.1

3

1       I hereby declare under penalty of perjury under the laws of the State of

2   Nevada that the foregoing statements are true and correct to the best of my

3   knowledge and that this declaration was executed on August 7, 2014, in Las Vegas,

4   Nevada.

5   *Linda Williams*

6          LINDA WILLIAMS

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit H

1   ROBERT W. FREEMAN
    Nevada Bar No. 3062
2   MARGARET G. FOLEY
    Nevada Bar No. 7703
3   CAYLA WITTY
    Nevada Bar No. 12897
4   **LEWIS BRISBOIS BISGAARD & SMITH** LLP
    6385 S. Rainbow Boulevard, Suite 600
5   Las Vegas, Nevada 89118
    702.893.3383
6   FAX: 702.893.3789
    *Attorneys for Defendant University*
7   *Medical Center of Southern Nevada*

8

9           **UNITED STATES DISTRICT COURT**

10               **DISTRICT OF NEVADA**

11                    \*\*\*

| | |
|---|---|
| 12 DANIEL SMALL, CAROLYN SMALL. WILLIAM CURTIN, DAVID | CASE NO. 2-13-cv-0298-APG - PAL |
| 13 COHEN, LANETTE LAWRENCE, and LOUISE COLLARD, Individually, and | |
| 14 on Behalf of All Other Persons Similarly Situated, | **DECLARATION OF CARMELITO MENDOZA** |
| 15          Plaintiff, | **REGARDING DATABASE ADMINISTRATION FOR** |
| 16 | **CLARITY, CRIMESTAR, GRASP AND TELETRACKING** |
| 17     vs. | |
| 18 UNIVERSITY MEDICAL CENTER OF SOUTHERN NEVADA; | |
| 19         Defendant. | |

20

21      I, CARMELITO MENDOZA, hereby declare as follows:

22         1.     I am a Database Analyst in the University Medical Center of Southern

23 Nevada (UMC) Information Technology Department (IT). The facts set forth herein

24 are of my own personal knowledge and if sworn I could and would testify

25 competently thereto.

26         2.     I have worked at UMC since November 2008. As a part of my job

27 duties, I perform maintenance on the Clarity, Teletracking, CrimeStar, and Grasp

28

LEWIS
BRISBOIS

databases, including monitoring of scripted back-up procedures, coordinating operations with vendors, and generating reports as needed.

3.     Each database – Clarity, Teletracking, CrimeStar, and GRASP – is single-threaded. I am the only individual at UMC with administrative control of these databases. Thus, only I could delete data from these databases. Because of the dependent data within these databases, it is not simple to remove data. I have not deleted any data on the systems.

4.     I am not an administrator on the applications that wrote to these databases. I know as a user of Clarity that users do not have the ability to alter or delete data submitted in the application. I do not know of users on the other systems (Teletracking, CrimeStar, and GRASP) have the ability remove data.

5.     I do not know of a specific data retention policy for these databases. However, all data written to these databases from going live remains in the databases. I know of no data loss, data purge, or deletion from these databases.

6.     As a part of my back-up practices, incremental back-up is conducted on a daily basis for each of these databases as part of sql maintenance. Each month, these back-ups are copied to a server for a monthly back-up conducted by Shane Lattin via CommVault. Mr. Lattin can speak to these policies more closely.

7.     For all database upgrades, I copy the most recent back-up to the new box to prevent any data compromise. I have not had any issues accomplishing this database migration\upgrade, and I am the only one that would complete this task at UMC. I do not personally keep a record of each database upgrade or migration.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /


LEWIS
BRISBOIS

1    8.    I have reviewed the questions within the Special Master Order filed
2  July 31, 2014. I have answered those within my knowledge to the best of my ability.

3

4    I hereby declare under penalty of perjury under the laws of the State of
5  Nevada that the foregoing statements are true and correct to the best of my
6  knowledge and that this declaration was executed on August 1, 2014, in Las Vegas,
7  Nevada.

8

9    CARMELITO MENDOZA

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit I

1  ROBERT W. FREEMAN
   Nevada Bar No. 3062
2  MARGARET G. FOLEY
   Nevada Bar No. 7703
3  CAYLA WITTY
   Nevada Bar No. 12897
4  **LEWIS BRISBOIS BISGAARD & SMITH** LLP
   6385 S. Rainbow Boulevard, Suite 600
5  Las Vegas, Nevada 89118
   702.893.3383
6  FAX: 702.893.3789
   *Attorneys for Defendant University*
7  *Medical Center of Southern Nevada*

8

9              **UNITED STATES DISTRICT COURT**

10                **DISTRICT OF NEVADA**

11                        \*\*\*

| | |
|---|---|
| 12  DANIEL SMALL, CAROLYN SMALL. WILLIAM CURTIN, DAVID COHEN, LANETTE LAWRENCE, and LOUISE COLLARD, Individually, and on Behalf of All Other Persons Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>UNIVERSITY MEDICAL CENTER OF SOUTHERN NEVADA;<br><br>Defendant. | CASE NO. 2-13-cv-0298-APG - PAL<br><br>**DECLARATION OF TANA WISNIEWSKI REGARDING GRASP QUESTIONS FROM SPECIAL MASTER GARRIE** |

21        I, TANA WISNIEWSKI, hereby declare as follows:

22        1.      The facts set forth herein are of my own personal knowledge and if

23  sworn I could and would testify competently thereto.

24        2.      I work at UMC as an IT Supervisor of the Clinical Analysts. I was

25  asked to answer the questions listed below with regards to the GRASP application in

26  use at UMC to the best of my ability:

27        •       What is the retention schedule for the GRASP system?

28

LEWIS
BRISBOIS

4822-2940-9819.1

- How far back does the data go for the GRASP system?
- Can users delete data from the GRASP system? And, if so, which systems? Who is able to delete data from the systems? Once deleted, is the data gone permanently?
- Did UMC at any point during the time period at issue migrate or upgrade the GRASP system? If yes, please include a statement that details when UMC performed the migration and what data they migrated and how it was migrated.
- How does the data entered by the users in the GRASP system differ from data captured in Kronos? Please provide a statement that identifies the additional data that is captured in the GRASP system that is not captured in Kronos.
- Is information on the duration of meal breaks available in the GRASP system? If this data is not available, what relevant data is captured by the system?
- For the the GRASP system, how long is the data kept that is entered by the users? Include the data retention policies for each of these systems.

3.      To the best of my knowledge, GRASP is not a timekeeping system. It is used to determine patient acuity needs.

4.      Linda Williams is the individual most knowledgeable on the specifics for the use of GRASP from a user perspective.

I hereby declare under penalty of perjury under the laws of the State of Nevada that the foregoing statements are true and correct to the best of my knowledge and that this declaration was executed on August 7, 2014, in Las Vegas, Nevada.

TANA WISNIEWSKI

LEWIS
BRISBOIS