EXHIBIT D

Special Master's Hearing   August 8, 2014
*** Telephonic ***

```
 1                    UNITED STATES DISTRICT COURT

 2                        DISTRICT OF NEVADA

 3

 4

 5   DANIEL SMALL, CAROLYN SMALL,    )
     WILLIAM CURTIN, DAVID COHEN,    )
 6   LANETTE LAWRENCE, and LOUISE    )
     COLLARD, Individually, and on   )
 7   Behalf of All Other Persons     )
     Similarly Situated,             )
 8                                   )
          Plaintiff,                 )
 9                                   ) Case No.
              vs.                    ) 2:13-cv-0298-APG-PAL
10                                   )
     UNIVERSITY MEDICAL CENTER OF    )
11   SOUTHERN NEVADA,                )
                                     )
12          Defendant.               )
     _____)
13

14     REPORTER'S TRANSCRIPT OF SPECIAL MASTER'S HEARING

15                    HEARD TELEPHONICALLY

16   BEFORE SPECIAL MASTER PRESIDING, DANIEL GARRIE, ESQ.

17              Taken on Friday, August 8, 2014

18                     At 10:07 a.m.

19                 Taken at the Law Offices of:

20            Lewis Brisbois Bisgaard & Smith, LLP

21          6385 South Rainbow Boulevard, Suite 600

22                    Las Vegas, Nevada

23

24

25   Reported By: Gale Salerno, RMR, CCR No. 542
```

CERTIFIED
COPY

```
 1    APPEARANCES:

 2    For the Plaintiffs:  (Present Telephonically)

 3            JON A. TOSTRUD, ESQ.
              ANTHONY CARTER, ESQ.
 4            Tostrud Law Group
              1925 Century Park East, Suite 2125
 5            Los Angeles, California  90067
              (310) 278-2600
 6            jtostrud@tostrudlaw.com
              acarter@tostrudlaw.com
 7
                  - and -
 8
              MARC L. GODINO, ESQ.
 9            Glancy Binkow & Goldberg, LLP
              1925 Century Park East, Suite 2100
10            Los Angeles, California  90067
              (310) 201-9105
11            mgodino@glancylaw.com

12

13    For the Defendant:  (Present Telephonically)

14            CAYLA J. WITTY, ESQ.
              Lewis Brisbois Bisgaard & Smith, LLP
15            6385 South Rainbow Boulevard, Suite 600
              Las Vegas, Nevada  89118
16            (702) 893-3383
              cayla.witty@lewisbrisbois.com
17

18    For the Defendant:

19            MARGARET G. FOLEY, ESQ.
              Lewis Brisbois Bisgaard & Smith, LLP
20            6385 South Rainbow Boulevard, Suite 600
              Las Vegas, Nevada  89118
21            (702) 893-3383
              margaret.foley@lewisbrisbois.com
22

23    Also Present:  (Present Telephonically)

24            DOUGLAS E. FORREST, ESQ., ILS

25
```

Special Master's Hearing    August 8, 2014
*** Telephonic ***

```
 1   site, extract the data from -- well, go on-site and
 2   become -- I mean, this is where I get lost.  I don't
 3   understand how a vendor can go on-site and become
 4   competent in under 40 hours on four systems and
 5   perform the collection if they don't actually know
 6   how the systems work.
 7           So the whole problem we have right now
 8   before us is that we can't actually identify anybody
 9   at UMC that has knowledge as to how the systems
10   actually work.
11           MS. WITTY:  This is Counsel Witty.  I
12   think, and I apologize, this was an abbreviated
13   process drawn up rather quickly.  Obviously, the
14   vendor has not been able to be on-site and be able to
15   further investigate.
16           I think that the expectation was that they
17   would have in-house expertise as to how these systems
18   work.  We just haven't had a chance to get into all
19   those details.
20           As I mentioned, the process for retaining a
21   vendor is complicated due to the status of our client
22   as a public entity and the approval process there.
23   We are waiting for that approval before we move ahead
24   and incur any costs.
25           SPECIAL MASTER GARRIE:  I think before we
```

