# EXHIBIT L

Exhibit L – Plaintiffs' Responses to Exhibit "B" of Defendant's Objection to Report and Recommendation

| Page No. | Cite in R&R | UMC's "Reference in Document" | UMC's "Inaccurate Cite to Record" | Plaintiffs' Response/ Comment |
|---|---|---|---|---|
| 1 | Dkt. 37 | "...and train hourly employees on meal period deductions." [Dkt. 37 at ¶¶ 54-56)<br><br>[CITES INDICATED DO NOT RELATE TO THIS STATEMENT] | Dkt. 37 ("Amended Complaint"), ¶¶ 54-56<br><br>¶54: "Plaintiffs worked in excess of 40 hours per week for the Defendant, but were not properly paid overtime wages in violation of the FLSA."<br>¶55: "Through its actions, policies and practices, Defendant violated the FLSA by regularly and repeatedly failing to compensate the named Plaintiffs and class members for all actual overtime worked."<br>¶55: "Defendant also willfully failed to pay wages, overtime pay and other benefits to the named Plaintiffs and others by failing to keep accurate time records to avoid paying them overtime wages and benefits." | Clarification:<br><br>Although Plaintiffs' operative complaint does not make that specific allegation, the record reflects that prior to the remediation campaign in the fall of 2012, UMC had no policy for training hourly employees on how to be compensated for missed meal breaks. |

| Page No. | Cite in R&R | UMC's "Reference in Document" | UMC's "Inaccurate Cite to Record" | Plaintiffs' Response/ Comment |
|---|---|---|---|---|
| 1 | Exhibit 7<br>Exhibit 8<br>Exhibit 9<br>Exhibit 10<br>Exhibit 11<br>Exhibit 12<br>Exhibit 13<br>Exhibit 14 | "... 14 telephonic conferences before the Special Master [FN6];..."<br><br>FN 6 - Ex. 7 (4/10/2014 Transcript); Ex. 8 (4/15/2014 Transcript); Ex. 9 (5/01/2014 Transcript); Ex. 10 (5/30/2014 Transcript); Ex. 11 (6/04/2014 Transcript); Ex. 12 (6/26/2014 Transcript); Ex. 13 (7/03/2014 Transcript); Ex.14 (8/04/2014 Transcript)<br><br>[THE NUMBER OF EXHIBITS CITED DOES NOT EQUAL THE NUMBER OF TELEPHONE CONFERENCES INDICATED IN THE TEXT OF THE R&R | Exhibit 7: 4/10/2014 Transcript;<br>Exhibit 8: 4/15/2014 Transcript;<br>Exhibit 9: 5/01/2014 Transcript;<br>Exhibit 10: 5/30/2014 Transcript;<br>Exhibit 11: 6/04/2014 Transcript;<br>Exhibit 12: 6/26/2014 Transcript;<br>Exhibit 13: 7/03/2014 Transcript;<br>Exhibit 14: 8/04/2014 Transcript | Clarification:<br>Per Plaintiffs' count, there were 15 telephonic Special Master hearings in total.<br>- 6/12/14 – not transcribed<br>- 6/13/14 – not transcribed<br><br>Further clarification:<br>FN 6 of the Report and Recommendation excludes reference to the following transcripts, each of which is in Defendant's possession:<br>- 5/29/14<br>- 7/25/14<br>- 7/28/14<br>- 8/8/14 |
| 3 | Dkt. 49 | "Thereafter, the parties filed a Joint Case Management Report on January 28, 2013 that identified documents created from a related 2012 U.S. Department of Labor ('DOL') investigation into UMC's meal break practices. [FN9]"<br><br>FN 9: This DOL investigation involved several UMC executives, including: John Espinoza John Espinoza (Chief Human Resources Officer), Doug Spring (Director of Human Resources Operations), Jackie Panzeri (Payroll Manager), and Brian Brannman (UMC's CEO from July 2011 to January 2014, and its COO from April 2008 to July 2011). [Dkt.49, at ¶ 9(a)]<br><br>[CITE INDICATED DOES NOT RELATE TO THIS STATEMENT] | FN 9 - Dkt. 49 (Proposed Discovery Plan/Scheduling Order), at ¶9(a)]<br><br>9. SUPPLEMENTAL DISCUSSION OF NECESSARY DISCOVERY.<br><br>a. The extent, nature, and location of discovery anticipated by the parties:<br><br>The following is a non-exhaustive list of categories of documents Plaintiffs seek in discovery: time keeping, schedules, orientation and training materials, payroll data, personnel files, any wage and hour investigations conducted | UMC is incorrect and fails to cite the entire paragraph:<br><br>Joint Case Management Report, 1/28/13 [Dkt. 49] at ¶9(a) reads in total:<br><br>a. The extent, nature, and location of discovery anticipated by the parties:<br><br>The following is a non-exhaustive list of categories of documents Plaintiffs seek in discovery: time keeping, schedules, orientation and training materials, payroll data, personnel files, any wage and hour investigations conducted internally or by any governmental and/or regulatory agencies, *including but not limited to the Department Of Labor*. (emphasis added) |

