EXHIBIT P

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

6385 S. Rainbow Boulevard, Suite 600
Las Vegas, Nevada 89118
Telephone: 702.893.3383
Fax: 702.893.3789
www.lewisbrisbois.com

**MARGARET G. FOLEY**
DIRECT DIAL: 702.693.4366
MARGARET.FOLEY@LEWISBRISBOIS.COM

July 31, 2014

File No.
32352.0016

**CAYLA WITTY**
DIRECT DIAL: 702.693.4387
CAYLA.WITTY@LEWISBRISBOIS.COM

## VIA ELECTRONIC MAIL ONLY

Special Master Daniel Garrie
E-Mail: daniel@lawandforensics.com

RE:     Recent Paper Documents Indexing and Production Issues in *Small, et al. v. UMC*

Dear Special Master Garrie:

Please accept this briefing from UMC on the interrelated indexing and production issues involving certain UMC paper documents, as discussed at the telephonic hearing of Friday, July 25th. To summarize, the parties seemed earlier this summer to be proceeding in a collaborative manner towards document inspection at UMC. The parties were following an indexing process, directed and approved by the Court, for identifying and selecting documents for Plaintiffs' counsel to inspect.

The protocol was quite successful as to **payroll period documents** kept by Jackie Panzieri. These documents have been reviewed at UMC by Plaintiffs' counsel, and UMC plans to copy and send them as soon as the Court will permit.

Unfortunately, the process went awry for the **departmental documents** concerning scheduling, attestations, and meeting minutes. Based on the Special Master proceedings and discussions among counsel, an index was jointly prepared by the parties to identify documents. As the parties prepared for the inspection of documents, communications broke down. Following Mr. Tostrud's insistence in emails that UMC had violated a court order, the Special Master ordered by email on July 10th that UMC begin "producing" the documents "immediately" to comply with his order of June 16th.[1]  UMC therefore began scanning the documents and overnighting them to Plaintiffs on CD's to comply.[2]  It became apparent just this past week

---

[1] *See* attached Exhibit A (email chain among counsel and Special Master Garrie dated July 10th.and culminating in order to UMC to produce documents immediately per prior orders).

[2] A number of federal courts have explained that, for documents, the default response to a request for production is to simply turn over the documents to the requesting party. *See, e.g., Compagnie des Bauxites v. Ins. Co. of N. Am.*, 651 F.2d 877, 883 (3d Cir. 1981); *Caruso v. Coleman Co.*, 157 F.R.D. 344, 349 (E.D. Pa. 1994) ("where the volume of [documentary] material sought would make copying and transporting burdensome and oppressive to the producing party . . . the court may decline to order production and may instead order that the requesting party inspect the documents"); Baine v. General Motors Corp., 141 F.R.D. 328, 331 (M.D. Ala. 1991) (upon proper showing of burden, "the court may demure from ordering production and may instead order inspection in a manner convenient to the party in possession."); *see also* 7-34 Moore's Federal Practice - Civil § 34.13[2][a] ("[i]n lieu of actual production of
(footnote continued)

---

ATLANTA • BEAUMONT • BOSTON • CHARLESTON • CHICAGO • DALLAS • DENVER • FORT LAUDERDALE • HOUSTON • LA QUINTA • LAFAYETTE • LAS VEGAS • LOS ANGELES • MADISON COUNTY
NEW ORLEANS • NEW YORK • NEWARK • ORANGE COUNTY • PHILADELPHIA • PHOENIX • SACRAMENTO • SAN BERNARDINO • SAN DIEGO • SAN FRANCISCO • SEATTLE • TAMPA • TEMECULA • TUCSON

4823-0685-9548.1

that serious misunderstandings between the parties had occurred with respect to the production. Making the situation even worse, undersigned UMC counsel learned there had been no meeting of the minds as to what the July 10th order, incorporating the June 16th order,[3] meant by "producing" documents "immediately." UMC's undersigned counsel believed in good faith that they were complying with the July 10th order, but events of the past week revealed that UMC's interpretation of "immediately" "producing" the documents did not match the Special Master's expectation of how the July 10th order was to be carried out. To UMC's counsel's great dismay, the doctrine of "mutual mistake," studied by first-year law students across the country, seemed to have come startlingly alive.[4] UMC thought that the July 10th order was instructing them to scan and send the documents, while Special Master Garrie clearly believed he was telling UMC to ready the documents for an on-site inspection. UMC, informed of its error, has ceased scanning documents and is making them available for inspection pending any further order of the Court.

