# EXHIBIT R

```
 1                UNITED STATES DISTRICT COURT

 2                    DISTRICT OF NEVADA

 3

 4                                        CERTIFIED COPY

 5   DANIEL SMALL, CAROLYN SMALL,    )
     WILLIAM CURTIN, DAVID COHEN,    )
 6   LANETTE LAWRENCE, and LOUISE    )
     COLLARD, Individually, and on   ) Case No.
 7   Behalf of All Other Persons     ) 2:13-cv-0298-APG-PAL
     Similarly Situated,             )
 8                                   )
             Plaintiff,              )
 9                                   )
             vs.                     )
10                                   )
     UNIVERSITY MEDICAL CENTER OF    )
11   SOUTHERN NEVADA,                )
                                     )
12           Defendant.              )
     _____)
13

14       REPORTER'S TRANSCRIPT OF SPECIAL MASTER'S HEARING

15                         VOLUME V

16      BEFORE SPECIAL MASTER PRESIDING, DANIEL GARRIE, ESQ.

17              Taken on Monday, June 16, 2014

18                      At 9:33 a.m.

19              Taken at the U.S. District Court

20      333 Las Vegas Boulevard South, Courtroom 7-D

21                    Las Vegas, Nevada

22

23

24

25   Reported By: Gale Salerno, RMR, CCR No. 542
```

Special Master's Hearing   June 16, 2014
***Volume V***

Page 2

```
 1    APPEARANCES:

 2    For the Plaintiffs:

 3            JON A. TOSTRUD, ESQUIRE
              Tostrud Law Group
 4            1925 Century Park East, Suite 2125
              Los Angeles, California  90067
 5            (310) 278-2600
              jtostrud@tostrudlaw.com
 6

 7            MARC L. GODINO, ESQUIRE
              KARA WOLKE, ESQUIRE
 8            Glancy Binkow & Goldberg, LLP
              1925 Century Park East, Suite 2100
 9            Los Angeles, California  90067
              (310) 201-9105
10            mgodino@glancylaw.com

11

12    For the Defendant:

13            CAYLA J. WITTY, ESQUIRE
              MARGARET G. FOLEY, ESQUIRE
14            ROBERT FREEMAN, ESQUIRE
              Lewis Brisbois Bisgaard & Smith, LLP
15            6385 South Rainbow Boulevard, Suite 600
              Las Vegas, Nevada  89118
16            (702) 893-3383
              cayla.witty@lewisbrisbois.com
17

18    Also Present:

19            DOUGLAS E. FORREST, ESQUIRE, ILS
              MR. BRUCE PIXLEY
20            MR. JOSEPH EDMONDSON
              DEAN SCHAIBLEY, UMC
21

22

23

24

25
```

```
 1              SPECIAL MASTER GARRIE:  When -- to the best
 2   of your knowledge, how long were you supporting
 3   Clarity, the database, for?
 4              THE WITNESS:  I started in 2005, and ever
 5   since then up to 2014.
 6              SPECIAL MASTER GARRIE:  And when in 2014
 7   did you stop using the Clarity database?
 8              THE WITNESS:  The database was shut down --
 9   the SQL server was shut down on May 5th, 2014.
10              SPECIAL MASTER GARRIE:  Did that include
11   the Clarity database?
12              THE WITNESS:  Yes.
13              SPECIAL MASTER GARRIE:  Up until that time,
14   Clarity database was being written to?
15              THE WITNESS:  Yes.
16              SPECIAL MASTER GARRIE:  So that means
17   records were being written into the system?
18              THE WITNESS:  Yes.
19              SPECIAL MASTER GARRIE:  Now, I had the
20   fortunate opportunity to read the Clarity manual.
21   Lucky for me I have a memory that doesn't usually
22   require me to read things more than once.
23              In the process of reading the Clarity
24   manual, I came across a database yields that I was
25   interested in.
```

```
 1                THE WITNESS:  Okay.
 2                SPECIAL MASTER GARRIE:  It is very clear to
 3    me that Clarity can be used for -- based on the
 4    manual, it's used for project management.  Is that
 5    your understanding as well?
 6                THE WITNESS:  Yes.
 7                SPECIAL MASTER GARRIE:  And within that
 8    function of project management, it also has time
 9    tracking capabilities fully built in and integrated
10    throughout the entire application?
11                THE WITNESS:  Yes.
12                SPECIAL MASTER GARRIE:  And as far as I
13    understand it, there are participants which are
14    individuals that engage the system.  There is a
15    schedule, as well as a project calendar, which are
16    different artifacts with views within the members
17    within a project group can view against, as well as
18    the schedule being a timetable used for determining
19    performance of particular tasks?
20                THE WITNESS:  That's correct.
21                SPECIAL MASTER GARRIE:  And then on top of
22    that, there are timesheets which enable resources --
23    this is why I like technology people, right?  People
24    aren't people.  Resources are people, right?
25                Because -- but, you know, fair recognition,
```

```
 1   any problem with you asking directly.
 2           MR. FORREST:  If I might, Special Master
 3   Garrie.
 4           Is there a capability for exchange between
 5   data between the Kronos database and the SAP
 6   database?
 7           SPECIAL MASTER GARRIE:  Mr. Mendoza, before
 8   you answer that, there's a set of questions I have
 9   about that.
10           So the Clarity/Kronos, are they totally
11   independent systems?
12           THE WITNESS:  Yes.
13           SPECIAL MASTER GARRIE:  Do they share data
14   at all?
15           THE WITNESS:  No.
16           SPECIAL MASTER GARRIE:  So when data goes
17   into one, there is no way to get the data seamlessly
18   into the other?
19           THE WITNESS:  Yes.
20           SPECIAL MASTER GARRIE:  So if I put my time
21   into Clarity and don't put it into Kronos, it's not
22   recorded in Kronos but it is recorded in Clarity?
23           THE WITNESS:  That's correct.
24           SPECIAL MASTER GARRIE:  If I put my time in
25   Kronos and it's not recorded in Clarity, it's not
```

