# EXHIBIT X

ROBERT W. FREEMAN
Nevada Bar No. 3062
MARGARET G. FOLEY
Nevada Bar No. 7703
CAYLA WITTY
Nevada Bar No. 12897
LEWIS BRISBOIS BISGAARD & SMITH LLP
6385 S. Rainbow Boulevard, Suite 600
Las Vegas, Nevada 89118
702.893.3383
FAX: 702.893.3789
    Attorneys for Defendant
    University Medical Center of Southern
    Nevada

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\*\*\*

| | |
|---|---|
| DANIEL SMALL, CAROLYN SMALL. WILLIAM CURTIN, DAVID COHEN, LANETTE LAWRENCE, and LOUISE COLLARD, Individually, and on Behalf of All Other Persons Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>UNIVERSITY MEDICAL CENTER OF SOUTHERN NEVADA;<br><br>Defendant. | CASE NO. 2-13-cv-0298-APG - PAL<br><br>**DECLARATION OF JOSEPH EDMONDSON (REVISED PURSUANT TO MAY 20, 2014 ORDER, DKT NO. 169)**<br><br>Special Master Presiding: Daniel Garrie |

I, JOSEPH EDMONDSON, declare:

1. I am a Forensic Computer Examiner, and I was hired by the law firm of Lewis Brisbois Bisgaard & Smith LLP (LBBS) to process and produce responsive electronic data from a search of electronically stored information in the litigation titled *Small et al. v. University Medical Center of Southern Nevada*, U.S. District Court Case No. 2:13-cv-00298-APG-PAL. The facts set forth herein are of my own personal knowledge and if sworn I could and would testify competently thereto.

2. I was ordered by the Special Master in the above-mentioned lawsuit to provide a declaration detailing my involvement in the e-discovery in this case,

4850-8061-8771.1

including outlining my responsibilities, documenting my e-discovery processes, and addressing any concerns that have arisen in the process.

3. I was first contacted in mid-September 2013 by Brando Eusebio from LegalWings, the document processing vendor used by LBBS, for consultation relating to a report generated by another ESI vendor: Leon Mare. After reviewing the report, I requested more information regarding what data was being analyzed and what type of production was intended to be provided after this report.

4. On October 3, 2013, I participated in a meeting with counsel for UMC and Mr. Eusebio to determine what specific processing needed to be accomplished as it had been determined that the initial ESI vendor's report was insufficient under this lawsuit's standing ESI Protocol Order. I asked for counsel to provide the responsive native files with their original folder structure maintained. UMC's counsel informed me that they would follow-up with the initial vendor.

5. On November 14, 2013, I again met with UMC counsel and Mr. Eusebio to receive a hard drive containing the original source data used by Lean Mare to create his report and to clarify the exact processing that needed to be performed. UMC counsel requested that I re-create the results from the original report provided by Leon Mare as closely as possible, but to provide the native files, TIFF files, OCR text and load-files in compliance with the ESI Protocol Order. I was retained that day, and submitted a quote for my anticipated services to Litigation Services whom I contract with on November 16, 2013. Litigation Services then made arrangements with LegalWings for me to work on the project.

6. The hard drive that I was provided with contained data for the five identified custodians in an FTK AD1 forensically sound file format. The files verified successfully in FTK Imager 3.1.2 and I understood that this was a collection of the full data source for these five custodians. UMC counsel informed me of this, and I was informed that Leon Mare, who performed the original forensic imaging, should have made a complete copy of all of the custodians' collections. During this

4850-8061-8771.1

2

1 time I was only interacting with counsel and did not have the opportunity to verify
2 this information directly with UMC IT Security, or the previous ESI Vendor.

3     7.    I received 16 FTK AD1 files totaling 29.9 GB in size. During these
4 Special Master proceedings, I was asked to specifically determine what this data
5 included. Upon review of the data and conference with UMC IT personnel, I have
6 determined that the data I received in November 2013 is comprised of the
7 amalgamated local profile data of custodians Brian Brannman, John Espinoza, Doug
8 Spring, James Mumford, and Jacquelyn Panzeri as collected by UMC Network
9 Security Analyst Dean Schaibley via Microsoft Robocopy, the then-current
10 mailboxes of the same custodians collected in August 2013 by Mr. Schaibley, and
11 the then-current mailboxes of four of these custodians (Brannman, Espinoza, Spring,
12 and Panzeri) collected in April 2013 by Mr. Schaibley.

