ROBERT W. FREEMAN
Nevada Bar No. 3062
DANIELLE C. MILLER
Nevada Bar No. 9127
CAYLA WITTY
Nevada Bar No. 12897
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
6385 S. Rainbow Boulevard, Suite 600
Las Vegas, Nevada 89118
702.893.3383
FAX: 702.893.3789
Attorneys for Defendants
University Medical Center of Southern
Nevada and John Espinoza

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\*\*\*

| | |
|---|---|
| DANIEL SMALL, CAROLYN SMALL, WILLIAM CURTIN, DAVID COHEN, LANETTE LAWRENCE, and LOUISE COLLARD, Individually, and on Behalf of All Other Persons Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>UNIVERSITY MEDICAL CENTER OF SOUTHERN NEVADA; a political subdivision of Clark County, State of Nevada, CLARK COUNTY, a political subdivision of the State of Nevada, and JOHN ESPINOZA, an individual.<br><br>Defendants. | CASE NO. 2-13-cv-0298-APG - PAL<br><br>**DEFENDANTS UNIVERSITY MEDICAL CENTER OF SOUTHERN NEVADA AND JOHN ESPINOZA'S MOTION TO DISMISS PLAINTIFFS' FOURTH AMENDED CLASS ACTION COMPLAINT PURSUANT TO RULE 12(b)(6)** |

Defendants University Medical Center of Southern Nevada and John Espinoza

("Defendants"), by and through their attorney of record Robert W. Freeman, Esq., of the law firm

of Lewis Brisbois Bisgaard & Smith, LLP, move this Court to dismiss Plaintiffs' Fourth Amended

Class Action[1] Complaint (hereinafter "Complaint"). Plaintiffs attempt to revive their

[1] ECF # 268 no longer has a class action cause of action. However, as the document retains this reference in the title, Defendants utilize the full title for clarity at this juncture.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1 | unsupportable suit not with specific information known and available in extensive discovery to

2 | satisfy *Landers v. Quality Communs., Inc.*, 771 F.3d 638, *amended at* 2015 U.S. App. LEXIS

3 | 1290 (9th Cir. Jan. 26, 2015), but instead with generalizations and contradictory allegations.  As it

4 | is Plaintiffs' responsibility to show some plausible basis for their claims, it cannot be escaped that

5 | this litigation has been ongoing for more than four years in which Plaintiffs have conducted

6 | extensive discovery, including production of both native electronic and report-based production of

7 | their timekeeping records.  Plaintiffs do not explain how they have received thousands of dollars

8 | in overtime payments, but were somehow still systematically denied payment for purported

9 | missed meal breaks.  The Plaintiffs assert allegations for which there is little to no support, even

10 | going so far as to contradict known facts, especially as such relate to the naming of Defendant

11 | John Espinoza as an individual defendant.  In light of Plaintiffs' failure to credibly allege facts

12 | sufficient to proceed with their cause of action under the FLSA, individually or as representatives

13 | of a collective action, Defendants respectfully ask this Court grant their motion to dismiss.

14 |  This motion is supported by Federal Rule of Civil Procedure 12(b)(6), the following points

15 | and authorities, the papers and pleadings on file, and any further argument or evidence the Court

16 | may entertain on this matter.

17 | **MEMORANDUM OF POINTS AND AUTHORITIES**

18 | **I.   RELEVANT BACKGROUND**

19 |  **A.  <u>Factual Allegations</u>**

20 | <u>Plaintiffs' Complaint</u>

21 |  Plaintiffs were non-exempt employees of University Medical Center of Southern Nevada

22 | ("UMC") during the applicable time period for this suit.  ECF # 268, ¶¶ 14-25, 35.  Each alleges

23 | that he or she regularly worked in excess of 40 hours per week.  *See id.*  They claim they shared

24 | "similar job titles, training, job descriptions, job requirements and compensation plans, amongst

25 | other things." *See id.* at ¶ 35.

26 |  The basis of this lawsuit is the purported common and customary practice to require UMC

27 | employees to miss meal breaks.  *See generally id.* at ¶ 40.  Plaintiffs claim that Defendants

28 | "discouraged and failed to permit Plaintiffs and opt-in Plaintiffs to change their own timecards to

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4825-7806-0089.1                                    2

1 reflect a missed or interrupted meal break." *See id.* at ¶ 49. Thus, because UMC had an automatic

2 meal break deduction policy prior to October 2012, Plaintiffs claim they were underpaid for time

3 worked, specifically time spent working through meal breaks. *See generally id.* at ¶¶ 48-53.

4     Facts About the Plaintiffs

5 Plaintiffs Daniel Small, Carolyn Small, and William Curtin work as respiratory therapists

6 at UMC. *See id.* at ¶¶ 14, 16, & 18. Plaintiff David Cohen works as a registered nurse. *See id.* at

7 ¶ 20. Lanette Lawrence works as an admitting representative, *see id.* at ¶ 22, and Louise Collard

8 as an electrocardiogram technician, *see id.* at ¶ 24. Each claims to work over 40 hours a week at

9 UMC regularly. *See id.* at ¶¶ 15, 17, 19, 21, 23, & 25.

10 Plaintiffs have all received overtime payment for time worked in excess of 40 hours a

11 week, or as otherwise provided under their respective collective bargaining agreement with UMC

12 and other compensation provisions. *See generally* Plaintiffs' Time Detail Audit Reports, attached

13 hereto as **Exhibits A (Daniel Small), B (Carolyn Small), C (William Curtin), D (David**

14 **Cohen), E (Lanette Lawrence), & F (Louise Collard).** Included in those payments for time

15 worked are several cancelled automatic lunch deductions for Daniel Small, William Curtin, David

16 Cohen, and Lanette Lawrence during the relevant time period from 2009 to 2012.[2] *See* Exhibits

17 A, C, D, & E.

18 In the Complaint, Daniel Small claims he missed 95 to 100 percent of his meal breaks. *See*

19 ECF # 268, at ¶ 41. Mr. Small simultaneously points to the week of December 26, 2011, in which

20 his time card indicated he worked 40 hours, claiming that he missed at least one of his four meal

21 breaks during his four shifts that week. *Cf.* Exhibit A *and* ECF # 268, at ¶ 41. Each of the other

22 named plaintiffs make similar allegations: some indicate less percentages of missed meal breaks,

23 some indicating weeks in which their time cards indicate hours in excess of 40 without

24 considering any missed meal breaks. *See* ECF # 268, at ¶ 46 (David Cohen alleges he missed 50%

25

26 _____

27 [2] Louise Collard has also received payment for time worked during a missed meal break, but only following the termination of the automatic lunch deduction policy. Carolyn Small's time records do not indicate any missed meal break payments under any system.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  of his meal breaks); *and* Exhibit B (noting that the week Carolyn Small indicates in the Complaint

2  had her working over 48 hours total).  Not one of the Plaintiffs, however, specifically identify why

3  they missed a single meal period during the given week.

