UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

DANIEL SMALL, *et al.*,

    Plaintiffs,

v.

UNIVERSITY MEDICAL CENTER OF SOUTHERN NEVADA, *et al.*,

    Defendants.

Case No. 2:13-cv-00298-APG-PAL

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**

(ECF No. 273)

    The plaintiffs were hourly employees of University Medical Center of Southern Nevada ("UMC"). Plaintiffs allege that UMC implemented policies to prevent them from receiving overtime pay for hours worked in excess of forty hours a week. Specifically, they contend UMC had a policy of automatically deducting a thirty-minute meal break even though UMC employees regularly did not get their full meal breaks because they were interrupted due to work demands. Plaintiffs bring a collective action against UMC and John Espinoza, UMC's Chief Human Resources Officer, asserting the defendants violated the Fair Labor Standards Act ("FLSA").

    The defendants move to dismiss, arguing the plaintiffs have not adequately alleged the defendants knew of meal break violations but still failed to pay. The defendants also argue the complaint fails to allege Espinoza is an employer. The plaintiffs respond that they have adequately alleged facts about UMC's policies, that they missed meal breaks for which they were not paid as a result, and that UMC knew about staff regularly missing meal breaks that went uncompensated. The plaintiffs also argue they have alleged that Espinoza had sufficient control over employees to qualify as an employer.

**I.    BACKGROUND**

    Named plaintiffs Daniel Small, Carolyn Small, William Curtin, David Cohen, Lanette Lawrence, and Louise Collard worked at UMC as respiratory therapists, registered nurses,

admitting representatives, and electrocardiogram ("EKG") technicians. ECF No. 268 at 3-6. The opt-in plaintiffs are current and former UMC non-exempt hourly employees. *Id.* at 6.

The plaintiffs bring a collective action under section 16(b) of the FLSA, 29 U.S.C. § 216(b), for UMC and Espinoza's alleged failure to pay overtime. According to the fourth amended complaint, the defendants regularly interrupted employees' meal breaks or caused employees to miss meal breaks, yet the defendants' timekeeping software automatically deducted thirty minutes for meal breaks from employees' time. *Id.* at 8, 11. This resulted in employees not being compensated for missed or interrupted meal breaks. *Id.* Each named plaintiff states that he or she often had meal breaks interrupted that were not compensated. *Id.* at 8-10. Additionally, each named plaintiff identifies at least one week in which he or she worked in excess of forty hours, including time worked through at least one meal break, for which he or she was not compensated. *Id.*

The plaintiffs further allege that the defendants failed to track the employees' meal breaks to determine whether the employees took the breaks, were interrupted, or missed them. *Id.* at 10-11. Employees did not clock in or out for lunch. *Id.* at 11. Instead, they would clock in and out at the beginning and end of their work day. *Id.* The plaintiffs allege the practice and culture at UMC was to discourage employees from changing their time cards to reflect a missed or interrupted break. *Id.*

The complaint alleges the defendants knew of the above violations because UMC previously contracted with the Urban Group to recommend ways UMC could improve morale. *Id.* at 12. One of the Urban Group's findings was that management was aware that one of the biggest complaints was the lack of a float nurse who could cover while other nurses had their meal breaks. *Id.* at 12. Additionally, the Urban Group advised that staff worked long hours, often without sufficient time to take breaks. *Id.* at 12-13.

The plaintiffs allege the Department of Labor investigated UMC and found employees were not taking their lunch breaks and were automatically deducted thirty minutes for lunch regardless. *Id.* at 13. The DOL also allegedly found UMC failed to keep proper records of hours

| | |
|---|---|
| 1 | worked. *Id.* Finally, the plaintiffs allege UMC's own labor relations committee discussed at least |
| 2 | eight times in the two years prior to the complaint being filed instances where hourly employees |
| 3 | missed meal breaks, yet the defendants continued to automatically deduct thirty minutes for each |
| 4 | shift for meal breaks. *Id.* at 13-14. |
| 5 | The plaintiffs allege Espinoza qualifies as an employer because he exercises direct control |
| 6 | over UMC employees' hours and wages, is involved in UMC's day-to-day operations, has the |
| 7 | authority to hire and fire employees, has the authority to direct and supervise employees' work, |
| 8 | and has the authority to make decisions regarding employee compensation and capital |
| 9 | expenditures. *Id.* at 7. The plaintiffs also allege Espinoza devised, implemented, and supervised |
| 10 | UMC's wage and hour practices and policies. *Id.* |

**II. ANALYSIS**

In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). However, I do not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in the plaintiff's complaint. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555.

Generally, I may not consider material beyond the complaint in ruling on a motion to dismiss for failure to state a claim. *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007); *see also Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) ("When reviewing a motion to dismiss, [courts] consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." (quotation omitted)); Fed. R. Civ. P. 12(d). I decline to consider exhibits A-G attached to the defendants' motion because they are unauthenticated, are not subject to judicial notice, and are not attached to or

incorporated in the complaint.[1]  I will consider the DOL documents and the Urban Group report because the complaint refers to those documents, the plaintiffs' allegations of knowledge depend in part on those documents, and no party disputes their authenticity.  *See* ECF Nos. 273-8; 273-9; *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.").