Special Master's Hearing    August 8, 2014
*** Telephonic ***

```
 1   go ahead with the vendor, it would be useful for the
 2   vendor to submit to us, submit to these proceedings,
 3   qualifications that they are, indeed, competent in
 4   these systems before we go down the path and spend
 5   resources on it.
 6            What I will order is UMC to find a vendor
 7   that is competent in all four of these systems,
 8   sufficient that they are able and asked to have a
 9   conversation with the plaintiffs' IT individuals, and
10   dialogue about this is what these systems capture,
11   this is what we are able to extract.  And provide the
12   basic who, what, when, where sort of criteria that
13   would allow Plaintiffs then to come back with a
14   reasonable understanding of what these systems have.
15   Unless -- you mentioned -- the reason I mentioned
16   this is you said you would like to make sure that the
17   plaintiffs' ESI vendors are involved.
18            The only concern I have here is ensuring
19   that (a) UMC actually knows what the systems are
20   capturing, (b) that they can properly inform counsel
21   for UMC that this is, indeed, what they are capturing
22   and what they have captured and what we can provide
23   you.
24            And then counsel for UMC is able to make
25   these representations to Plaintiffs.  And there could
```

Special Master's Hearing    August 8, 2014
*** Telephonic ***

1    be a conversation about what information is to be,

2    you know, and then UMC obviously will produce the

3    responsive ESI obviously for all the members of the

4    Plaintiffs, that ESI and these systems as it relates

5    to the issues, underlying issues, is responsive and

6    should be produced.  Those are my high level

7    thoughts.

8            Does Plaintiffs have any -- Mr. Forrest or

9    Plaintiffs have any comments or thoughts?

10           MR. FORREST:  This is Mr. Forrest.  The

11   only comment that I would have is as long as

12   appropriate expertise can be provided.  It may be the

13   case that such expertise is not within a single

14   vendor, and there may have to be different vendors

15   for one or more of the different systems.

16           SPECIAL MASTER GARRIE:  Yeah, I would defer

17   to UMC to provide their vendor's credentials

18   sufficient to provide demonstrative evidence that

19   they are, indeed, competent to produce and extract

20   data from these systems.

21           MR. GODINO:  This is Counsel Godino.  Maybe

22   a solution in part would be if UMC could get a

23   representative for each of the four systems.  You

24   know, from Clarity, from CrimeStar, from Teletracking

25   and from Grasp, to be a point person from those

Special Master's Hearing    August 8, 2014
*** Telephonic ***

1    softwares that could come in and talk the tech talk

2    that we need to get this done.

3              MS. WITTY:  This is Counsel Witty.  I

4    appreciate that, Counsel Godino, because that is

5    actually the full intention to start there.

6              SPECIAL MASTER GARRIE:  I would point out

7    that nobody at UMC actually knows, so there's not a

8    whole lot of -- this is the complicated part that we

9    face in this particular matter.

10             MS. WITTY:  Special Master Garrie, though,

11   I think what Mr. Godino was saying was not

12   necessarily a point person within UMC, but a point

13   person for the software --

14             SPECIAL MASTER GARRIE:  I understand,

15   Counsel.

16             MS. WITTY:  -- we can work with someone

17   from Teletracking, someone from CrimeStar, someone

18   from CA.

19             SPECIAL MASTER GARRIE:  Counsel for UMC, I

20   understand what was said.  My point was different.