| Page No. | Cite in R&R | UMC's "Reference in Document" | UMC's "Inaccurate Cite to Record" | Plaintiffs' Response/ Comment |
|---|---|---|---|---|
| 4 | Dkt. 90 | "On May 2, 2013, UMC substituted the firm of Lewis Brisbois Bisgaard & Smith ('LBBS') as counsel for this matter." | **Dkt. 90 (notice of appearance of Margaret Foley and Cayla Witty of LBBS as counsel)** [INACCURATE- Doc. 90 Substituted Robert W. Freeman, Esq.]<br><br>Doc. No. 90 - ORDER granting Motion to Substitute Attorney | Special Master Garrie correctly stated the fact the Lewis Brisbois Bisgaard & Smith ("LBBS") substituted as counsel. It is indisputable that Margaret Foley, Cayla Witty, and Robert W. Freeman were attorneys employed by LBBS on May 2, 2013. |
| 4 | Dkt. 121 | "The Court also ordered the parties to meet and confer to identify these custodians and the ten search terms. [FN11]"<br><br>FN 11 - At the August 15, 2013 status conference, Plaintiffs' counsel reiterated their request that UMC's servers, individual computers (or hard drives), and cell phones (or PDA's be preserved and searched for relevant ESI in this matter. [Dkt. 121, at 10:8-18] **[INCORRECT CITE TO RECORD]** | Dkt. 121 - MINUTES OF PROCEEDINGS - Status Conference held on 8/15/2013<br>**FN 11-Dkt. 121, at 10:8-18**<br>Doc. No. 121 - MINUTES OF PROCEEDINGS - Status Conference held on 8/15/2013 before Magistrate Judge Peggy A. Leen.<br><br>**[DOC. NO. 121 CONTAINS MERELY MINUTES FROM A PROCEEDING, NOT A TRANSCRIPT AS CITED BY SM WITH PAGE AND LINE NUMBERS]** | Clarification:<br><br>Instead of: [Dkt. 121, at 10:8-18]<br><br>Cite should read: [Dkt. **131**, at 10:8-18] |