### Indexing of Documents

UMC believes it has properly complied with the indexing process ordered. The index was jointly prepared by the parties to identify documents before inspection, not to facilitate document review on-site as asserted.[5] Beginning at the April Special Master hearings, the parties discussed how the index would be prepared to educate Plaintiffs' counsel as to the hard-copy documents in Ms. Panzieri's office and the hospital departments that Plaintiffs could review on-site at UMC.[6] A letter and draft index from Ms. Witty to Special Master Garrie detailing discussions for the index creation by the parties is attached hereto as **Exhibit B**.

### Communications Regarding Production of Hard Copy Documents

UMC has expressed a multitude of concerns with regards to ongoing communications relating to hard copy documents. Specifically, during the week of July 7, 2014, Plaintiffs' communications to the Special Master and parties altered the review process from a inspection at UMC to full-scale production of scanned and OCR'd attestation forms, departmental meeting minutes, and schedule documents. UMC has begun this process, and as noted on July 25, 2014, had planned to continue to make near-daily productions in

---

documents, a party may . . .allow the requesting party to inspect and copy the documents . . . [t]he answer to a request for production is generally either: (1) actual production of the documents, or (2) an objection signed by the attorney making the objection."). UMC understood the immediate production to mean produce the documents directly. UMC had assumed this direct production would benefit Plaintiffs' counsel as well, given the context that Mr. Tostrud had made clear in an email dated June 27th that "[i]t is very expensive and time-consuming for Plaintiffs to engage in this review". *See* Exhibit A at 5.

[3] As described by Magistrate Judge Brazil, one of the dangers of informal special master proceedings is imprecision that can lead to further problems. "Informality may create a related danger of imprecision. If the neutral renders fuzzy decisions, or imposes poorly-specified obligations, he sets the stage for breaches, disputes, and disillusion. . . . These unfortunate consequences of imprecision can be especially troublesome and costly in complex cases, where duties are less self-evident and where the ripple effects of poor communication on one matter can extend to many others." *See* Brazil, SYMPOSIUM ON LITIGATION MANAGEMENT: Special Masters in Complex Cases, 53 U. Chi. L. Rev. 394, 420-21 (Spring, 1986). UMC respectfully submits that ambiguity in the July 10th order, incorporating in turn the slightly-unclear June 16th oral order, has led UMC to foreseeably misinterpret its production obligations here. UMC's unintentional missteps should be forgiven and no sanctions ought to be imposed in this unfortunate situation. UMC stands corrected and respectfully seeks the Court's direction on where to go from here.

[4] In the famous case of *Raffles v. Wichelhause*, 159 Eng. Rep. 375 (1864), the parties agreed to a sale of cotton to be transported from Bombay by a ship called *Peerless*. However, there were two ships named *Peerless*, one sailing in October and the other in December. The seller understood the deal to refer to the December ship, while the buyer thought the October *Peerless* would bring his cotton. *See id.* Here, analogously, UMC thought "production" meant one thing while the Court thought it meant another thing.

[5] *See* Rough Transcript 7/25/14 at 115-117 (parties' respective positions explained by Ms. Witty and Mr. Godino).