Special Master's Hearing    June 16, 2014
***Volume V***

Page 106

```
 1   much.
 2            I do want the remaining results provided --
 3            THE WITNESS:  Yes.
 4            SPECIAL MASTER GARRIE:  -- as soon as that
 5   is done.
 6            And please just show, counsel for UMC, the
 7   additional Kronos applications you mentioned.  While
 8   they've been provided in the entire Kronos database,
 9   I just want to make sure that all of the data --
10            THE WITNESS:  I can.
11            SPECIAL MASTER GARRIE:  Just show it to
12   them.  Just do as I asked.  Show them the application
13   to make sure.
14            THE WITNESS:  Okay.
15            SPECIAL MASTER GARRIE:  That's it.  Thank
16   you very much.
17            THE WITNESS:  Thank you.
18            SPECIAL MASTER GARRIE:  Let's go off the
19   record for a second.
20            (A discussion was held off the record.)
21            SPECIAL MASTER GARRIE:  I want to check in
22   really quickly with the hard copy index.
23            Counsel for UMC, can you please give me an
24   update?
25            MS. WITTY:  We have agreed to a form for
```

1  the index with plaintiffs' counsel.  We are beginning
2  to contact the individual custodians for the specific
3  groups of documents that have been identified as for
4  the index.  This is a list of more than 130
5  individuals throughout the UMC.
6              SPECIAL MASTER GARRIE:  Is it clear why
7  former counsel hadn't found these paper documents?  I
8  realize you can't testify for former counsel, but I
9  was reading through all of the e-mail exchanges
10 around this, and it's a little befuddling to me that
11 given that Ms. Panzeri testified that they were
12 literally in her office.  It wasn't like --
13             MS. WITTY:  A significant amount of the
14 documentation from Ms. Panzeri's office, as well as
15 some of the other documents that are referenced in
16 the hard copy index, will be duplicative of
17 information that has already been produced, either
18 through the opt-in packets or electronic versions.
19             However, we do believe that there is
20 specific information, most notably the attestation
21 forms, that were not kept prior to October of 2012,
22 and would not have been an initial document collected
23 by prior counsel.
24             SPECIAL MASTER GARRIE:  Okay.  I just
25 wondered.