13     8.    On November 20, 2014, I participated in a phone call with counsel from
14 UMC, opposing counsel, and opposing counsel's ESI Vendor. During this call, an
15 agreement was reached to modify the production deliverable. I was instructed to
16 only provide placeholder tiff images along with the native files, text files, and load-
17 files instead of full tiff representations of the native files. Additional meta-data
18 fields were also agreed upon to be added to the load-files. These additional meta-
19 data fields were provided to me directly from the opposing counsel's ESI Vendor
20 via email on November 25, 2013.

21     9.    I used FTK Imager 3.1.2 to mount the forensic images, and then the
22 files were acquired in EnCase Forensic into an EnCase Evidence File (E01) Format.
23 All user-created files were searched in EnCase with the agreed upon search terms,
24 and global de-duplication was performed using MD5 hashes. The resulting files
25 were exported in their native file format to my forensic examination desktop.

26     10.    EnCase 6.19.7.2 and 7.07.00.138 were unable to mount all of the
27 provided email container files so Paraben P2 Commander 2.24688.24628 was used
28 to mount all of the email containers, apply date filters and perform keyword

searches. The final step was to process the exported emails and native files with Ipro eCapture 6.2.2. This original production was completed on December 8, 2013.

11. It was identified that the original processing did not contain the extracted text and on January 14, 2014, I completed re-processing the data with the correct extraction option in eCapture and provided a new hard drive to counsel for UMC.

12. That same day, I participated in a teleconference with UMC Counsel, Plaintiffs' counsel, and Plaintiffs' ESI experts. I provided several examples of the new processing results and we discussed several issues, but we were unable to resolve any issues raised during the teleconference.

13. During the Special Master hearings it was requested that I perform detailed tests with different email processing software to determine if issues identified in the produced data were being caused by the software. After reviewing the results it was clear that, despite the software manufacturer's claims, the original processing software used, i.e., "Paraben P2 Commander," had in this case incorrectly produced the responsive email files and that re-processing in EnCase 7.09.03 was the most accurate option currently available. I did not identify any other errors in the prior ESI production.

14. During the Special Master hearings, it was also determined that the source data from which I performed the original e-discovery processing did not include the full collection of data for the identified custodians. I coordinated with Dean Schaibley at UMC to have new logical evidence files created for each custodian encompassing all data that was being preserved from the two separate collections identified in the Special Master hearings. The Robocopy scripts and error log files generated during the collections done by Dean Schaibley at UMC were included with the new logical evidence files provided to me. For the initial five custodian the size of the source data provided before April, 9 2014 was 57.8GB, the source data provided by Dean Schaibley after April, 9 2014 was 106GB.

15. When I began processing these new logical evidence files, I documented each step in the process with screenshots and additional documentation. A true and correct copy of this processing document is attached as Exhibit A; at the direction of the Special Master, Counsel Witty for UMC has provided annotation to the process document to aid the Court in understanding the tasks as captured in my screenshots. I also conferenced with opposing counsel's ESI Vendor on April 19, 2014 to conduct a quality control test and ensure that all requested meta-data was captured and the production format was compatible with their systems. Both the quality control measures and the process documentation were meant to ensure that the ongoing productions were in line with the receiving party's technical specifications in accordance with the ESI Protocol Order, as amended.

16. I also performed a test to ensure that responsive emails were being captured in the search results. Counsel for UMC provided me with twenty-nine (29) relevant emails in native format. I created a PST file from these emails and loaded them in EnCase 7.09.03 following the documented process. All 29 emails were identified as responsive to the keyword search being performed.

17. Within the complete collection, EnCase 7.09.03 was able to identify 779 encrypted and password protected files. I exported and processed the encrypted and password protected files within the relevant time frame with Passware Kit Forensic 13.3 to recover their passwords and/or create unprotected versions of the files so that they could be reviewed. All encrypted and password protected files within the relevant time frame were provided to UMC counsel for review.

18. At the request of the Special Master and with the cooperation of UMC counsel, I conducted a search for possible preservation notice or litigation hold emails. As of this date, only two such emails have been identified. The first email message is the email sent to a UMC distribution list, PatientServiceLeaders, on April 15, 2013 by Cindy Dwyer on behalf of Brian Brannman. This email has been produced by UMC in various custodian deliverables as well as in supplemental

disclosures in August 2013, Bates-stamped UMC 100004. The second email is an email sent from Patricia Kennedy to Doug Spring on August 20, 2012, with three pdf attachments. One of those attachments is the August 6, 2012 preservation notice letter from Plaintiffs' counsel.