4       Plaintiffs' assert that Defendants discouraged and/or failed to permit Plaintiffs to change

5  their timecards to reflect a missed or interrupted meal break.  *See* ECF # 268, at ¶ 49.  However,

6  Plaintiffs have testimony from Defendants that reflects the procedure under which any non-exempt

7  UMC employee could seek alteration of his or her time card:

8       [W]e want any issues of inaccuracies corrected at the lowest possible level
       which would mean that the employee would go to their supervisor and say I
9       believe that there's an error been made about my pay.  That supervisor would be
       charged with evaluating it.  If they agreed, then they would simply advise the
10      timekeeper.  The timekeeper would submit either a correction in that payroll or a
       payroll correction document to the payroll department for whatever correction
11      needed to be made.
       If for some reason the employee was dissatisfied with that, they could
12      themselves then go to the manager above that supervisor, follow the chain of
       command, and then likewise resolve it that way.  The employee has also the right
13      to go to the payroll department themselves and say that there's errors being made
       with regard to their pay.  Those instances, the payroll department will investigate
14      and evaluate the efficacy of the complaint, and if they agree, they will make the
       corrections and advise the manager of those corrections.  They can come and
15      complain to human resources and say that there's been a misapplication of the --
       of their pay.  Same, you know, result.  In addition, they can file a grievance
16      through the union to advise that they've been mispaid, and the union would then
       work through labor relations to address the -- any issue of mispayment.  And,
17      again, if it was found to be an error, then the corrections would be made back to
       the payroll department.  What's that, one, two, three, four, five different
18      approaches that they could use that I'm -- off the top of my head.
19

20  *Deposition of John Espinoza, Rule 30(b)(6) Witness for UMC, taken April 8, 2013,* at 95:15-96:22,

21  *attached hereto as* **Exhibit G**, *referenced in the Complaint,* ECF # 268, at ¶39.  Indeed, four of the

22  six Plaintiffs utilized this procedures in some way prior to UMC's change in timekeeping in

23  October of 2012.[3]  *See generally* Exhibits A (Daniel Small), C (William Curtin), D (David Cohen),

24  & E (Lanette Lawrence).  Their timekeeping records show that at various times over several years

25

26  _____

27  [3] Louise Collard utilized the procedure to be paid for missed and/or interrupted lunches following
   the change in timekeeping in October of 2012.  Carolyn Small had not utilized the procedure as
   evidenced in the attached records.  *See generally* Exhibit B (Carolyn Small) & F (Louise Collard).

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4825-7806-0089.1                    4

1  prior to this suit, these individuals were paid for their missed and/or interrupted meal breaks by

2  way of alteration of their time records. *See id.* These cancelled lunch deductions are common at

3  UMC. *See* Exhibit G, *Deposition of John Espinoza*, at 98:3-9.

4      Facts About the Defendants

5      UMC is a public county hospital in the State of Nevada. *See* ECF # 268, at ¶ 29; *see also*

6  NRS 450 *et seq.* (defining county hospitals and providing for oversight of such public

7  institutions).

8      Defendant John Espinoza is the Chief Human Resources Officer at UMC. *See* Exhibit G,

9  57:11-21. He is not an officer of the board for UMC. *See* NRS 450.090 (selection of county

10  commissioners for membership on board of county hospital). He is not a corporate officer.

11  Defendant Espinoza does not have the authority to make decisions regarding employee

12  compensation and capital expenditures. *See* NRS 450.180 (employment or removal of employees

13  or appointed persons); NRS 450.250 (control of expenditures by board). In fact, Mr. Espinoza

14  described the method for setting the rate of pay for UMC employees:

15      Well, it's part of a comprehensive classification/compensation schedule.
    Ultimately, that schedule is approved by the board of county commissioners, but
16      it may vary as a result of collective bargaining. And then also if we're talking
    about new classifications, then typically what happens is my class and comp
17      analyst will make recommendations based on a survey and analysis of the market.

18  *See* Exhibit G, *Deposition of John Espinoza*, at 119:9-16.

19      Mr. Espinoza does not, and cannot, act as an alter ego of UMC. *See id.* at 80:10-21

20  (describing his functions as chief human resources officer); *see also id.* at 231:4-10 (discussing the

21  individuals involved in potential compensation under FLSA investigation by the Department of

22  Labor). And he is not ultimately responsible for all policies, practices, procedures, actions, and

23  terms of employment for Plaintiffs at UMC. *See id.* at 103:13 – 104-23 (describing that the human

24  resource policy and procedure manual must be brought before the board of county commissioners,

25  and any further administrative policies require approval of the chief executive officer); *see also id.*

26  at 102:15-23 (describing his role as oversight, not drafting).

27  / / /

28


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

### B. Past Proceedings

Plaintiffs filed suit on July 27, 2012. *See* ECF # 1. UMC filed a motion to dismiss the complaint on September 10, 2012. *See* ECF # 23. On November 14, 2012, the Court denied UMC's first motion to dismiss. *See* ECF # 33. However, Plaintiffs amended their complaint on December 13, 2012. *See* ECF ## 36-37, 39. UMC answered the First Amended Complaint on January 2, 2013. *See* ECF # 42.