**A. FLSA Claim**

An FLSA plaintiff need not allege in the complaint "detailed factual allegations regarding the number of overtime hours worked." *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 644 (9th Cir. 2014), as amended (Jan. 26, 2015).  The "plausibility of a claim is context-specific." *Id.* at 645 (quotation omitted).  Consequently, a plaintiff may establish a plausible FLSA claim in numerous ways, such as "by estimating the length of her average workweek during the applicable period and the average rate at which she was paid, the amount of overtime wages she believes she is owed, or any other facts that will permit the court to find plausibility." *Id.*  Additionally, a plaintiff "at a minimum . . . must allege that she worked more than forty hours in a given workweek without being compensated for the overtime hours worked during that workweek." *Id.* at 644-45.

The plaintiffs have met that standard here.  Each named plaintiff alleges he or she was a non-exempt employee who regularly worked in excess of forty hours per week. ECF No. 268 at 4-6, 8.  Each named plaintiff also identifies at least one work week during which he or she worked more than forty hours without being compensated for that overtime. *Id.* at 8-10.  The plaintiffs also provided estimates for how often they missed meal breaks or were interrupted during their meal breaks. *Id.*  Combined with their other allegations regarding the defendants' automatic deduction policy and custom of regularly interrupting breaks but not paying for skipped or interrupted breaks, the plaintiffs' allegations have crossed the line from possible to plausible.

---

[1] The copy of Espinoza's deposition is unreadable. ECF No. 273-7.  Moreover, although the plaintiffs' fourth amended complaint refers to Espinoza's deposition, it did not thereby incorporate the entire deposition and the deposition is not central to the plaintiffs' claims.

The defendants contend the plaintiffs' allegations are contradictory because plaintiff Small alleges he missed 95 to 100% of his meal breaks but then states that he missed one meal break on the specific workweek alleged in the fourth amended complaint. There is nothing contradictory in Small's (or the other plaintiffs') allegations. Small alleged that he missed "at least" one meal break during the identified week. The defendants also argue the plaintiffs have not explained why they were paid overtime for some missed meal periods. However, the defendants rely on inadmissible exhibits that are not part of the complaint to make this argument. Moreover, it is not contradictory to assert that the plaintiffs missed many meal breaks for which they were not paid even if they were paid for some missed meal breaks.

Next, the defendants argue they cannot be liable unless the plaintiffs told the defendants about their missed meal breaks and defendants thereafter refused to pay. The defendants contend there is no allegation in the fourth amended complaint that the plaintiffs complained about missed but uncompensated meal breaks.

An employer "who knows or should have known that an employee is or was working overtime must comply with the provisions of [29 U.S.C.] § 207." *Forrester v. Roth's I. G. A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981). "An employer who is armed with this knowledge cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation." *Id.* Often that may require employees to notify the employer they are working overtime. But "[t]his is not to say that an employer may escape responsibility by negligently maintaining records required by the FLSA, or by deliberately turning its back on a situation." *Id.* Actual or constructive notice that the employee was working overtime will suffice. *Id.*; *see also* 29 C.F.R. § 785.11 (stating an employee is "suffered or permitted" to work if the employer "knows or has reason to believe" the employee is working).

The fourth amended complaint adequately alleges the defendants knew or should have known that its employees were regularly working overtime without compensation. The plaintiffs allege that UMC's internal committees, which were comprised of UMC executives, including

Espinoza, knew as far back as January 2011 that employees were missing meal breaks. ECF No. 268 at 3, 13-14. The fourth amended complaint also alleges the DOL investigation resulted in findings that the defendants committed overtime violations in the form of uncompensated missed meal breaks. *Id.* at 3-4. Additionally, the Urban Group report, dating from 2011, stated that managers at UMC "were aware that one of the biggest complaints of staff was not having a float nurse and said that was being implemented so nurses could get meal breaks," and the staff works long hours "often without sufficient time to take any breaks." ECF Nos. 268 at 12-13; 273-9 at 24, 29. The defendants had nevertheless implemented a policy of automatically deducting thirty-minute meal breaks from every shift worked and maintained UMC's employees' hours in a manner that did not permit recording of when they clocked in and out for meal breaks. ECF No. 268 at 10-11. The plaintiffs also allege the practice at the hospital was to discourage the plaintiffs from changing their own time cards to reflect missed or interrupted breaks. ECF No. 268 at 11. And they allege the defendants failed to keep and retain documents, including complaints employees made about working through meal breaks. *Id.*

Viewing these allegations and reasonable inferences in the plaintiffs' favor, they have plausibly alleged the defendants knew or should have known that employees were regularly missing meal breaks or having meal breaks interrupted but were nevertheless having thirty minutes automatically deducted from their time, without compensation. I therefore deny the defendants' motion to dismiss the FLSA claim.