21             And to finish, the point is as follows:

22   UMC actually doesn't know with confidence how these

23   systems are actually used or configured, so it would

24   require more than just having a point person to talk

25   to.  They're going to have to actually come in and

```
 1   look at the systems before they can actually start

 2   talking.  That was all I wanted to state.

 3            I do think that Mr. Godino -- and as you

 4   agreed -- suggestion makes a lot of sense, to

 5   identify representatives.  But the first test that

 6   needs to happen is find the representative and then

 7   have him come look at how UMC is actually using and

 8   configured the systems.

 9            MR. GODINO:  This is Counsel Godino.

10   Exactly.

11            SPECIAL MASTER GARRIE:  Then you can have a

12   conversation.

13            What would be the objective of the

14   conversation, counsel for UMC, in your mind?

15            MS. WITTY:  This is Counsel Witty.  I don't

16   know what conversation you're talking about.  I don't

17   know if you're talking about our vendor talking with

18   the software.  I don't know if you're talking about

19   our vendor talking with our users.

20            SPECIAL MASTER GARRIE:  I apologize.  Let

21   me be clear.  Step one is an expert for each one of

22   the four timekeeping systems would be identified from

23   the vendor's side.  Okay?

24            Next, once that is completed, the parties

25   will -- I lost my notes.  One second.  Once the
```

```
 1    experts have been identified and has had a chance to
 2    go on-site and establish how UMC uses its system,
 3    that said expert will then -- could then talk to
 4    Plaintiffs' expert and explain how UMC uses the
 5    systems.
 6              Because it is possible, I believe, that it
 7    might not be necessary to have the data from each of
 8    these systems.  Based on what I've read, it might
 9    not actually be -- once we actually understand how
10    each system is used, it might turn out that it's
11    not necessary to have data from each of these
12    systems.
13              Does that make sense, counsel for
14    Plaintiffs?
15              MR. TOSTRUD:  This is Counsel Tostrud.  As
16    I think I expressed in my e-mail on this topic, our
17    view is that it's been established that all four of
18    the systems do contain relevant information.  We
19    would ask that all four be produced.
20              But if in the process, if in the process
21    of going through this analysis with each of the
22    respective software provider's representatives we
23    learn something else, we're certainly willing to,
24    you know, adjust.  But right now, it's been
25    demonstrated that they're all relevant and should be
```

Special Master's Hearing   August 8, 2014
*** Telephonic ***

 1   produced.

 2          SPECIAL MASTER GARRIE:  Okay.  So with that

 3   in mind, step three, counsel for UMC, said experts

 4   will talk to Plaintiffs' experts, and explain how UMC

 5   uses its system as it relates to -- and after

 6   speaking with counsel for UMC -- but as it relates to

 7   this litigation.

 8          The result of that conversation will be

 9   basically an understanding between the parties, the

10   data that is to be produced.  The data set to be

11   produced that is, indeed, responsive, because we're

12   not exactly sure what data has been captured.

13          Once that's been identified, then the UMC

14   ESI vendor can work with either I guess whomever

15   at -- I think you called the system administrator

16   or -- was it UMC system administrator?  To extract

17   the data, and/or generate the reports, depending on

18   what we learn.  And then counsel provide to counsel

19   for UMC for review, and then produce it.

20          And that's what I was referring to, Counsel

21   Witty.  Does that make sense?

22          MS. WITTY:  This is Counsel Witty.  Yes.

23          SPECIAL MASTER GARRIE:  Would that be

24   acceptable to UMC?

25          MS. WITTY:  This is Counsel Witty.  My

Special Master's Hearing   August 8, 2014
*** Telephonic ***

1    concern -- and I appreciate Mr. Forrest's perspective

2    on this.  But asking for an expert in each of these

3    systems could be a very time consuming and expensive

4    endeavor, where we would have the opportunity to work

5    with someone who might be able to work with this

6    system in coordination with the vendor.

7              I'm concerned that if we spend our time

8    looking for an expert in each of these systems, that

9    it will prolong this production.

10             SPECIAL MASTER GARRIE:  Well, actually what

11   I say was that -- I think Mr. Godino suggested what I

12   thought was reasonable, was that you would contact a

13   vendor, and a representative from each of the vendors

14   would basically come on-site for a day or two, or

15   whatever is necessary, to establish how UMC uses this

16   system, how they've been configured.

17             If you're saying that the -- at some

18   point -- and I understand and appreciate UMC's

19   perspective, but UMC must understand how it uses the

20   system and how the system is configured before it can

21   do anything.

22             If the ESI vendor does not have the

23   technical expertise for a particular system, it won't

24   prove to be productive or fruitful.

25             MS. WITTY:  This is Counsel Witty.  But if

Special Master's Hearing   August 8, 2014
*** Telephonic ***

```
 1   the vendor can work with the software vendor to gain
 2   that technical knowledge -- I just don't want to have
 3   to go out and find an expert on Clarity, an expert on
 4   CrimeStar, an expert on Teletracking, an expert on
 5   Grasp, to then work with my vendor and to work with
 6   the software company so that...
 7           MR. TOSTRUD:  This is Counsel Tostrud.
 8   And I understand Counsel Witty indicated that UMC
 9   has active contracts with at least three of the four
10   software program providers.  I'm speculating, but
11   it's my guess that there is an option in the
12   contract to contact a vendor for support and
13   assistance.
14           So I wonder if you can go back to the
15   contract and just see with at least three of those
16   systems if the ability to reach out to the provider
17   and get assistance and support already exists?
18           SPECIAL MASTER GARRIE:  And let me be
19   clear, counsel for UMC.  UMC needs to, whether it be
20   through the vendor, they need to have somebody that
21   has demonstrated competency and understanding of
22   these systems.  And we're just trying to identify
23   how to find that individual in the most timely
24   manner.
25           You can't have your ESI vendor go to UMC
```

Special Master's Hearing   August 8, 2014
*** Telephonic ***

```
 1   and get training and knowledge on this system when

 2   nobody at UMC actually has that knowledge.

 3            MS. WITTY:  This is Counsel Witty.  I fully

 4   understand that aspect of it.  I just want to make

 5   sure that I don't have to meet an arbitrary

 6   requirement of having someone assigned as an expert,

 7   that the idea is as long as we have the knowledge of

 8   how the system is configured at UMC, we can move

 9   forward.

10            SPECIAL MASTER GARRIE:  Okay.  So in order

11   to -- yes.  But in order to figure out how the system

12   is configured, the ESI vendor is not that person.

13            MS. WITTY:  Right.  It requires someone

14   with knowledge of the system itself.  I completely

15   understand that.

16            SPECIAL MASTER GARRIE:  And that person

17   theoretically has to be an expert in the system.  I

18   mean, I don't understand.  Like, I would assume that

19   they have a support contract and somebody could come

20   out, or they have on-site vendors or somebody that

21   could come out that --

22            MS. WITTY:  Yes, Special Master Garrie.  I

23   think it was more a semantics argument, and I

24   apologize, I wanted to make sure that was clear.

25   Because initially the way I heard it it was we were
```

Special Master's Hearing    August 8, 2014
*** Telephonic ***

```
 1   being required to hire four experts for these
 2   systems.
 3          I think that we have established from the
 4   record now that what we are looking at is making sure
 5   that we have expertise in the system to determine the
 6   configuration, to make sure that we have someone who
 7   can work with our vendors to make sure the
 8   information we're getting out is what is needed.
 9          MS. FOLEY:  And this is Counsel Foley.
10   Just to clarify that that person can at least
11   initially be the software vendor liaison with UMC
12   to coordinate with defense counsel's ESI vendor.
13   Yes?
14          SPECIAL MASTER GARRIE:  Well, yes, but I
15   need to offer further clarity.
16          MS. FOLEY:  Please do.  Thanks.
17          SPECIAL MASTER GARRIE:  Before the ESI
18   vendor is appointed and used, UMC -- and I think this
19   needs -- it's not a matter of a point of contact on a
20   contract.  Someone needs to come out to UMC or
21   remotely log in, outside of Teletracker, which
22   actually supports the entire system, so it should be
23   a fairly trivial process.
24          But for CrimeStar, for instance, there
25   needs to be an individual from CrimeStar or a third
```

Special Master's Hearing   August 8, 2014
*** Telephonic ***

```
 1    party who calls in in Vegas, or whomever they use or

 2    recommend, that comes out and looks at how UMC has

 3    configured CrimeStar to determine whether auto

 4    capturing time or -- I mean, it appears that it logs

 5    lunch breaks, how it logs them, et cetera, et cetera,

 6    to understand all of those technical pieces of

 7    information, and that person that is coming has to be

 8    a very competent and skilled user with CrimeStar.

 9            Once they have that knowledge for UMC,

10    then the ESI vendor is more than able, I'm sure, to

11    work with that individual to get that information

12    out.

13            But we need to know what information is

14    there first.  Is that clear?  That's my concern.

15            MS. FOLEY:  This is Counsel Foley.  It's

16    clearer.  But I just want to confirm that the person

17    you're talking about with the software knowledge from

18    Sodexo, or whatever, is that someone actually who is

19    part of the UMC contract support that can do that?

20    Or does that need to be some other third party

21    unconnected?

22            SPECIAL MASTER GARRIE:  I'm not privy to

23    the support contract.

24            MS. FOLEY:  Okay.

25            SPECIAL MASTER GARRIE:  So I don't care how
```

Special Master's Hearing   August 8, 2014
*** Telephonic ***

```
 1    UMC finds the person, but that person has to have
 2    sufficient technical competence and skill.
 3              MS. FOLEY:  Okay.  But if the person does
 4    have the technical skill and is, in fact, UMC's
 5    Sodexo vendor person, that person would be
 6    acceptable?
 7              SPECIAL MASTER GARRIE:  That's fine.
 8              MS. FOLEY:  Thank you.
 9              SPECIAL MASTER GARRIE:  Anybody is
10    acceptable that can establish -- I would assume the
11    Plaintiffs, given all the history and issues we've
12    had here, that it would be very useful and
13    constructive that UMC can make those individuals
14    available or circulate their CVs, or some way to
15    establish or validate to all parties so we don't have
16    to repeat this.  That whoever is coming on-site to
17    figure out how the systems are actually working at
18    UMC knows what they're doing.
19              Now, if it's the third-party contracts or
20    trading Hershey bars, I don't care.
21              MS. FOLEY:  Thank you for clarifying.  Now
22    I understand.
23              SPECIAL MASTER GARRIE:  Okay.  But the
24    point is before UMC works with the ESI vendor, they
25    need to be able to explain to the ESI vendor how
```

Special Master's Hearing    August 8, 2014
*** Telephonic ***

```
 1    those systems are technically configured.  So then
 2    the ESI vendor can then figure out how to get the
 3    data out.  Does that make sense?
 4              MS. FOLEY:  This is Counsel Foley.  It does
 5    make sense.
 6              And just while we're having the
 7    conversation, throwing it out there, Special Master,
 8    you had mentioned you might want to vet the ESI
 9    vendor by talking to them yourself.  Do you believe
10    that this other process needs to take place first
11    before you do that?
12              SPECIAL MASTER GARRIE:  I mean, in the
13    interest of efficiency, it probably makes more sense
14    to make sure we find the individuals before we
15    start -- I mean, I can vet the -- I'll certainly
16    welcome a quick 15 to 30-minute conversation with the
17    vendor to determine if they have the competency.
18              But I assume that if the vendor works on
19    any sort of big platform -- and I've actually heard
20    of this vendor -- that it should be a fairly easy
21    process once UMC is able to explain how they use the
22    system and how they're configured so they can
23    properly get the data out without damaging it.
24              MS. FOLEY:  Thank you.  I appreciate that
25    clarification.
```

Special Master's Hearing   August 8, 2014
*** Telephonic ***

```
 1              Is it possible that UMC can get back to
 2    you about whether it makes sense to have you talk
 3    to the vendor at an earlier point or at a later
 4    point?
 5              SPECIAL MASTER GARRIE:  I'm going to set
 6    timelines.
 7              MS. FOLEY:  Right.  But just for vetting
 8    for your comfort.  Because it sounds like you could
 9    theoretically talk to this vendor, and that that
10    might allay some of your concerns that you've set out
11    here, based on the e-mail, which would then advance
12    the ball in a way.
13              SPECIAL MASTER GARRIE:  Yeah.  I mean, I
14    don't believe the vendor will have specific -- I know
15    they have New-X expertise, and I know they have like
16    Kcura and Relativity expertise.  All I need to know
17    is that the vendor knows how to extract data from a
18    database even when they're giving it, so I would
19    welcome the conversation.
20              MS. FOLEY:  This is Counsel Foley.  Thank
21    you.
22              SPECIAL MASTER GARRIE:  Counsel for
23    Plaintiffs, does that sound like an acceptable
24    proposal?
25              MR. TOSTRUD:  This is Counsel Tostrud.  It
```

1    does.  The only question I have is Counsel Witty

2    indicated that there was a contract approval process

3    that may take some time, and I'm wondering if she

4    could flush that out for us.

5          SPECIAL MASTER GARRIE:  Before counsel for

6    UMC answers that, I think we have more or less a

7    process that I can put into an order that we can all

8    follow now with regards to timing as I just pointed

9    out.

10         What are the time constraints from UMC's

11   side to identify this individual?  Once you identify

12   the individual, you know, they should be able to come

13   on-site fairly quickly or promptly.  And once they

14   garner that information, everything should flow from

15   there.

16         So counsel for UMC?

17         MS. WITTY:  This is Counsel Witty.  I

18   apologize.  I do not have a specific timeline.  My

19   concern was that I did not want an immediate

20   requirement to move without approval from UMC.

21         We don't expect that there will be a, you

22   know, a week-long process for approval of the vendor.

23   There is certain information, obviously, we need to

24   provide to UMC, which we can do.

25         SPECIAL MASTER GARRIE:  I'm not worried

Special Master's Hearing    August 8, 2014
*** Telephonic ***

```
 1    about the ESI vendor.  I'm worried about the other
 2    vendors.
 3          My bigger concern has nothing to do with
 4    the ESI vendor.  My concern has to do with UMC's
 5    ability to get the four experts on the systems to
 6    figure out how they're actually operating.
 7          MS. WITTY:  This is Counsel Witty.  With
 8    regard to those actual vendor support contracts,
 9    we've actually already identified a point person for
10    three of those, for the three systems.
11          The issue is Clarity.  There is no longer a
12    support system for Clarity, and so we will probably
13    have to engage a third-party expert on that system to
14    come in and look at the configuration.
15          SPECIAL MASTER GARRIE:  When you say you
16    looked at the support -- you've identified a point
17    person, is that a technical point person or a project
18    manager?
19          MS. WITTY:  A technical point person, yes.
20          SPECIAL MASTER GARRIE:  And what sort of
21    timing would they become available to come on-site to
22    do the -- to figure out how UMC is actually using the
23    system?
24          MS. WITTY:  This is Counsel Witty.  I'm
25    hesitant to answer that, because I cannot account for
```

Special Master's Hearing   August 8, 2014
*** Telephonic ***

```
 1   their schedules.  But I don't think that it would be
 2   a large concern for them to come down and provide
 3   that information.
 4           I would also enter the caveat, again, that
 5   we will need -- as Special Master noted, you're not
 6   privy to those support contracts, and so we will need
 7   to make sure that we do have review of those support
 8   contracts to make sure that this is a part of that.
 9   If there is any additional expense, it is something
10   that, again, will require administrative approval.
11           SPECIAL MASTER GARRIE:  I'm going to give
12   UMC until Monday -- or Tuesday to figure out if
13   there's a review of the support contract and figure
14   out what the story is by midday Tuesday for all four
15   vendors and provide a timeline for when they can meet
16   and production -- a meet and production being meet
17   and be able to be on-site.
18           I'm going to issue an order.  I'm going to
19   make it based on the number of dates after UMC is
20   able to find that individual to be on-site.  Okay?
21           MS. WITTY:  This is Counsel Witty.  I
22   understand.  Thank you, Special Master.
23           SPECIAL MASTER GARRIE:  Counsel for
24   Plaintiffs, is that acceptable to you?
25           MR. TOSTRUD:  Counsel Tostrud.  That's
```

Special Master's Hearing    August 8, 2014
*** Telephonic ***

```
 1   acceptable.

 2           SPECIAL MASTER GARRIE:  Okay.  And also,

 3   whoever they identify as the technical point person,

 4   I would request on Tuesday that UMC provide the CV or

 5   credentials of the individual person so we are sure

 6   that we are all comfortable with them.

 7           And then from there, I will, as I mentioned

 8   before, put in my order, this protocol and specify a

 9   number of days under which I expect everything to

10   happen.

11           And with that in mind, I request that UMC

12   set up a call with me, Mr. Forrest, Mr. Pixley, for

13   Wednesday with the ESI vendor.

14           MS. FOLEY:  This is Counsel Foley.  Any

15   particular time on Wednesday, Special Master?

16           SPECIAL MASTER GARRIE:  Let's say 9:00

17   o'clock.  9:00 a.m.

18           MS. FOLEY:  Okay.  We'll try and make it

19   happen for then.

20           Is the rest of the day any option if

21   needed?

22           SPECIAL MASTER GARRIE:  10:00 o'clock,

23   maybe.

24           MS. FOLEY:  Okay.

25           SPECIAL MASTER GARRIE:  All right.  I
```

Special Master's Hearing    August 8, 2014
*** Telephonic ***

1                    REPORTER'S CERTIFICATION

2

3              I, GALE SALERNO, a certified court

4    reporter and notary public within and for the State

5    of Nevada, do hereby certify that I reported in

6    shorthand the proceedings in the above-entitled

7    matter at the time and place indicated, and that

8    thereafter said shorthand notes were transcribed into

9    typewriting at and under my direction, and the

10   foregoing transcript constitutes a full, true, and

11   accurate record of the proceedings.

12              IN WITNESS WHEREOF, I have hereunto

13   set my hand this 12th day of August,

14   2014.

15

16                    _____

17              GALE SALERNO, RMR, CCR No. 542

18

19

20

21

22

23

24

25