| Page No. | Cite in R&R | UMC's "Reference in Document" | UMC's "Inaccurate Cite to Record" | Plaintiffs' Response/ Comment |
|---|---|---|---|---|
| 4 | Dkt. 121<br><br>Exhibit 5 | "At this hearing, the Plaintiffs requested data from UMCs 'Kronos' timekeeping system in spreadsheet form, and UMC's counsel misrepresented that UMC did not keep Kronos data in this form. These statements were belied by UMCs provision of Kronos spreadsheet data to the DOL in its investigation, a fact Plaintiffs later discovered through FOIA requests. [FN 12]"<br><br>FN 12 - UMC again stated that such reports could not be readily accessed or produced in an easily usable format. [Dkt. 121, at 5]. **[INCORRECT CITE TO RECORD]** These statements were later contradicted by testimony or UMC employee Jackie Panzeri. Ex. 5 (5/6/14 transcript), at 22:10-23 **[INACCURATE - THE CITES DO NOT POINT TO ANY ALLEGED MISREPRESENTATION BY UMC'S COUNSEL THAT DATA FROM KRONOS WAS NOT KEPT IN SPREADSHEET FORM. PANZERI TESTIFIED THAT SHE HAD TO CONVERT THE INFORMATION FROM KRONOS INTO EXCEL]** | FN 12 – Dkt. 121, at 5<br><br>Doc. No. 121 - MINUTES OF PROCEEDINGS - Status Conference held on 8/15/2013 before Magistrate Judge Peggy A. Leen.<br>**[DOC. NO. 121 CONTAINS MERELY MINUTES FROM A PROCEEDING, NOT A TRANSCRIPT AS CITED BY SM WITH PAGE NUMBER]**<br><br>Ex. 5 (5/6/14 transcript), at 22:10-23<br>22:9-23: (SM Garrie) So you took the information relating to the litigation, stuck it in there –<br>22:12-13: (Panzeri): And we put it on the spreadsheet. 22:14-22 (Special Master Garrie): My question is - I don't need specifically the details. I know the plaintiffs would like to know the details. But that's not what we're here to talk about. But what I do want to understand, and I do find it a bit confusing for me, is you gave them to Human Resources. Did anybody from Legal - or how did this, from a process flow perspective - I get you collected a bunch of documents<br><br>22:23 (Panzeri) Okay. | Clarification:<br>Instead of: [Dkt. 121, at 10:8-18]<br>Cite should read: [Dkt. **131**, at 10:8-18]<br><br>Further clarification:<br><br>Per Ms. Panzeri's testimony, Kronos data was converted into Excel:<br><br>JON TOSTRUD: The spreadsheet that you created that we discussed a few minutes ago, did you create that through the Kronos system?<br>JACKIE PANZERI: It started with the Kronos system. The Kronos time report was converted to an Excel spreadsheet because Kronos is not Excel.<br>JON TOSTRUD: Can you just walk me through the step?<br>JACKIE PANZERI: I did not have the ability to convert it, so it was converted by our then assistant controller to an Excel spreadsheet. It was sent to one of her staff to configure, and then it was sent to my staff to add the information that was provided to us from the Department of Labor.<br>**R&R Ex. 5 (5/6/14 transcript), at 27:10-22.**<br><br>Ms. Panzeri further testified that she maintains and is able to easily access the resulting excel spreadsheets containing Kronos data:<br><br>JON TOSTRUD: The spreadsheets that you just described, do those still exist?<br>JACKIE PANZERI: Yes.<br>JON TOSTRUD: And how quickly could you get your hands on those?<br>JACKIE PANZERI: My hands on them? |

| Page No. | Cite in R&R | UMC's "Reference in Document" | UMC's "Inaccurate Cite to Record" | Plaintiffs' Response/ Comment |
|---|---|---|---|---|
| | | | | JON TOSTRUD: Sure. Could you access them? You're going back to your office today?<br>JACKIE PANZERI: Yes.<br>JON TOSTRUD: How quickly could you access those spreadsheets?<br>JACKIE PANZERI: As soon as I get back to my office. They're not in any archive file. They're right where I can get at them.<br>**R&R Ex. 5 (5/6/14 transcript), at 24:10-23.** |
| 5 | Dkt. 137 | "Plaintiffs also repeated their request for mobile phone data." [Dkt. 137, at 4]<br><br>**[INCORRECT CITE TO RECORD]** | Dkt 137, at 4<br><br>Doc. No. 137- Joint Status Report<br>[There is nothing on page 4 that references Plaintiffs' "repeated request for mobile phone data."] | Clarification:<br>Instead of: [Dkt. 137, at 4]<br><br>Cite should read: [Dkt. 137, at **3**]<br><br>"Defendant has also failed to search the custodians' cell phones, including corporate issued BlackBerries[2], for text and audio messages relevant to the litigation. The parties agreed at the July 12, 2013 status conference that searches of such personal digital assistants would take place." [Dkt. 137, at 3] |
| 5 | Dkt. 138 | "LBBS represented to the Court that UMC had produced text message data in its 'control and possession.'" [Dkt. 138]<br><br>**[INCORRECT CITE TO RECORD]** | Dkt. 138<br><br>Doc. No. 138 - MINUTES OF PROCEEDINGS - Status Conference held on 11/12/2013 before Magistrate Judge Peggy A. Leen<br><br>[There is no reference to any representations that UMC made in the cited Doc. No.] | Clarification:<br>Cite should read: [Dkt. **139** at 20]<br><br>C. Witty: "I believe we have provided everything that we could cull from UMC's control and possession." |

5

| Page No. | Cite in R&R | UMC's "Reference in Document" | UMC's "Inaccurate Cite to Record" | Plaintiffs' Response/ Comment |
|---|---|---|---|---|
| 5 | Dkt. 141 | "At November 26, 2013 status conference Magistrate Judge Leen expressed concerns and reminded counsel of the critical importance of dialogue and cooperation between counsel and ESI vendors to prevent future problems." [Dkt. 141, at 11-14]<br><br>[INACCURATE CITE TO RECORD] | Dkt. 141, at 11-14<br><br>Doc. No. 141 - Transcript of Status Conference, November 26, 2013<br><br>**Page 11, Witty speaking, not Judge Leen.** 12:21-22 (Judge Leen) I'm just trying to cut off future problems of the past.<br>**Page 13-mid 14 Witty speaking.**<br>**14:13-23 is Judge Leen speaking, however, no concerns or mention of "the critical importance of dialogue and cooperation between counsel and ESI vendors to prevent future problems," is made. Those lines in the transcript merely indicate that the parties needed to submit a stipulation and proposed order to extend deadlines to September 2014 and that periodic status hearings would continue to be held in this matter.** | UMC is incorrect.<br><br>Clarification:<br>As Special Master Garrie noted, Magistrate Leen expressed her desire to have the parties' ESI experts communicate and cooperate with each other to facilitate a clean production of mobile data and to avoid repeating UMC's past data collection failures.<br><br>*See* Dkt. 141, at 12:7-22<br><br>THE COURT: [regarding mobile data]: Have you had discussions between your experts about making sure how you retrieve the data so that there isn't a claim that something is spoliated by the manner in which it's retrieved?<br>MS. WITTY: I don't think that was discussed between the experts. But I don't think that would be a problem. I know that they're in contact. And we can make sure that that's mediated through e-mail which has been very assistive in making sure that the technical data for their original search, the EIS server search. So we can definitely accommodate that. And as I mentioned, they do use the same software. And so I don't think that that would be a huge issue, to make sure that it was properly credentialed.<br>THE COURT: I'm just trying to cut off future problems of the past. |

| Page No. | Cite in R&R | UMC's "Reference in Document" | UMC's "Inaccurate Cite to Record" | Plaintiffs' Response/ Comment |
|---|---|---|---|---|
| 5 | Dkt. 143 | "In a January 17, 2014 Joint Report to the Court, UMC represented that it would produce text message data of the five identified custodians by the end of January 2014." [Dkt. 143]<br><br>[INCORRECT CITE TO RECORD] | Dkt. 143<br>Doc. No. 143 - MINUTES OF PROCEEDINGS - Status Conference held on 1/21/2014 before Magistrate Judge Peggy A. Leen [**not a joint Report to the Court from January 17, 2014.**]<br><br>Doc. No. 142 is the actual Joint Status Report to the Court. The "Status of Defendant's Production of Mobile Text Message Data" section on page 3 of the Report discusses the **three** custodians who have mobile phones issued by UMC. Plaintiffs represented that UMC represented to Plaintiffs that the information would be gathered by the end of January 2014. However, **Defendant actually represented that UMC was "very carefully scheduling time in January to pull what data [could] be obtained from these devices.** | Clarification:<br>Dkt. 143 - Minutes of Proceedings re 1/21/14 Status Conference. **Magistrate Judge Leen orders UMC to produce text data by 1/31/14.**<br><br>Dkt. 142 – 1/17/14 Joint Status Report (for 1/21/14 Status Conf.)<br><br>- Plaintiffs' position: UMC represented to Plaintiffs the [text data from the 5 identified custodians] would be gathered by the end of January 2014.<br><br>- Defendant's position: UMC was very carefully scheduling time in January to pull what data [could] be obtained from these devices. |

| Page No. | Cite in R&R | UMC's "Reference in Document" | UMC's "Inaccurate Cite to Record" | Plaintiffs' Response/ Comment |
|---|---|---|---|---|
| 7 | Dkt. 154 | "At the March 10, 2014 status conference between the parties, their respective ESI vendors, Magistrate Judge Leen, and Special Master Daniel B. Garrie it was determined, based on statements by various UMC IT executives at the hearing, that UMC potentially had serious ESI issues relating to identification, preservation, collection, search, and production. UMC was ordered to 'provide a data map of the ESI involved in this litigation for in-camera review on or before the 23rd day of March, 2014. If no data-map exists, then ...UMC [was to] explain why no ESI data-map exist[ed] and how Counsel for UMC educated themselves about UMC's information and record keeping systems. [FN15]" [Dkt. 154, at 2]<br><br>FN 15 - "Despite Special Master Garrie repeatedly requesting a data map from UMC, (*see* Ex. 7 (4/10/14 transcript), at 36:14-17; 40:17-21 **[INCORRECT CITE TO RECORD]** | Dkt. 154, at 2<br>Doc. No. 154 - Special Master E-Discovery Order<br><br>p.2<br>   I.  VERIFY UMC ON-GOING PRESERVATION EFFORTS ARE IN COMPLIANCE WITH THE LITIGATION HOL/PRESERVATION LETTERS SENT BY PLAINTIFFS' COUNSEL...<br><br>   3. *On-going Preservation Efforts:* UMC is to provide a data-map of the ESI involved in this litigation for in-camera review on or before the 23rd day of March, 2014. If no data map exists, then the Special Master orders UMC to explain why no data map exists and how Counsel for UMC educated themselves about UMC's information and record keeping systems."<br><br>Ex. 7 (4/10/2014 transcript), at 36:14-17<br>40:17-21 SM Garrie) ...they stopped wiping phones for the custodian, all 27 of them. With that in mind, I request that counsel for UMC send or subpoena the – draft a subpoena for me to issue in my capacity as | Clarification:<br>Instead of: [Ex. 7 (4/10/14 transcript), at 36:14-17; 40:17-21]<br><br>Cite should read: [Ex. 7 (4/10/14 transcript), at 36:14-17; **41**:17-21] |

| Page No. | Cite in R&R | UMC's "Reference in Document" | UMC's "Inaccurate Cite to Record" | Plaintiffs' Response/ Comment |
|---|---|---|---|---|
| 10 | Exhibit 21 | August 2012: UMC retained MPP as outside counsel. *See* Ex.21 (8/6/14 Witty email)<br><br>**[INCORRECT CITE TO RECORD]** | Exhibit 21: 8/06/2014 Witty e-mail - Nothing about MPP in e-mail | Clarification:<br>Page 10 of Special Master Garrie's order reads as:<br><br>• August 7, 2012 – Plaintiffs served UMC with their first complaint in this action.<br><br>• August 12, 2012 – UMC retained MPP as outside counsel.  See Ex.21 (8/6/14 Witty email).<br><br>It should read:<br><br>• August 7, 2012 – Plaintiffs served UMC with their first complaint in this action. **See Ex.21 (8/6/14 Witty email [describing service of complaint]).**<br><br>• August 12, 2012 – UMC retained MPP as outside counsel.<br><br>Further clarification:<br>It is undisputed that UMC retained Morris Polich & Purdy as outside counsel. |

| Page No. | Cite in R&R | UMC's "Reference in Document" | UMC's "Inaccurate Cite to Record" | Plaintiffs' Response/ Comment |
|---|---|---|---|---|
| 11 | Exhibit 27 | "Late April 2014: UMC's Payroll Manager, Jackie Panzeri ('Panzeri'), first received a preservation notice from Spring." Ex. 5 (5/6/14 transcript), at 6:1-12; *see also* Ex. 27 (Panzeri Declaration) **[INCORRECT CITE TO RECORD]** | Exhibit 27: Jackie Panzeri Declaration (does not mention anything about when Panzeri first received a preservation notice) | Clarification: <br><br> *See* **R&R Ex. 5 (5/6/14 transcript), at 6:5-12** (Ms. Panzeri testified she was provided a preservation for the first time approximately two to three weeks prior to the May 6, 2014 Special Master hearing). Nothing in the declaration (R&R Ex. 27) contradicts that testimony. |
| 13 | Exhibit 2 | "Later, Special Master Garrie determined that UMC did not perform any investigation of likely ESI sources for any of the custodians, including: Espinoza, Spring, Dwyer, Brannman, Panzeri, Claudette Myers, Leah Conedy, Kristy Crowley, Regina Pfaff, Stephanie Merrill, Jerri Strasser, Pat Greaux, Daniel Small, Carolyn Small, William Curtin, David Cohen, Lanette Lawrence, Louise Collard, April Martin, Alicia Jones, Tracy Sutter, Cynthia Jones, Amber Robinson, Tiffanie Fleming, Shaheen Ahmed, and Oscar Borbon. (Ex. 2 (4/4/14 transcript), at 51:1-8 ('COUNSEL WITTY: In review of prior counsel's records, there is no indication that specific custodian interviews were done. The profiles that were initially requested for preservation I believe were based upon the list that came from Plaintiffs' counsel, and the discussions, I believe with regards to scope remain mainly with the prior technologist.) **[INCORRECT CITE TO RECORD]** | **Exhibit 2 (4/4/2014 transcript), at 51:1-8**<br>51:1-2 (Ms. Foley) "Custodian interviews" being what was<br>the inventory -<br>51:3-4 (SM Garrie) I mean do, you have copies of the<br>custodian interviews -<br>51:5-6 (Ms. Foley) I know she did it, but I don't understand<br>what the definition is.<br>51:7-8 Can you give me a copy of the custodian interview?<br>51:9 (Witty) This includes all six custodians. | Clarification:<br>Special Master cites to the rough transcript instead of the final transcript.<br><br>Cite to rough transcript: (4/4/14 transcript), at 51:1-8<br><br>Cite to certified transcript: (4/14/14 transcript), at **53:14-21** |

| Page No. | Cite in R&R | UMC's "Reference in Document" | UMC's "Inaccurate Cite to Record" | Plaintiffs' Response/ Comment |
|---|---|---|---|---|
| 13-14 | Exhibit 4 | Apparently, no UMC personnel disclosed to MPP that UMC stored documents responsive to this litigation on the Q-drive.<br><br>*Ernie McKinley* ("McKinley"), Umc's current Chief Information Officer, testified:<br>SPECIAL MASTER: Your former counsel, when you sat there and talked to them, did you tell [MPP] that some of their coustodians used "Q-drive," as they called it today, your former lawyers?<br>MCKINLEY: Can I answer what - I've never spoke to our former lawyers.<br><br>Ex. 4 (4/22/14 transcript), 158:25-159:7<br>**[INCORRECT CITE TO RECORD]** | **Exhibit (4 4/22/2014 transcript), at 158:25-159:7** 158:25-159:2 (SM Garrie) When did you first get a preservation notice from the group list UMCPost or some similar thin notifying you of a preservation notice?<br>159:3 (McKinley) The first official notice I got of a preservation order –<br>159:4 (SM Garrie) Yes.<br>159:6-7 (McKinley) - was the order that I got from you after our first meeting. | Clarification:<br>The testimony cited by Special Master Garrie is contained within the 4/22/14 transcript.<br><br>Correct cite: (4/22/2014 transcript), at **157:12-17** |

| Page No. | Cite in R&R | UMC's "Reference in Document" | UMC's "Inaccurate Cite to Record" | Plaintiffs' Response/ Comment |
|---|---|---|---|---|
| 14 | Exhibit 6 | "MacIntyre went on to explain how these types of files were stored on the Q-drive:<br>SPECIAL MASTER: And then [Patricia Kennedy] would scan it and stick it where?<br>MACINTYRE: On a Q-drive in the file.<br>SPECIAL MASTE GARRIE: Where on the Q-drive?<br>MACINTYRE: In risk management on the Q-drive.<br>SPECIAL MASTER: So it would be Q colon slash risk management slash Small versus UMC?<br>MACINTYRE: Probably.<br><br>Ex. 6 (6/16/14 transcript), at 147:21-23<br>**[INCORRECT/INCOMPLETE CITE TO RECORD]** | **Exhibit 6 (6/16/14 transcript), at 147:21-23**<br>147:21-22(SM Garrie) So it would be Q colon slash risk management slash Small versus UMC? 147:23 (MacIntyre) Probably. | Clarification:<br>Instead of: (6/16/14 transcript), at 147:21-23<br><br>The complete cite should read: (6/16/14 transcript), at 147:**14**-23 |