[6] See Transcript 4/22/14 at 200-231, Transcript 5/1/14 at 54-55, Transcript 5/6/14 at 194-196, Transcript 6/16/14 at 106-112.

accordance with the Second Amended ESI Protocol Order until ordered halted by Special Master Garrie. Moreover, Plaintiffs and the Special Master were on notice as of July 11th that the departmental documents would be scanned and produced, not set out for inspection at UMC, in response to Special Master Garrie's and Counsel Tostrud's emails. Ms. Foley made clear in her email of June 11th at 1:37 p.m.that the departmental documents would be gathered, scanned and produced as a result of Special Master Garrie's order, rather than produced for inspection, while the pay period documents would still be made available for inspection.[7]

Notwithstanding this dispute as to departmental documents (described more fully above), UMC provided pay period documents used by the Payroll department in processing for inspection on July 16, 2014. This group of documents initially contained 81 boxes with documents ranging from 2008 through 2012. Plaintiffs' counsel inspected these documents over 1.5 days. Following this brief inspection, counsel for UMC attempted to determine what all had been accomplished. The parties disagreed about the box count, there was an issue with providing a custodian of record declaration, and no clear understanding was reached with regard to the need for ongoing inspection of the pay period documents.

When Plaintiffs' counsel returned on July 28, 2014 to continue, it was only then that it was understood that Plaintiffs' counsel had finished with the 81 boxes, rather than 63 boxes as Plaintiffs' counsel had asserted. Thirteen additional boxes from 2013 were acquired for inspection to start July 29, 2014 to accommodate Plaintiffs' counsel, despite their failure to respond to specific questions last Thursday put to them by UMC counsel in emails concerning: (1) the box count,(2) the meaning of Plaintiffs' post-it notes saying "done" on certain boxes, and (3) which boxes might be moved out so others could be moved in.

Mr. Godino called Ms. Foley on the morning of July 29th and asserted his readiness to review additional documents. Ms. Foley explained that the additional 13 boxes of pay period documents were all that had been prepared for inspection, because the departmental documents were being scanned and produced in full on CD to Plaintiffs' counsel. Moreover, Ms. Foley had not received a response to emailed questions Thursday afternoon that, if answered, might have warned UMC of some potential misunderstanding regarding the inspection.

Further, Plaintiffs' counsel was fully aware that UMC was sending them documents in addition to making the Panzieri documents available for inspection. The departmental document production was discussed on the telephone with Special Master Garrie Friday, July 25, 2014, and on July 28, 2014. Plaintiffs' counsel attended both of those telephonic hearings and verified that they had received documents from UMC on CD.

---

[7] In her lengthy email sent to Special Master Garrie in advance of the July 29th telephone conference regarding document production, Counsel Wolke specifically referenced Counsel Foley's email of June 11th at 1:37 p.m., but neglected to acknowledge the email's content as a whole, which specifically stated that departmental documents would be gathered, scanned, and produced, as opposed to payroll period documents to be made available for inspection.

Special Master Daniel Garrie
July 31, 2014
Page 4

Very truly yours,

Margaret G. Foley of
Cayla Witty for
LEWIS BRISBOIS BISGAARD & SMITH LLP

MGF:gfr
Attachments
cc:      All Counsel (by email)

EXHIBIT "A"

## Foley, Margaret

| From: | Daniel Garrie <daniel@lawandforensics.com> |
|---|---|
| Sent: | Thursday, July 10, 2014 6:47 PM |
| To: | 'Jon Tostrud'; Witty, Cayla |
| Cc: | 'Marc L. Godino, Esq.'; 'Anthony Carter'; david@omaralaw.net; 'Kara Wolke'; Freeman, Robert; Foley, Margaret; Ginapp, Kristol; Adams, Michelle; Thayer, Lisa; Freeman, Kristen; 'Bruce Pixley'; 'Doug Forrest'; daniel@lawandforensics.com |
| Subject: | RE: UMC/Small: document inspection |

Counsel Tostrud –

I have reviewed your email and find that UMC has failed to comply with my Order. I am Ordering UMC to comply immediately with my prior Orders or appeal to Judge Leen.

Special Master Garrie

**From:** Jon Tostrud [mailto:jtostrud@tostrudlaw.com]
**Sent:** Thursday, July 10, 2014 9:40 PM
**To:** Witty, Cayla
**Cc:** Daniel Garrie; Marc L. Godino, Esq.; Anthony Carter; david@omaralaw.net; Kara Wolke; Freeman, Robert; Foley, Margaret; Ginapp, Kristol; Adams, Michelle; Thayer, Lisa; Freeman, Kristen; Jon Tostrud; Bruce Pixley (bruce@pixleyforensics.com); Doug Forrest
**Subject:** Re: UMC/Small: document inspection

Special Master Garrie:

With all due respect, and for the record, UMC's position with respect to #3 above is a complete reversal of the position that we painstakingly detailed out, and agreed to, in court. The parties clearly and unequivocally agreed on a rolling production of schedules, assignment sheets and attestation forms. Moreover, and most importantly, you ORDERED such a production to occur.

UMC has never sought relief from your order and, as Counsel Witty once again confirmed this evening with her email, UMC is in contempt of court. Plaintiffs intend to address this issue in our July 11 submission and will contact UMC counsel Monday to schedule a status conference with Judge Leen.

Please contact me with any questions or concerns.

Regards,
Jon

On Thu, Jul 10, 2014 at 6:28 PM, Witty, Cayla <Cayla.Witty@lewisbrisbois.com> wrote:

Special Master Garrie,

I apologize for the delay, but these large group emails are being caught in our firm's spam filter. Please accept our response below.

1) Counsel for UMC noted that 87 different departments would need to be contacted. We have identified multiple

1

timekeepers for attestation forms in many departments. There is no list of 87 individuals.

2) UMC has produced meeting minutes if found in ESI and responsive to the search terms. For hard copies, UMC is preparing minutes for departmental meetings for inspection.

3) When Plaintiffs' counsel has completed inspection of the pay period documents, UMC will be able to produce documents from departments on schedule. As UMC does not believe the pay period document inspection will be completed next week, those documents are not being moved to the viewing space.

Cayla
Sent from my Windows Phone

**From:** Daniel Garrie
**Sent:** 7/10/2014 5:06 PM
**To:** 'Jon Tostrud'; Witty, Cayla
**Cc:** 'Marc L. Godino, Esq.'; 'Anthony Carter'; david@omaralaw.net; 'Kara Wolke'; Freeman, Robert; Foley, Margaret; Ginapp, Kristol; Adams, Michelle; Thayer, Lisa; Freeman, Kristen
**Subject:** RE: UMC/Small: document inspection

Counsel for UMC –


Please advise before 5pm PST today as to the status of the duties set-forth below.


Daniel Garrie




**From:** Jon Tostrud [mailto:jtostrud@tostrudlaw.com]
**Sent:** Thursday, July 10, 2014 4:34 PM
**To:** Witty, Cayla; Focused Solution
**Cc:** Marc L. Godino, Esq. (mgodino@glancylaw.com); Anthony Carter (acarter@tostrudlaw.com); david@omaralaw.net; Kara Wolke (kwolke@glancylaw.com); Freeman, Robert; Foley, Margaret; Ginapp, Kristol; Adams, Michelle; Thayer, Lisa; Freeman, Kristen; Jon Tostrud
**Subject:** Re: UMC/Small: document inspection


Special Master Garrie:

You ordered during the June 16, 2014 hearing the following:

(1) "I'm also going to order UMC by the end of next week to have identified all the 87 individuals to collect the attestation forms from." Page 110, lines 22-24

Plaintiffs are not aware if the identifications of these individuals has occurred?

(2)  "I'm going to also order UMC to, by the end of next week, to have started producing the meeting minutes and other items..."  Page 110, line 25-111, line2

Plaintiffs would like to know if these meeting minutes have been produced?

(3)  "I'm also going to order UMC to do their best efforts to clear 15 departments a week.  Recognizing from plaintiffs' side that there will be some weeks when you will get 20 and some weeks you will get five, because there will be departments of one and then departments of hundreds.  So it will vary, so they have a plus or minus factor of four.  So anywhere beteween 11 and 19 boxes could come across."  Page 111, lines 9-17

Plaintiffs would like a status update, as requested earlier and above from Counsel Witty.

Plaintiffs are in the process of scheduling the time consuming and expensive process of document review, and are handicapped in their scheduling efforts by UMC's failure to provide an update regarding your prior orders relative to hard copy documents.  Plaintiffs are aware that the Panzeri documents are available for review next week, but have not been provided an update relating to the assignment sheets, schedules and attestation forms, among other hard copy documents.

I am available for a call if your preference is to handle this directly on the phone.

Regards,
Jon




On Tue, Jul 8, 2014 at 9:13 AM, Jon Tostrud <jtostrud@tostrudlaw.com> wrote:

Counsel Witty:

Plaintiffs will provide 72 hour notice. I simply wanted to give you as much advance notice as possible that we intend to move quickly through the hard copy documents.  In order to keep costs down and proceed as efficiently as possible, the hard copy review process will require tremendous coordination with UMC.

Special Master Garrie laid out a production schedule for hard copy documents, including, but not limited to, schedules and assignment sheets.  Would you please advise on the status of that production?

Regards,
Jon



On Mon, Jul 7, 2014 at 5:54 PM, Witty, Cayla <Cayla.Witty@lewisbrisbois.com> wrote:

Counsel Tostrud,


UMC is confirming that the document inspection room will be available July 16 & 17. The inspection room is located on the 5th floor of the Trauma Building, Conf. Room 510. Could you please provide us with how many parking spaces will

3

be needed for the group so that we can arrange for parking and have someone available to meet and escort you to the inspection room?

As for the weekly inspection dates, could you please explain how the 72 hour advance notice will work if you intend to be in Las Vegas for inspection each week? We will keep you up to date on the availability of documents in accordance with the proposed schedule as well as monitor how quickly the inspections move. I can also inform you that there will be no hospital governing board meeting agendas or minutes to inspect in hard copy format as those documents are only kept in electronic form. The electronic folders that contain these documents are a part of the 7 high priority custodian Q drive repository, and have been searched and will be produced in accordance with the ESI protocol order.

If you have additional information to confirm or discuss, please let us know when you are available to do so this week.

Thank you.

Cayla*

**From:** Jon Tostrud [mailto:jtostrud@tostrudlaw.com]
**Sent:** Monday, July 07, 2014 3:55 PM
**To:** Witty, Cayla
**Cc:** Marc L. Godino, Esq. (mgodino@glancylaw.com); Anthony Carter (acarter@tostrudlaw.com); david@omaralaw.net; Kara Wolke (kwolke@glancylaw.com); daniel@lawandforensics.com; Freeman, Robert; Foley, Margaret; Ginapp, Kristol; Adams, Michelle; Thayer, Lisa; Freeman, Kristen; Jon Tostrud
**Subject:** Re: UMC/Small: document inspection

Counsel Witty:

Will you please confirm that the document repository will be available July 16 and 17? We plan on arriving at 9:30 am the morning of the 16th. I also request that you confirm the other details in my prior email (ie that the repository be made available on a weekly basis beginning July 16). I am happy to discuss this if you'd like to. Regards,

Jon

On Fri, Jun 27, 2014 at 11:33 AM, Jon Tostrud <jtostrud@tostrudlaw.com> wrote:

Counsel Witty:

Please add Marc Godino to the list of attorneys attending the July 16 and 17 review.

Regards,
Jon


On Fri, Jun 27, 2014 at 11:18 AM, Jon Tostrud <jtostrud@tostrudlaw.com> wrote:

Counsel Witty:

Thanks for arranging the room at UMC. Attached is a draft custodian of records declaration.

Plaintiffs plan their first review of documents on July 16 and 17. Lawyers attending that first session will be Jon Tostrud, Anthony Carter, Kara Wolke and Rayo Antonio.

Going forward, Plaintiffs will provide UMC with at least 72 hour advance notice of their intent to review documents and the individual lawyers who will be engaged in the review process. Plaintiffs most likely will review documents on a weekly basis and be at the hospital for 2-3 days a week for the next several months. We expect that UMC will advise Plaintiffs if the hard copy document production schedule ordered by Special Master Garrie cannot be met. It is very expensive and time-consuming for Plaintiffs to engage in this review and we would like to avoid the situation where we show up to review documents only to learn that UMC has not met the production schedule.

Finally we will keep the total number of reviewers at any one time under 10 lawyers.

Please contact me with any questions or concerns.


Regards,
Jon


On Fri, Jun 20, 2014 at 11:46 AM, Witty, Cayla <Cayla.Witty@lewisbrisbois.com> wrote:

Plaintiffs:


UMC has arranged for a room for inspection to begin. UMC needs to know the specific dates and times counsel will be inspecting documents.


Also, UMC requests that the individuals appearing for inspection of documents be identified ahead of appearing and, if at all possible be limited to less than 10. Space at UMC is at a dire premium, and the room will be very restricted with 10 individuals within. Due to privacy concerns and confidentiality of information,

5

EXHIBIT "B"

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

6385 S. Rainbow Boulevard, Suite 600
Las Vegas, Nevada 89118
Telephone: 702.893.3383
Fax: 702.893.3789
www.lewisbrisbois.com

MARGARET G. FOLEY
DIRECT DIAL: 702.693.4366
MARGARET.FOLEY@LEWISBRISBOIS.COM

May 15, 2014

File No.
32352.16

CAYLA WITTY
DIRECT DIAL: 702.693.4387
CAYLA.WITTY@LEWISBRISBOIS.COM

## VIA ELECTRONIC MAIL ONLY

Daniel Garrie, Esq.
Electronic Discovery Special Master
6506 3rd Avenue, Suite C
Seattle, WA 98117
E-Mail: daniel@lawandforensics.com

Re:   Small v. UMC, USDC Case No. 2:13-cv-00298-APG-PAL
Response to proposed index for hard copy documents

Dear Special Master Garrie:

Please accept this letter in response to Plaintiffs' May 12, 2014 first draft of a hard copy document index. We appreciate Plaintiffs taking the first step in this discussion, but we have several concerns that we believe undermine the value of an undertaking such as this index.

### Vague Terms

Several of the terms listed in the far-left column are vague to the point that UMC cannot begin to index any documents. While we do not want to unnecessarily complicate the index form, it is necessary that we have a full and complete understanding of what information is sought to prevent ongoing discovery disputes in this area.

The terms that UMC requests further clarification for are the following: Board Minutes, Calendars, Budgets, Correspondence, and Department of Labor. UMC acknowledges that documents that could be classified as relating to one of these terms could be relevant (and many such documents have been produced in ESI and otherwise). However, due to the breadth of unrelated topics that might touch on these terms, UMC requests additional specification. For example, Plaintiffs' Request for Production of

ATLANTA • BEAUMONT • BOSTON • CHARLESTON • CHICAGO • DALLAS • DENVER • FORT LAUDERDALE • HOUSTON • LA QUINTA • LAFAYETTE • LAS VEGAS • LOS ANGELES • MADISON COUNTY

NEW ORLEANS • NEW YORK • NEWARK • ORANGE COUNTY • PHILADELPHIA • PHOENIX • SACRAMENTO • SAN BERNARDINO • SAN DIEGO • SAN FRANCISCO • SEATTLE • TAMPA • TEMECULA • TUCSON

Daniel Garrie, Esq.
May 15, 2014
Page 2

Documents No. 23 requests minutes from meetings discussing wage-and-hour matters related to meal periods and overtime pay. This is significantly different from "Board Minutes." Similarly, UMC continues to identify and produce documents related to the 2012 and 2013 Department of Labor investigation into admitting representatives' complaints regarding lunch interruptions. But the term "Department of Labor" would touch on FMLA and other unrelated issues. If UMC does not receive additional clarification of these terms, it fears that this discovery dispute will continue significantly longer than needed, and will require extraneous time and expense to complete indexing.

### Unnecessary Elements

There are two elements identified in Plaintiffs' first draft which UMC believes are unnecessary. First, along the columns listed, Plaintiffs list "Missing Documents." UMC argues that this is argumentative, asks for legal conclusion, and cannot be determined for such an index. This is improper in such an index, and will not be included in any index prepared.

Second within the far-left column, Plaintiffs list "Annual Financial Audits." UMC finds this element is vague as to the prospective hospital department and purpose in discovery. Further, UMC cannot determine how this document would be responsive to Plaintiffs' Requests for Production of Documents.

### Requested Changes

To assist in streamlining the indexing process, UMC has created a second draft proposal for the hard copy document index. A copy is enclosed with this letter. UMC will provide simple explanations for several alterations.

For clarification purposes, UMC delineated that the requested document types apply to opt-in plaintiffs. Following that, UMC has provided two options [listed under "Work Schedules"] to further identify document repositories. The first option is to request only the documents relating to one of the 600-plus opt-ins. This will significantly increase the time required for indexing. The second option is to identify the group for which each opt-in is a part; the option shows Admitting Representatives as one group, nurses on 3 West as another.

UMC also outlined more information for the columns. UMC aims to make sure the information allows Plaintiffs to determine if a document needs to be inspected. The altered columns are as follows:

- Document Description/Type
- Physical Location

Daniel Garrie, Esq.
May 15, 2014
Page 3

- UMC staff responsible/Source
- Estimated Volume with Source
- Date Range
- Duplicate of previous production?

With regards to the estimated volume with the source, UMC asks that Plaintiffs define how this should be conveyed (e.g., number of boxes, size of binders, page counts, etc.). Then, when assessing date range, UMC will restrict the index to documents responsive to Plaintiffs' Requests for Document Production, i.e., from July 27, 2009 to current. If Plaintiffs are interested in specific time frames within that period for specific document types, UMC is open to discussing more targeted indexing.

UMC looks forward to continued discussion on this topic. With further discussion we can set a reasonable time frame for completing this process. At this time, UMC is unable to assess the time required for indexing documents as the form of the index is vital to understanding the scope of the project.

If further clarification or concerns can be addressed, please do not hesitate to raise these issues.

Very truly yours,

Margaret G. Foley of
Cayla Witty for
LEWIS BRISBOIS BISGAARD & SMITH LLP

MGF:CW
Enclosure
cc:    Plaintiffs' Counsel and ESI Experts

SMALL V. UMCSN, USDC CASE NO. 2:13-CV-00298-APG-PAL

**INDEX FOR HARD COPY DOCUMENTS**

| Document Description/Type | Physical Location | UMC Staff Responsible/ Source | Estimated Volume with Source | Date Range | Duplicate of Previous Production? |
|---|---|---|---|---|---|
| Work Schedules for Opt-In-Plaintiffs | | | | | |
| Opt-in A | | | | | |
| Opt-in B | | | | | |
| or | | | | | |
| Admitting Dept | | | | | |
| Nursing 3 West | | | | | |
| | | | | | |
| Opt-In Plaintiff Assignment Sheets | | | | | |
| Opt-In Plaintiff Corrections Forms | | | | | |
| Opt-In Plaintiff Attestation Forms | | | | | |
| Opt-In Plaintiff Processed PARS | | | | | |
| Opt-In Plaintiff Payroll Adjustments Forms | | | | | |
| Opt-In Plaintiff Off-Cycle Forms | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

SMALL V. UMCSN, USDC CASE NO. 2:13-CV-00298-APG-PAL

INDEX FOR HARD COPY DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

4839-1888-8987.1

2