1  readdress with plaintiffs' counsel.  The reason being
2  is that many of these forms are for a specific date,
3  and they have asked for the date range for the
4  documents for each opt-in.
5           If an opt-in had a document from October of
6  2012, and another document from March of 2013, it's a
7  huge span of time, but we only have two documents
8  from that.  And because we believe that the more
9  specificity the better, it takes an extreme amount of
10 time to go through all of those documents to make
11 sure that the dates are precise.
12          SPECIAL MASTER GARRIE:  Let's go off the
13 record.
14          (A discussion was held off the record.)
15          SPECIAL MASTER GARRIE:  I'm going to order
16 by the end of the week UMC to confer with their
17 client at lunch and hopefully identify a room to put
18 in the 48-plus banker boxes related to Ms. Panzeri's
19 collection, as discussed earlier in these hearings;
20 for plaintiffs to start reviewing pursuant to the
21 protocol set forth.
22          I'm also going to order UMC by the end of
23 next week to have identified all the 87 individuals
24 to collect the attestation forms from.
25          I'm going to also order UMC to, by the end

 1   of next week, to have started producing the meeting
 2   minutes and other items Counsel Witty will state
 3   right now.
 4          MS. WITTY:  You're going to allow us time
 5   to look at the list?
 6          SPECIAL MASTER GARRIE:  Yes.  So after
 7   lunch, UMC will present specifically what will be
 8   coming on a roll-in basis.
 9          I'm also going to order UMC to do their
10   best efforts to clear 15 departments a week.
11   Recognizing from plaintiffs' side that there will be
12   some weeks when you will get 20 and some weeks you
13   will get five, because there will be departments of
14   one and then departments of hundreds.
15          So it will vary, so they have a plus or
16   minus factor of four.  So anywhere between 11 and 19
17   boxes could come across.
18          If it requires additional time, please let
19   me know after lunch.  But I'm assuming that once you
20   identify the individuals, it's just a matter of
21   getting on the phone with them and making them get
22   you the paperwork and then sending someone over to
23   collect it.
24          Am I missing something?  Counsel for UMC is
25   that --

Special Master's Hearing   June 16, 2014
***Volume V***

Page 112

```
 1              MS. WITTY:  The only thing that we ask is
 2   that previously it had been discussed that UMC would
 3   provide custodian of record declarations, if there
 4   was any specific information.
 5              SPECIAL MASTER GARRIE:  Fair enough.
 6   Plaintiffs is to specify exactly what they want in
 7   the custodian of record declarations, what
 8   information they want.
 9              MR. TOSTRUD:  And these are for the
10   individual departments, correct?
11              SPECIAL MASTER GARRIE:  As to whatever was
12   agreed upon earlier between you.
13              MR. TOSTRUD:  Okay.  That's fine.
14              SPECIAL MASTER GARRIE:  You have to provide
15   that to them by Wednesday.
16              MR. TOSTRUD:  Okay.
17              SPECIAL MASTER GARRIE:  Once you get that,
18   that's supposed to come with each box, right?  I'm
19   assuming -- is that reasonable?
20              MS. WITTY:  Yes.
21              SPECIAL MASTER GARRIE:  So as the boxes
22   come across, the declarations will come as well.
23              MS. WITTY:  That is the intention.
24              SPECIAL MASTER GARRIE:  Okay.  All right.
25              Let's go back off the record.
```

```
 1                REPORTER'S CERTIFICATION
 2
 3              I, GALE SALERNO, a certified court
 4    reporter and notary public within and for the State
 5    of Nevada, do hereby certify that I reported in
 6    shorthand the proceedings in the above-entitled
 7    matter at the time and place indicated, and that
 8    thereafter said shorthand notes were transcribed into
 9    typewriting at and under my direction, and the
10    foregoing transcript constitutes a full, true, and
11    accurate record of the proceedings.
12              IN WITNESS WHEREOF, I have hereunto
13    set my hand this 23rd day of June,
14    2014.
15
16                         _____
17                         GALE SALERNO, RMR, CCR No. 542
18
19
20
21
22
23
24
25
```