19.  I have provided deliverables to counsel for UMC for all 27 custodians. At this time, the only issue identified by Plaintiffs with any of the deliverables was isolated to Brian Brannman's data. Initially, the data was delivered on a Truecrypt encrypted thumb drive. When the thumb drive was mounted in Truecrypt the data was unreadable. I immediately asked my contact at Litigation Services to create a new DVD containing the deliverable. Once received it was found that this disc contained the Source Files instead of the Exported deliverable files. I personally created a second DVD that has been sent to Plaintiffs, who have not identified any further issues. The only other issue that occurred in this process was related to an odd review package issue with the results of Cindy Dwyer's profile, but the review was completed by counsel for UMC and the deliverable has been sent.

20.  Following the production of deliverables for the 27 custodians, Plaintiffs requested a report from eCapture to allow for the custodian metadata field to identify unproduced duplicates of ESI documents produced in prior custodian deliverables. On May 9, 2014, Douglas Forrest, Vice President at International Litigation Services (ILS), Plaintiffs' ESI vendor, provided instructions for generating this "Custodian Pivot Report." I provided these reports along with a deliverable of custodian ESI to counsel for UMC on May 13, 2014, and I understand that it was sent to Plaintiffs the very same day.

21.  After completing the 27 custodian profile deliverables, I have continued to work with counsel for UMC to produce responsive documents from other ESI repositories. These repositories include:

- Twenty-four (24) computer harddrives and/or laptops used by the identified 27 custodians at UMC. The same review process was used, and

the processing for deliverables is the same as for the ESI from the custodian profiles;

- The UMC intranet "Policies and Procedures" complete C: Drive; and
- Network file shares for which the original seven custodians had access.

22. The largest source of ESI to be collected to this point has been the 7 original custodian's network file shares (aka "Q: Drive"). I collected an external hard drive from Dean Schaibley on April 9, 2014 at 3:44 pm. The hard drive contained forensic images of both the current Q: Drive and a back-up copy of the Q: Drive farthest back available back-up created on Dec, 14, 2013.

23. During review and discussions surrounding the Q: Drive, it was discovered that known responsive files were not in the initial review package I prepared for counsel for UMC. After analysis it was discovered that, despite indications of success, EnCase had failed to accurately index all data for the Q: Drive. Search results were only showing from within email containers, not both emails and standalone files. After discussions with Guidance Software Technical Support, adjustments were made to the software configuration and a new index was created. Further testing showed that the new index was working correctly, and the additional files were provided to counsel for review.

23. A large amount of the files on the Q: Drive are image file types that are not searchable. I created a list of all TIF, JPG, JPEG and PDF files which was provided to counsel and contains 1,483,002 files. No decision has been made at this time as to which of the numerous folders from the Q: Drive will be OCR'd, searched, reviewed and produced.

24. To aid in efficient review and production of previously unsearched PDF files located in all sources, all PDF files were loaded into eCapture for OCR processing. The resulting files were then imported into EnCase in order to perform the same searches performed on the other data sources. A random sample of the responsive data and their respective OCR TXT files were selected by sorting by

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4850-8061-8771.1

7

1 | MD5 Hash value and were sent to Plaintiff's ESI vendor for review and Quality
2 | Control.
3 |     25.    At the request of the Special Master, I also compared the hash values of
4 | the files on the Q: Drive for analysis of any changes between the current version and
5 | the back-up copy. First, I exported the tab delimited listings from EnCase for all of
6 | the files listed from each collection, eliminated the files with completely matching
7 | MD5 hash values, and then attempted to match files by their full file path name. If I
8 | discovered a file in a particular location on the back-up copy that shared the same
9 | name but a different hash value for a file on the current copy, I marked the file as
10 | "modified" for my report. If I could not locate a file on the current copy in the same
11 | location as the back-up copy, I marked that file "deleted" for my report. A "Deleted"
12 | files does not mean the file does not exist. It only signifies that the file no longer
13 | exists in the same location with the same name. This could identify a file that was
14 | actually deleted, or a file that was moved outside the folders accessible to the 7
15 | custodians, or the file was moved and modified (so both hash and location could not
16 | match).
17 |     26.    As production is ongoing, any additional technical issues that may arise
18 | will be addressed in collaboration with Counsel for UMC, Plaintiffs' Counsel, and
19 | Plaintiffs' ESI and Forensic Experts.

I hereby declare under penalty of perjury under the laws of the State of Nevada that the foregoing is true and correct and that this declaration was executed on June 11, 2014, in Las Vegas, Nevada.

Joseph Edmondson, CCE, EnCE

4850-8061-8771.1

8