On January 11, 2013, Plaintiffs filed their Motion to Conditionally Certify a Collective Action and Facilitate Notice Pursuant to 29 U.S.C. Section 216(b). *See* ECF # 46. Following this, the parties filed a proposed Discovery Plan and Scheduling Order which was approved by the Court on February 7, 2013. *See* ECF ## 49 & 55. The Scheduling Order set Tuesday, April 2, 2013, as the date for filing motions to amend the pleadings or add parties. *See id.* This is the only scheduling order that has been entered in this case.[4]

The parties exchanged written discovery in the first half of 2013. Plaintiffs noticed several topics for deposition pursuant to Federal Rule of Civil Procedure 30(b)(6). On April 8, 2013, Defendant John Espinoza was deposed as UMC's Rule 30(b)(6) witness on April 8, 2013. *See generally* Exhibit G.

Then, on May 15, 2013, Plaintiffs filed a motion to compel further production with particular emphasis on electronically stored information. *See* ECF # 92. In the interim, on June 14, 2013, the Court granted Plaintiffs' motion to facilitate notice to potential opt-in plaintiffs. *See* ECF #106. All opt-in plaintiff consent-to-join forms were to be returned within 75 days of notice, that is, by October 18, 2013. At the end of the opt-in period, a total of 587 individuals had filed consent-to-join forms. These individuals are heavily referenced in Plaintiffs' Complaint, although no specific discovery has been conducted as to their individual or collective employment claims.

---

[4] The parties contemplated in November 2013, with the Court's guidance, an amended scheduling order under which discovery would have ended in September 2014. *See* ECF #140 (Minutes of Proceedings). However, the scheduling order was suspended due to special master proceedings. Discovery was stayed following the special master's report and recommendation and subsequent objection from Defendants.



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    The parties have engaged in significant disputes over electronic discovery.  These disputes

2    led to the appointment of a Special Master for electronic discovery at the expense of UMC on

3    February 11, 2014.  *See* ECF # 146 (Minutes of Proceedings).  On March 3, 2014, the Court

4    selected Daniel Garrie to serve as Special Master.  *See* ECF # 149.  Special Master proceedings

5    began with an in-chambers hearing on March 10, 2014.  *See* ECF # 151 (Minutes of Proceedings).

6    UMC paid nearly $500,000 for Special Master Garrie during the proceedings at the direction of

7    the Court.  *See* ECF # 149, 156, 164, 178, 215, and 233.  As a result of this involved and expansive

8    discovery proceeding, UMC has produced approximately 109 GB of data in addition to thousands

9    of scans of hard copy documents and other information.  UMC provided testimony and sworn

10   declarations for over two dozen employees and officials during discovery.

11   Plaintiffs have produced just 23 pages of documents in this litigation.  *See* **Exhibit H,**

12   Department of Labor ("DOL") Documents produced by Plaintiffs.  The "report," which Plaintiffs

13   reference in their Complaint at ¶¶ 58-61, was never provided to UMC by the DOL.  The document

14   was an internal memorandum from an investigator who haphazardly asserted unsupportable

15   statements.  For example, the employees involved in the DOL investigation were all from the

16   admitting department at UMC, not the various departments Plaintiffs contend.  *Cf.* Exhibit G,

17   Deposition of John Espinoza, at 147:3-10 *and* ECF 268, at ¶ 60.  Defendants objected multiple

18   times to the investigator's work, but they was never given a chance to "contest or challenged" the

19   assertions upon which Plaintiffs rely as the DOL report was never issued.  *See. e.g.*, Exhibit G,

20   Deposition of John Espinoza, at 153:10-154:8, 155:3-18, and 183:8-16.

21   The Special Master proceedings concluded on August 18, 2014 with a Report and

22   Recommendation and Final Findings of Fact and Conclusions of Law prepared by Daniel Garrie.

23   *See* ECF # 189.  UMC objected to Special Master Garrie's Report.  *See* ECF # 207.  The Court

24   heard argument on UMC's Objection on October 21, 2014.  *See* ECF # 228.  No decision has been

25   made to date on UMC's Objection.

26   On January 14, 2015, UMC filed a Motion for Partial Summary Judgment on Nevada

27   Statutory Claims.  *See* ECF # 234.  In response to this motion, Plaintiffs filed a Second Amended

28   Complaint, ECF # 237, without stipulation of the parties or order of the court.  Recognizing that

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  Plaintiffs' Second Amended Complaint addressed the issues raised in UMC's motion, the parties

2  entered into stipulations to withdraw the pending Motion for Partial Summary Judgment and to

3  allow the filing of the Second Amended Complaint on March 3, 2015. *See* ECF #238 & #239.

4      In light of the pending decision on UMC's Objection to the Special Master's Report, on

5  May 22, 2015, the court approved a stipulated stay of discovery on June 2, 2015. *See* ECF #248.

6  The Court granted Plaintiffs' Motion to Amend their Complaint on February 3, 2016. *See* ECF #

7  255.  The Third Amended Complaint was filed on February 4, 2016. *See* ECF # 256.

8      On February 22, 2016, UMC filed a motion to dismiss Plaintiffs' Third Amended

9  Complaint.  ECF # 259.  The Court granted UMC's motion based on Plaintiffs' failure to comply

10  with the pleading requirements for an FLSA wage-and-hour claim. *See* ECF # 267.  Plaintiffs

11  were afforded 21 days to file an amended complaint. *See id.*  On August 25, 2016, Plaintiffs filed

12  their Fourth Amended Class Action[5] Complaint.  ECF # 268.  The parties agreed to an extended

13  briefing schedule for responsive pleadings which the Court signed as an order. *See* ECF ## 269-

14  270.

15      Even now, Plaintiffs' Complaint still fails to comply with the pleading requirements for an

16  FLSA wage-and-hour claim pursuant to *Landers v. Quality Communications*.  Plaintiffs'

17  allegations are unsupportable in light of the extensive information available to them at this late

18  stage of litigation.  As such, Defendants ask this Court for dismissal of Plaintiffs' Fourth Amended

19  Class Action Complaint.

20  **II. STANDARD OF REVIEW**

21      Under Rule 12(b)(6), this Court may dismiss a claim if Plaintiff "fails to state a claim upon

22  which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A motion to dismiss tests the legal

23  sufficiency of the claim stated in the complaint.  Fed. R. Civ. P. 12(b)(6); *Conley v. Gibson*, 355

24  U.S. 41, 45-46 (1957); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007);

25  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009).  The sole issue raised by a Rule 12(b)(6)

[5] See FN 1 for reference.

4825-7806-0089.1

8

1  motion is whether the facts would, if established, support a valid cause of action. *Bell v. Hood*,

2  327 U.S. 678, 682-83 (1946).

3      In considering such a motion, all material allegations in the complaint are accepted as true

4  and must be construed in the light most favorable to the non-moving party. *Russell v. Landrieu*,

5  621 F. 2d 1037 (9th Cir. 1980). Although the Court can assume factual allegations to be true,

6  Courts should not "assume the truth of legal conclusions merely because they are cast in the form

7  of factual allegations." *W. Mining Council v. Watt*, 643 F. 2d 618, 624 (9th Cir. 1981). The court

8  may disregard allegations that are mere conclusory elements of a claim, unreasonable inferences,

9  or unwarranted deductions of fact contained in the complaint. *See Clegg v. Cult Awareness*

10  *Network*, 18 F.3d 752, 754-55 (9th Cir. 1994); *see also Ocasio-Hernandez v. Fortuno-Burset*, 640

11  F.3d 1, 12 (1st Cir. 2011).

12      In considering a Rule 12(b)(6) motion, a district court may consider documents outside the

13  complaint "whose contents are alleged in a complaint and whose authenticity no party questions,

14  but which are not physically attached to the pleading." *See Branch v. Tunnell*, 14 F.3d 449, 454

15  (9th Cir. 1994); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1281 (11th Cir. 1999). This

16  includes materials subject to judicial notice. *See Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d

17  1005, 1016 n.9 (9th Cir. 2014); Fed. R. Evid. 201. Even where a plaintiff only refers to the

18  document, the court may consider the full text of such document for the purposes of a motion to

19  dismiss. *See Branch*, 14 F.3d at 454; *see also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir.

20  2005) (courts may consider documents incorporated by reference in the complaint). Indeed, in the

21  Ninth Circuit, this consideration of important documents extends to documents that are not

22  actually referred to in the complaint when such documents are crucial to the claims. *See Parrino*

23  *v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998). If these documents do not support the claims

24  made, the complaint may be dismissed for failure to state a valid claim. *See Branch*, 14 F.3d at

25  454; *see also Moody v. Liberty Life Assur. Co.*, Case No. C07-01017 MJJ, 2007 U.S. Dist. LEXIS

26  32837 (N.D. Cal. Apr. 19, 2007).

27  / / /

28  / / /



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

III. **LEGAL ARGUMENT**

   A. **Plaintiffs' Fourth Amended Complaint Lacks Validity Under *Landers* Given the Significant Discovery and Information Available.**

     This Court dismissed Plaintiffs' Third Amended Class Action Complaint because "plaintiffs' allegations regarding overtime pay are threadbare recitals of the elements of a cause of action." *See* ECF # 267, at p.1, ln. 16-17. Essentially, Plaintiffs only alleged that Defendants "instituted uniform policies and procedures that disregarded the requirements of federal and state wage and hour laws by failing to pay overtime hours when plaintiffs worked more than forty (40) hours per week." *See id.* at p.3, ln. 11-13. Plaintiffs do not list greater detail regarding these policies and procedures as alleged, and Plaintiffs continue to fail to show how Plaintiffs were harmed by any act of Defendants.

     As in all pleadings, the Court here is looking for plausibility. *See Landers v. Quality Communications, Inc.*, 771 F.3d 638, 645 (9th Cir. 2014), *amended on other grounds by* 2015 U.S. App. LEXIS 1290, at *16; *see also Twombly*, 550 U.S. 544; *Iqbal*, 556 U.S. 662. "[I]n order to survive a motion to dismiss, a plaintiff asserting a claim to overtime payments must allege that she worked more than forty hours in a given workweek without being compensated for the overtime hours worked during that workweek." *See Landers, supra.* Plausibility is context-specific, and is evaluated "in light of judicial experience." *See id.* (citing *Lundy v. Catholic Health Sys. Of Long Island Inc.*, 711 F.3d 106 (2d Cir. 2013)).

     The Ninth Circuit in *Landers* looked at other circuits' decisions in this same area and felt that a plausible claim could be established by alleging the length of an average workweek during the applicable period, the average pay rate, the amount believed owed, or other facts. *See id.* at *16-17. At a minimum, the Ninth Circuit believed that a plaintiff "must allege that she worked more than forty hours in a given workweek without being compensated for the hours worked in excess of forty during that week." *See id.* at *17. The Ninth Circuit did not require an approximation of overtime hours because "[a]fter all, most (if not all) of the detailed information concerning a plaintiff-employee's compensation and schedule is in the control of the defendants." *See id.*

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    Plaintiffs here have most (if not all) of the detailed information concerning their
2  compensation and schedules.  UMC produced all of the relevant timekeeping records, both in
3  hard copy and native electronic database format.  *See* ECF # 143 (minutes noting UMC's
4  production of Kronos records, the official timekeeping database).  While Defendants do not ask
5  the Court to raise the standard to mathematical precision of purported damages, Plaintiffs should
6  be required to provide significantly more than the misrepresentations and vagueness present now
7  to support a clear, plausible claim.  Plaintiffs are not simply "drawing on memory and personal
8  experience to develop factual allegations with sufficient specificity."  *See Landers*, 771 F.3d at
9  643, 646; *see also Johnson v. Pink Spot Vapors Inc.*, No. 2:14-CV-1960 JCM (GWF), 2015 U.S.
10 Dist. LEXIS 13499, at *11 (D. Nev. Feb. 3, 2015).

11    The factual allegations now present in Plaintiffs' Complaint provide no better basis for a
12 reasonable inference that Defendants are liable for the misconduct alleged.  *See Iqbal*, 556 U.S. at
13 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court
14 to draw the reasonable inference that the defendant is liable for the misconduct alleged.").  As
15 noted in *Levert v. Trump Ruffin Tower I, LLC*, 2015 U.S. Dist. LEXIS 3266, at *10 (D. Nev. Jan.
16 9, 2015), "the Complaint needs to include a factual element that would allow the Court to bridge
17 Plaintiffs' allegations of daily off-the-clock work with the total amount of time that Plaintiffs
18 worked in any given week."

19    Plaintiffs' Complaint points to a specific workweek for each individual plaintiff.  *See*
20 ECF # 268, ¶¶ 41-46.  These specific workweeks are not random recollections.  They reflect
21 Plaintiffs' access to their timekeeping records.  As such, these crucial referenced time periods
22 provide an opportunity to look at each of the Plaintiffs' time worked.  *See Parrino v. FHP, Inc.*,
23 146 F.3d at 706; *see also Gamble v. Boyd Gaming Corp.*, 2014 U.S. Dist. LEXIS 78069 (D. Nev.
24 June 6, 2014) (noting that the timekeeping system is central to the employee's wage-and-hour
25 claims).  However, in looking at the Plaintiffs' time worked, Plaintiffs fail to present plausible
26 facts in support of their single FLSA cause of action.

27    First, the specifications are inherently contradictory.  *See Mauer v. Am. Home Mortg.*
28 *Acceptance, Inc.*, Case No. 2:11-cv-00158-GMN-RJJ, 2011 U.S. Dist. LEXIS 148164, at *10 (D.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   Nev. Dec. 23, 2011) ("The facts that are alleged do not provide a plausible inference of
2   wrongdoing as most of the facts are contradicted or self-contradictory."). For example, Plaintiff
3   Daniel Small alleges first that he missed 95 to 100% of his meal periods. *See* ECF # 268, ¶ 41.
4   Yet, naming a given workweek, he claims he missed one of his meal periods from his four work
5   shifts that week for which he was not paid. *See id.* Each of the Plaintiffs make similar
6   contradictory statements. These contradictory allegations do not present factual contentions from
7   which reasonable inferences can be made. *Cf. Scott v. Harris*, 550 U.S. 372, 380-81 (2007)
8   (where two different stories are presented, courts should not adopt a version of the facts that are
9   unreasonable). Not only are the allegations so incongruous, but the parties know that there was a
10   policy to seek payment for missed meal periods which was utilized by the Plaintiffs. *See, e.g.,*
11   Exhibit A (showing Daniel Small's cancelled lunch deductions on March 7, 2010 [UMC001274],
12   March 24, 2012 [UMC001285], May 26, 2012 [UMC001286], June 6, 2012 [UMC001286], and
13   July 4, 2012 [UMC001287]. These conflicting facts, as presented in documents upon which
14   Plaintiffs relied in their Complaint, cannot be allowed to stand.

15          Further, Plaintiffs offer no factual basis to explain away the payments for missed meal
16   periods they did receive. In fact, the overwhelming amount of overtime paid to the Plaintiffs, as
17   evidenced in their timekeeping records, further contradicts their assertions that they were required
18   to work time unpaid. *See* Exhibits A-F; *see also Desilva v. North Shore Long Island Jewish*
19   *Health Sys.*, 2014 U.S. Dist. LEXIS 77669 (E.D.N.Y. June 5, 2014) (disbursement of overtime
20   compensation is a fact strongly suggesting plaintiff's requests for meal period adjustments were
21   honored when properly requested). There is simply no basis from which to accept these
22   contradictory allegations. *See Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1144
23   (N.D. Cal. 2010) (discussing whether to consider contradictory allegations between amended
24   complaints, in light of court's prior orders directing attention to allegations). Essentially, the
25   Plaintiffs allege a systematic practice of preventing them for receiving overtime compensation for
26   missed meals when they actually received payment for missed meals. The only thing
27   "systematic" about the overtime policy at UMC is that it works and these Plaintiffs benefitted
28   from it.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    Moreover, Defendants' liability requires that they denied payment upon notice. *See White*

2  *v. Baptist Memorial Health Care Corp.*, 699 F.3d 869, 876-78 (6th Cir. 2012) (automatic meal

3  deduction policies are legal and place the burden on the employee to report missed meal periods to

4  be paid for such); *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414-15 (9th Cir. 1981).

5  Plaintiffs do not allege that they properly reported any missed meal period. *See generally* ECF #

6  268.

7    The Complaint does, at times, allege that Defendants had notice of missed meal periods.

8  *See id.* at ¶¶ 56-62. However, there is no evidence that Defendants ever failed to pay for a missed

9  meal it knew about.[6] As outlined above, the DOL failed to execute a reliable investigation into

10  missed meal periods and did not issue a written report to Defendants. *See* Exhibit G, 183:13-16.

11  The Urban Group report, attached hereto as **Exhibit I**, notes that UMC was acting to alleviate

12  staffing concerns for nurses. The report does not assert that when the hard working dedicated staff

13  work without taking a meal break they are not paid.[7] As shown by the time records of the single

14  nurse amongst the named plaintiffs, Plaintiff David Cohen received compensation for missed meal

15  periods on five occasions when he utilized the proper procedure. *See* Exhibit D (UMC002606-

16  2621). Plaintiffs' allegations otherwise twist and distort the established facts to hid the complete

17  lack of support for their claims.

18    The contradictory and overly conclusory allegations presented in the Complaint are legally

19  insufficient in light of the facts available. The Court instructed Plaintiffs on exactly what is

20

21  [6] Defendants anticipate that Plaintiffs will forcefully rely upon the Department of Labor ("DOL")
documents, attached hereto as Exhibit H, to show that Defendants would not compensate for

22  missed meal periods when notified. However, UMC could not rely upon the unsupported
suppositions of the DOL anymore than it can now rely upon the unsupported allegations of

23  Plaintiffs. The baseless legal conclusions of the DOL report should be ignored alongside the legal
conclusions Plaintiffs assert based upon the same in their Complaint. Further, Plaintiff Lanette

24  Lawrence, an admitting representative, covered by the DOL investigation and report, certainly
knew how to receive payment for a missed meal period. *See* Exhibit E (UMC002096-2115) (meal

25  deduction cancellation on April 7, 2012).

26  [7] Although Defendants cannot know which specific meeting minutes to which Plaintiffs refer in
their Complaint, *see* ECF # 268, ¶¶ 9, 62, Defendants deny any assertion that those documents

27  present any facts that support non-payment for time worked. Addressing employee concerns at
meetings does not equate to liability where an employee fails to take advantage of a known policy.

28  *See* Exhibit G, *Deposition of John Espinoza,* at p. 96-98.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1 required to meet the *Landers/Iqbal/Twombly* standard.  Yet, Plaintiffs made a mockery of this

2 standard by setting forth implausible inconsistencies and deliberate misinformation.  Defendants

3 should not be forced to answer to such claims.

4     B. **Plaintiffs' Have Insufficient Legal Basis for Naming John Espinoza as an**

5     **Individual Defendant.**

6     Plaintiffs also ignore facts known to them in naming John Espinoza as an individual

7 defendant under the FLSA.  Considering Plaintiffs' reliance on John Espinoza's deposition

8 testimony in their Complaint, their representations imputing FLSA liability to Mr. Espinoza are a

9 purposeful ignorance of the law in light of the facts at hand.  At paragraph 39 of the Complaint,

10 Plaintiffs cite to a deposition of John Espinoza, taken in his capacity as a witness under Federal

11 Rule of Civil Procedure 30(b)(6), showing that the deposition was central to their claims.

12 However, the information therein clearly establishes that their allegations against Mr. Espinoza are

13 unfounded, and should be dismissed.

14     While 29 U.S.C. § 203(d) defines an employer as "any person acting directly or indirectly

15 in the interest of an employer in relation to an employee," courts assess the "economic reality" of

16 the situation which involves a totality of the circumstances evaluation. *See Boucher v. Shaw*, 572

17 F.3d 1087, 1090 (9th Cir.2009); *see also Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28,

18 33, 81 S. Ct. 933 (1961); *Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34 (1st Cir. 2013).

19     In *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465 (9th Cir. 1983),  the

20 court laid out four factors to consider the economic realities of an employment relationship. Those

21 factors are: 1) whether the alleged employer had the power to hire and fire the employees, 2)

22 whether the alleged employer supervised and controlled the employee work schedules or

23 conditions of employment; 3) whether the alleged employer determined the rate and method of

24 payment; and 4) whether the alleged employer maintained employment records. *Id.* at 1470.

25 Courts have also recognized that these factors are based on operational and economic control of

26 the employment relationship. *See Lambert v. Ackerley*, 180 F.3d 997, 1012 (9th Cir. 1999); *see*

27 *also Irizarry v. Catsimatidis*, 722 F.3d 99 (2nd Cir. 2013), cert. denied, 134 S. Ct. 1516 (2014). "A

28 person exercises operational control over employees if his or her role within the company, and the

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4825-7806-0089.1                                                                        14

1  decisions it entails, directly affect the nature or conditions of the employees' employment."

2  *Irizarry*, 722 F.3d at 110.

3          In the Ninth Circuit and others, the economic power of the individual defendants often

4  presents through their ownership stake in the corporation with operational control of significant

5  aspects of the day-to-day functions. *See Lambert*, 180 F.3d at 1001-02, 1012. In *Boucher*, the

6  individual defendants were the CEO, CFO, and chief labor and employment officer at the

7  Castaways Hotel and Casino. 572 F.3d at 1091. When the Castaway filed for bankruptcy, several

8  former employees sued the executives personally for unpaid wages. *Id.* The Court, in reviewing a

9  motion to dismiss, felt that the executives' major ownership interests (CEO owned 70%, and the

10  labor/employment officer owned 30%) and ability to control the place of employment and the

11  continuation of operations and payroll in times of economic adversity were allegations that would

12  allow individual liability to withstand dismissal. *Id.*

13          In *Irizarry*, the Second Circuit found that Mr. Catsimatidis, the CEO of the Gristedes'

14  supermarket chain, was individually liable where the corporation failed to maintain its payments

15  under a settlement agreement, and the CEO had the individual authority over management,

16  directly affecting the nature and conditions of employment, e.g., meeting with potential store

17  managers for interviews, directing in-store merchandising, "mak[ing] ultimate decisions as to how

18  the company is run" with "no reason to believe that if he chose to make a decision anybody there

19  has the power to override him." *Irizarry*, 722 F.3d at 112.

20          No matter how one looks at the instant suit, the Complaint does not state a claim against

21  Mr. Espinoza. Plaintiffs allege that Mr. Espinoza sat on internal committees, ¶9, was a corporate

22  officer, ¶ 31, and exercised direct control over the hours and wages of Plaintiffs. ¶ 32. *See* ECF #

23  268. Plaintiffs further claim that Mr. Espinoza has the authority to hire and fire employees, the

24  authority to direct and supervise the work of employees, and the authority to make decisions

25  regarding employee compensation and capital expenditures. *See id.* at ¶32. Without any factual

26  support, Plaintiffs allege that Mr. Espinoza "acted and had responsibility to act on behalf and in

27  the interests of University Medical Center of Southern Nevada in devising, directing,

28  implementing and supervising the wage and hour practices and policies relating to store [sic]

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  employees." *See id.* In all of these conclusions preceding, Plaintiffs are intentionally ignoring

2  facts that to not support the alleged role of Mr. Espinoza.

3      Both in economic reality and technical analysis, Mr. Espinoza's role at UMC does not

4  establish an employer-employee relationship with Plaintiffs. *See Irizarry*, 722 F.3d at 104. Mr.

5  Espinoza does not have any ownership interest in the publicly-funded and operated county

6  hospital. He cannot be a corporate officer. *See* NRS 450.090. He does not have direct control

7  over Plaintiffs' hours and wages. *See* Exhibit G, *Deposition of John Espinoza*, at 119:9-16. He

8  cannot hire or fire at will. *See* NRS 450.250. He has testified to the involvement of many layers

9  of decision-making regarding employee compensation and capital expenditures at UMC,

10  contradicting Plaintiffs' averment at ¶ 32 of the Complaint. *See* Exhibit G, *Deposition of John*

11  *Espinoza*, at p.231 (discussing who would be involved in determining compensation for possible

12  missed meal breaks). Mr. Espinoza specifically has no direct authority over the payroll department

13  and does not make any corrections to payroll. *See id.* at pp. 83-84. He is not responsible for

14  scheduling. *See id.* at pp. 29-32 (discussing scheduling procedures handled within individual

15  departments). He does not even promulgate most administrative practices, *see id.* at 102, and the

16  board of county commissioners must ultimately approve the human resources policies and

17  procedures, *see id.* at 103-04. Plaintiffs elicited this information and now ignore it without

18  explanation.

19      At best, the Complaint is overly conclusory in its allegations against John Espinoza. At

20  worst, Plaintiffs are willfully ignoring facts long known to the parties that ultimately do not

21  support individual liability in this matter. Plaintiffs cannot show that Mr. Espinoza could

22  implement operational changes alone like the corporate actors in *Lambert, Boucher,* or *Irizarry.*

23  Mr. Espinoza cannot act unilaterally on any scale under the law of the State of Nevada governing

24  county hospitals such as UMC. Therefore, he should not be jointly and severally liable with the

25  county hospital. Defendant Espinoza should be dismissed.

26      **C. Plaintiffs Should Not Be Allowed to Continually Amend Their Complaint.**

27      In granting Defendants' Motion to Dismiss Plaintiffs' Third Amended Class Action

28  Complaint, the Court provided for amendment to address the pleading deficiencies. But where a

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4825-7806-0089.1                                      16

1 | plaintiff, with substantial information available to her, cannot provide a claim for relief in which a

2 | defendant is secure in knowing what relief is sought, amendment is futile.

3 |     The documents upon which Plaintiffs have relied upon in asserting this Fourth Amended

4 | Class Action Complaint show that there is no set of facts upon which they can sustain a claim for

5 | relief.  Amendment should be denied if futile or subject to dismissal. *See Saul v. United States*,

6 | 928 F.2d 829, 843 (9th Cir. 1991).  A proposed amendment is futile where no set of facts under

7 | the amendment would constitute a valid claim. *See Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209,

8 | 214 (9th Cir. 1988); *see also In re Circuit Breaker Litig.*, 175 F.R.D. 547, 551 (C.D. Cal. 1997).

9 |     1.  <u>Documents to rely upon in such cases are all produced.</u>

10 |     As laid out above, Plaintiffs cannot support their claims that their missed meal periods

11 | went unpaid when reported properly.  After more than four years in litigation and extensive

12 | discovery, both hard copy and electronic in nature, Plaintiffs have not put forth one piece of

13 | evidence to support their claims that they sought payment for missed meal periods and were

14 | denied.  This is after production and review of 500,000-plus pages of payroll and personnel

15 | records for Plaintiffs and opt-in plaintiffs and over 100 GB of data from 27 custodians' emails,

16 | electronic storage, and other e-document repositories.

17 |     The timekeeping and payroll records, as relied upon by Plaintiffs to identify workweeks in

18 | which they worked 40 hours, show that the parties understood how to seek and receive a meal

19 | period deduction cancellation. *See* Exhibits A, C, D, & E.  These documents are the backbone of

20 | any FLSA wage-and-hour claim. *See Gamble v. Boyd Gaming Corp.*, 2014 U.S. Dist. LEXIS

21 | 78069 (D. Nev. June 6, 2014); *Kora v. Renown Health*, 2011 U.S. Dist. LEXIS 45456 (D. Nev.

22 | Apr. 25, 2011).  Moreover, there is no doubt that UMC paid overtime as a matter of course.

23 | *Compare* ECF # 222, at p.17 (23 of 39) (outlining overtime payments made during relevant time

24 | period) *and* Exhibits A-F (showing overtime in hours for Plaintiffs during relevant time period);

25 | *see also Desilva*, 2014 U.S. Dist. LEXIS 77669 (E.D.N.Y. June 5, 2014).  With this evidence

26 | readily available to Plaintiffs, and the lack of evidence put forth to support their conclusions and

27 | assertions in this Complaint, there is no claim upon which they can seek relief.

28 | / / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

2.   <u>Plaintiffs' cannot seek relief for purportedly lost documents.</u>

Defendants anticipate that the lack of evidentiary support for Plaintiffs' claims will not prevent them from continually seeking to sling mud in this litigation. Lack of support in law or fact has not prevented Plaintiffs from asserting many things. *See argument above concerning individual defendant John Espinoza; see also Court's Order ECF # 267, p. 5 ("I cannot . . . dismiss plaintiffs' alter-ego or recordkeeping claims because none exist.")*[8]. However, Defendants anticipate that Plaintiffs will rely on a heavily litigated, but irrelevant discovery dispute: that Defendants have failed to keep and retain complaints (hard copy or electronic) that indicate employees were working through meal breaks without compensation. *See* ECF # 268, at ¶ 50. Again, this is an unsupported conclusion.

The parties have already addressed these concerns. *See* ECF # 207 (Defendant's Objection), # 216 (Plaintiffs' Response to Objection), # 222 (Defendant's Reply), *and* # 266 (Plaintiffs' Notice of Supplemental Authority). Defendants have argued and presented significant documentation to establish that Plaintiffs were not prejudiced by any purported loss of electronically stored information. *See, e.g.*, ECF # 207. The Court has not settled the parties' dispute over the report and recommendations of the court-appointed special master, but, like this Complaint, Defendants maintain that the special master's report and recommendation lacks support. It bears repeating at this point that Plaintiffs cannot show any relevance for the documents identified in the special master proceedings as not preserved in this matter. Plaintiffs do not point to any document or even category of document that they believe existed to support their claims of missed meal breaks denied for payment. This is because the documents identified in the special master proceedings were attempts at fishing for sanctions as opposed to discovery of relevant material. UMC diligently funded these fishing expeditions, paying nearly $500,000 to Special Master Garrie, not including the hundreds of thousands spent on complying with the

---

[8] It should be noted that Plaintiffs still asserted these recordkeeping violations in their Fourth Amended Class Action Complaint, even though they know no independent private right of action exists for the purported violation. *See* ECF # 268, at ¶ 48.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4825-7806-0089.1                                    18

1  special master's ever-expanding and unchecked inquiries.  While preservation was an issue, all

2  information underlying this suit has been produced to Plaintiffs.

3      And still, Plaintiffs cannot show prejudice from the purported failure to preserve because

4  they cannot show any loss of relevant information. [9]  The allegations that Defendants willfully and

5  intentionally destroyed relevant records, such as actual complaints about meal breaks, are

6  knowingly false.  Indeed, the special master report and recommendation lacks the authority upon

7  which Plaintiffs desperately cling.  *See* Fed. R. Civ. P. 52(f)(4); *see also Clark v. Atlanta*

8  *Newspapers, Inc.*, 366 F. Supp. 886, 890 (N.D. Ga. 1973) (a master's findings carry no weight

9  with the court as the court must review de novo upon objection).  As argued in UMC's Objection,

10  ECF # 207, Plaintiffs cannot show any prejudice to move forward with their case from the

11  purported loss of data alleged.  The backbone of their case, the Kronos timekeeping records, are

12  completely within their possession.  *See* ECF # 143 (minutes recognizing production of Kronos

13  timekeeping records); *see also Gamble, supra* (Kronos records basis of claim); *Kora, supra*

14  (same).  Plaintiffs failed to address the legal deficiencies of their FLSA claim with this

15  information available to them; there is no utility in allowing further amendment of these spurious

16  claims.  Defendants' motion should be granted with prejudice.

17  **IV. CONCLUSION**

18      Based on the above, Defendants respectfully seek an order dismissing Plaintiffs' Fourth

19  Amended Complaint, with prejudice.  The single remaining FLSA claim is contradictory and

20  unsupportable.  Plaintiffs also lack any factual basis for their allegations naming John Espinoza as

21  / / /

22  / / /

23  / / /

24  / / /

25

26

27  [9] UMC, the single named defendant that was involved in the special master proceedings, does not
dispute that there were documents lost.  However, the relevance of those documents and prejudice
to Plaintiffs from any loss are heavily disputed.

28


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

an individual defendant.  As such, the Court should grant this Motion, dismissing the cause of action against both defendants.

      DATED this 10th day of October, 2016.

LEWIS BRISBOIS BISGAARD & SMITH LLP

By _____
ROBERT W. FREEMAN
Nevada Bar No. 3062
DANIELLE C. MILLER
Nevada Bar No. 9127
CAYLA WITTY
Nevada Bar No. 12897
6385 S. Rainbow Boulevard, Suite 600
Las Vegas, Nevada 89118
Attorneys for Defendants
University Medical Center of Southern  Nevada
and John Espinoza

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 10th day of October, 2016, I electronically filed the foregoing **DEFENDANTS UNIVERSITY MEDICAL CENTER OF SOUTHERN NEVADA AND JOHN ESPINOZA'S MOTION TO DISMISS PLAINTIFFS' FOURTH AMENDED CLASS ACTION COMPLAINT PURSUANT TO RULE 12(b)(6)** with the Clerk of the Court through Case Management/Electronic Filing System, to be served to:

| | |
|---|---|
| DAVID C. O'MARA, ESQ. <br> THE O'MARA LAW FIRM. P.C. <br> 311 East Liberty Street <br> Reno, Nevada 89501 <br> Phone: 775-323-1321 <br> Fax: 775-323-4082 <br> Email: david@omaralaw.net <br> *Counsel for Plaintiffs* | MARC L. GODINO. ESQ. (pro hac) <br> KEVIN F. RUF, ESQ. (pro hac) <br> KARA M. WOLKE. ESQ. (pro hac) <br> GLANCY PRONGAY & MURRAY LLP <br> 1925 Century Park East, Suite 2100 <br> Los Angeles, California 90067 <br> Phone: 310-201-9105 <br> Fax: 310-201-9160 <br> Email: mgodino@glancylaw.com <br> Email: kevinuff@glancylaw.com <br> Email: kwolke@glancylaw.com <br> *Counsel for Plaintiffs* |
| JON A. TOSTRUD, ESQ. (pro hac) <br> ANTHONY CARTER, ESQ. (pro hac) <br> TOSTURD LAW GROUP <br> 1925 Century Parkway East, Suite 2125 <br> Los Angeles, California 90067 <br> Phone: 310-278-2600 <br> Fax: 310-278-2640 <br> Email: jtostrud@tostrudlaw.com <br> Email: acarter@tostrudlaw.com <br> *Counsel for Plaintiffs* | ANDREW L. REMPFER, ESQ. <br> LAW OFFICES OF STEVEN J. PARSONS <br> 7201 W. Lake Mead Blvd., Suite 108 <br> Las Vegas, Nevada 89128 <br> Phone: 702-384-9900 <br> Fax: 702-384-5900 <br> Email: andrew@sjplawyer.com <br> *Counsel for Plaintiffs* |

By _____

An employee of
LEWIS BRISBOIS BISGAARD & SMITH LLP



<u>LIST OF EXHIBITS</u>

| | |
|---|---|
| Exhibit "A" | Time Detail Report for Daniel Small |
| Exhibit "B" | Time Detail Report for Carolyn Small |
| Exhibit "C" | Time Detail Report for William Curtin |
| Exhibit "D" | Time Detail Report for David Cohen |
| Exhibit "E" | Time Detail Report for Lanette Lawrence |
| Exhibit "F" | Time Detail Report for Louise Collard |
| Exhibit "G" | April 8, 2016 Deposition of Jason Espinoza, UMC Rule 30(b)(6) Witness |
| Exhibit "H" | Department of Labor Documents |
| Exhibit "I" | Urban Group Report |