**B. Espinoza**

The FLSA provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207. "Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C.

§ 216(b).

The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). This definition "is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes." *Boucher v. Shaw*, 572 F.3d 1087, 1090 (9th Cir. 2009) (quotation omitted). "Where an individual exercises control over the nature and structure of the employment relationship, or economic control over the relationship, that individual is an employer within the meaning of the Act, and is subject to liability." *Id.* at 1091.

Whether a person or entity is an employer does not depend on "isolated factors but rather upon the circumstances of the whole activity." *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947). The key inquiry is the "economic reality" of the relationship. *Boucher*, 572 F.3d at 1091 (quotation omitted).

Factors which inform the economic reality of the relationship include: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983) (quotation omitted), *disapproved of on other grounds by Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528 (1985). Where an individual is involved, courts also may inquire into whether the person is a high-ranking officer or has an ownership interest, the degree of control the person exercises over the entity's financial affairs and compensation practices, and the person's role in causing the entity to comply (or not) with the FLSA. *Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 48 (1st Cir. 2013); *Chao v. Hotel Oasis, Inc.*, 493 F.3d 26, 34 (1st Cir. 2007). The fact that an individual is not an executive or owner does not exclude him from being an employer, but it is a factor to consider. *Manning*, 725 F.3d at 48. The various factors "are not etched in stone and will not be blindly applied." *Bonnette*, 704 F.2d at 1470. Rather, the ultimate determination of whether a person or entity is an employer depends on "the circumstances of the whole activity." *Id.* (quotation omitted).

The fourth amended complaint alleges Espinoza was UMC's Chief Human Resources Officer. ECF No. 268 at 6. The plaintiffs also allege:

> Defendant Espinoza exercises direct control over the hours and wages of Plaintiffs, and all similarly situated hourly employees employed at University Medical Center of Southern Nevada. Defendant Espinoza is involved in the day-to-day business operation of University Medical Center of Southern Nevada, and has the authority to hire and fire employees, the authority to direct and supervise the work of employees, and the authority to make decisions regarding employee compensation and capital expenditures. At all relevant times, this individual acted and had responsibility to act on behalf and in the interests of University Medical Center of Southern Nevada in devising, directing, implementing and supervising the wage and hour practices and policies relating to [UMC] employees.

*Id.* at 7.

The defendants argue these allegations are insufficient because Espinoza has no ownership interest in UMC, he is not a corporate officer, and he cannot hire or fire at will under Nevada law (based on UMC's status as a county hospital that is subject to Nevada law regarding structure and control of important decisions at county hospitals). The defendants also argue Espinoza's testimony at his deposition shows that he does not have direct control over hours and wages, that employee compensation and capital expenditures are subject to many layers of decision-making, that he has no direct authority over the payroll department, and that he does not promulgate most administrative practices. However, I do not consider Espinoza's deposition at this stage of the proceedings.

In response, the plaintiffs likewise cite to portions of Espinoza's deposition to assert facts about Espinoza's role. ECF No. 274 at 21-22. Those facts are not in the fourth amended complaint, so I do not consider them.

The plaintiffs also point to the DOL report, which is incorporated in the complaint. The DOL report determined, pursuant to an investigation, that Espinoza is an employer because he "is involved in the daily operations of the business . . . has hired and fired employees, incorporated policy and procedures for the company, administers pay and payroll and otherwise acted in the direct interest of the entity in relation to the employees." ECF No. 273-8 at 6. The report also describes a conference between Espinoza, the DOL investigator, and others. *Id.* at 8-9. According

to the report, Espinoza stated "he understood that he needed to pay overtime to his employees" and that "he would look into incorporating changes" in the system to require employees to clock out and clock back in for lunch. *Id.* Espinoza also stated he "would comply with the laws from now on by keeping records of employees taking their lunch breaks . . . ." *Id.* at 9.

Taking these allegations as true, along with the other allegations in the fourth amended complaint, the plaintiffs have adequately alleged Espinoza is an employer at this stage of the proceedings. Espinoza was Chief Human Resources Officer. He allegedly had the power to hire and fire employees and, according to the DOL's investigation, exercised that power. He was involved in UMC's daily operations, incorporated policies and procedures, and had authority over payroll and employment records. Espinoza allegedly agreed that he understood his employees had to be paid overtime and agreed to implement a new clock out/clock in policy for employees' lunch breaks. He also agreed to keep records of lunch breaks.

Viewing the allegations and inferences in the light most favorable to the plaintiffs, and considering that the definition of an employer is to be given an expansive interpretation, the plaintiffs have plausibly alleged that under the totality of the circumstances, Espinoza is their employer. Espinoza allegedly exercised control over UMC's compensation, timekeeping, payroll, and recordkeeping practices related to UMC's compliance (or lack thereof) with the FLSA. I therefore deny the defendants' motion to dismiss.

### III. CONCLUSION

IT IS THEREFORE ORDERED that defendants' motion to dismiss **(ECF No. 273) is DENIED**.

DATED this 10th day of August, 2017.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE