**GLANCY PRONGAY & MURRAY LLP**
MARC L. GODINO (admitted *pro hac vice*)
KEVIN F. RUF (admitted *pro hac vice*)
KARA M. WOLKE (admitted *pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, CA  90067
Telephone:    (310) 201-9150
Facsimile:    (310) 201-9160
Email:         info@glancylaw.com

**TOSTRUD LAW GROUP, P.C.**
JON A. TOSTRUD (admitted *pro hac vice*)
ANTHONY M. CARTER (admitted *pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, CA. 90067
Telephone:    (310) 278-2600
Facsimile:    (310) 278-2640
Email:         jtostrud@tostrudlaw.com

*Attorneys for Plaintiffs*
*[Additional counsel on signature page]*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| DANIEL SMALL, CAROLYN SMALL, WILLIAM CURTIN, DAVID COHEN, LANETTE LAWRENCE, AND LOUISE COLLARD, Individually, and on Behalf of All Other Persons Similarly Situated, | CASE NO. 13-cv-00298 APG-PAL |
| Plaintiffs, | **PLAINTIFFS' REVISED APPLICATION FOR COSTS AND ATTORNEYS' FEES** |
| v. | |
| UNIVERSITY MEDICAL CENTER OF SOUTHERN NEVADA, a political subdivision of Clark County, State of Nevada, CLARK COUNTY, a political subdivision of the State of Nevada, and JOHN ESPINOZA, an individual, | |
| Defendant. | |

I.      **INTRODUCTION**

Plaintiffs Daniel Small, Carolyn Small, William Curtin, David Cohen, Lanette Lawrence, and Louise Collard ("Plaintiffs"), respectfully submit this Revised Application for Costs and Attorneys' Fees ("Application") in accordance with this Court's July 31, 2018 Order ("Order"). Plaintiffs' Application is supported by the declarations of counsel, establishing the amount of attorney's fees and costs incurred as a result of defendant University Medical Center of Southern Nevada's ("Defendant" or "UMC") evidence destruction and "failing to identify, preserve, collect, process, and search multiple repositories of information relevant to the parties' claims and defenses." Order at p. 64.   In its *de novo* review of the Special Master proceedings, this Court found that "UMC made additional misrepresentations to the court and opposing counsel about its ESI capabilities that the special master did not catch."  Order at 98.

In summary, and in support of this Application, this court concluded:

UMC has repeatedly violated its discovery obligations and its duty to preserve. Its multiple failures to implement timely preservation procedures, and to identify and collect information from relevant responsive repositories, resulted in the destruction of ESI responsive to plaintiffs' discovery requests. It also resulted in considerable delay of discovery, consumed an extraordinary amount of judicial resources, and cost the parties enormous, unnecessary time and expense. Sanctions are warranted.

Order at 5.

This Court defined the parameters of the monetary sanctions as:

reasonable costs and attorneys' fees unnecessarily incurred by plaintiffs, including costs incurred for plaintiffs' ESI consultants in connection with (1) filing the May 2013 motion to compel; (2) efforts to obtain compliance with the order compelling UMC to produce information responsive to the discovery requests in dispute; (3) attempts to identify and remedy UMC's deficient ESI productions; and (4) cost of participating in special master proceedings.

Order at 122.

In light of this Court's above-quoted guidance, Plaintiffs' Counsel seek reimbursement of $1,725,643 in attorney fees and $324,548.33 in expenses reasonably incurred in dealing with Plaintiffs' motion to compel discovery and the Special Master proceedings in this case.

## II.   FACTS

As noted above, On July 31, 2018, this Court issued its Order concerning the Report and Recommendation and Final Findings of Fact and Conclusions of Law of Special Master Daniel B. Garrie.  The following, along with the details described in the attached counsel declarations and exhibits, constitute Plaintiffs' Application Requesting Costs And Attorneys' Fees.

The costs and attorneys' fees incurred by Plaintiffs, their experts, and consultants in the Special Master proceedings and in attempting to obtain compliance by UMC with its ESI obligations includes: (1) briefing one motion to compel with accompanying oral argument; (2) seven discovery status conferences before the Court between May, 2013 and March 2014; (3) the research and appointment of Special Master Daniel B. Garrie; (4) five all day, in-person hearings before the Special Master; (5) fourteen telephonic hearings before the Special Master; (6) review and analysis throughout the Special Master proceedings of huge volumes of data and data summaries, numerous declarations, supplemental declarations and hearing testimony, and countless written submissions by counsel and ESI experts; and (7) dozens of meet and confer discussions and conferences with, at varying times,  co-counsel, defense counsel, ESI experts and the Special Master.  It is indisputable that the fees and costs requested in this Application were all incurred pursuant to orders by this Court and the Special Master.

The upshot of all the extra work is the findings of the Special Master, and confirmed by this Court, that "UMC destroyed evidence," that "UMC's executives and personnel made

numerous misrepresentations to UMC's counsel, the Court, and Special Master" that needlessly delayed this action and drove up the cost and expenses.  Docket Entry 189.

Not surprisingly, the Special Master expressed his "serious doubts" that UMC would or even could "complete discovery in a defensible manner" at all.  [*Id.*]  Likewise, as previously noted by this Court, UMC's behavior and strategy, or lack thereof, concerning the production of ESI in this action has been "absolutely ridiculous" and a "fiasco."  *See* Docket Entry #144, page 20 (Transcript of Proceedings for Status Conference held on January 21, 2014).

This action was initiated on July 27, 2012, and involves a Complaint for violations of federal wage laws by UMC for automatically deducting thirty (30) minutes each day from its hourly employees' pay for meal break times.  Docket Entry ##1, 37.  These automatic deductions were made by Defendant during the relevant time period irrespective of whether or not UMC's hourly employees were able to take the breaks at issue.  Consequently, as Defendant John Espinoza revealed in a letter to the Department of Labor, "documentation to support an uninterrupted lunch period does not exist in most cases."  Order at 102.  Moreover, at the time Plaintiffs' initial Complaint was filed, Defendants had no written or uniform procedure in place to track whether or not employees actually were taking a thirty minute uninterrupted meal break.  Dkt. No. 273-7 at p. 59.

From the outset, Plaintiffs and their counsel diligently prosecuted this action.  Also from the outset, Plaintiffs and their counsel recognized the voluminous and sensitive nature of the electronic information regarding emails, text messages, memos, files, payroll data, timesheets, and other potentially relevant documents in Defendant's possession.  After initiating this lawsuit, Plaintiffs issued an ESI preservation letter to UMC on August 6, 2012.  Then, weeks after Defendant's Motion to Dismiss was denied on November 14, 2012 (Docket Entry #33), and once

1
2
3
4

the First Amended Complaint was filed on December 13, 2012 (Docket Entry #37), Plaintiffs

served an amended ESI preservation letter on UMC.  Notwithstanding these preservation letters,

and as exhaustively detailed in the Order, Defendant failed to keep and retain much of the

relevant data.[1]

5
6
7
8
9
10
11
12
13

After the conclusion of the Special Master proceedings, in an October 2014 hearing,

defense counsel Robert Freeman openly admitted his client's mistakes and ongoing discovery

failures had resulted in an estimated "2 million dollar endeavor" for the hospital so far.  This

dollar figure, which this Court advised UMC it could and should have taken pains to avoid, puts

in context Plaintiffs requested fee and expense application of $2,050,191.33.  Just as UMC was

pouring in substantial time and expenses in this matter, so was Plaintiffs' counsel. Indeed,

Plaintiffs' counsels requested fees and expenses is close to the $2 million dollar tab quoted by

defense counsel.

14
15
16
17
18

And, as the Court is aware, some of these same issues persist.  For example, a UMC

Human Resources Analyst testified at a recent deposition that she had not even been asked to

produce hundreds of pages of additional highly-relevant, handwritten notes taken in UMC

committee meetings that directly addressed the Fair Labor Standards Act.[2]

19

**III.     PLAINTIFFS' COUNSELS' TIME IS REASONABLE**

20
21
22
23

In seeking reimbursement for their reasonable time and expenses, including costs

incurred by Plaintiffs' ESI consultants, Plaintiffs' Counsel itemize their time and expense as

follows::  (1) time and expense related to Plaintiffs' May 2013 motion to compel; (2) time and

24

25
26
27

---

[1] Since the Order provides an exhaustively detailed analysis of the litigation history leading up to the appointment of the Special Master proceedings as well as the Special Master proceedings itself, Plaintiffs will not repeat that history here.
[2] See Ex. 5 to the Godino Declaration (7/3/18 Deposition Transcript of Leah Conedy), at pp.20 l.14-p.21 l. 14.

28

expense related to efforts to obtain compliance with the order compelling UMC to produce information responsive to the discovery requests in dispute (including the lengthy discovery and dispute resolution hearings conducted between August 15, 2013, and February 11, 2014; (3) time and expense relating to attempts to identify and remedy UMC's deficient ESI productions; and (4) time and expense of participating in special master proceedings.

In order for this Court to determine the reasonableness of the work performed by Plaintiffs' counsel regarding the above-described four categories, Plaintiffs' Counsel have attached to their declarations, detailed time records that provide a reasonable description of the work performed relating to the four categories. *See* Exhibit 2 to the Godino Declaration, Exhibit B to the Tostrud Declaration, and Exhibit 1 to the O'Mara Declaration.

Plaintiffs' counsel are working this case on a contingency fee basis. Plaintiffs' Counsels' hourly rates, which range from $350 for associates to $750 for senior attorneys are reasonable. Counsel are entitled to their requested hourly rates if those rates are within the range of rates charged by and awarded to attorneys of comparable experience, reputation, and ability for similar work, *i.e.*, complex class action litigation. *Children's Hospital and Med. Center v. Bonta*, 97 Cal. 4th 740, 783 (2002) (affirming that rates were "within the range of reasonable rates charged by, judicially awarded to, comparable attorneys for comparable work"). "Courts may find hourly rates reasonable based on evidence of other courts approving similar rates or other attorneys engaged in similar litigation charging similar rates." *Parkinson v. Hyundai Motor Am.,* 796 F.Supp.2d 1160, 1172 (C.D. Cal. 2010).

Here, Plaintiffs' Counsels' rates have been approved by multiple other courts (*see e.g.* Godino Declaration, ¶12, Tostrud Declaration, ¶12, O'Mara Declaration, ¶12), and are consistent with other attorneys engaged in similar complex litigation. *See In re High-Tech*

*Employee Antitrust Litigation*, 2015 WL 5158730, at \*9 (N.D. Cal. 2015) (finding reasonable "billing rates for partners [that] range from about $490 to $975 … billing rates for non-partner attorneys, including senior counsel, counsel, senior associates, associates, and staff attorneys, [that] range from about $310 to $800, with most under $500 … [and] billing rates for paralegals, law clerks, and litigation support staff [that] range from about $190 to $430, with most in the $300 range."); *Kearney v. Hyundai Motor America,* 2013 WL 3287996, at \*8 (C.D. Cal. June 28, 2013) (approving hourly rates between $650 and $800 for class counsel in a consumer class action); *In re Cathode Ray Tube (CRT) Antitrust Litigation*, 2016 WL 4126533, at \*7 (N.D. Cal. 2016) ("billing rates between $350 and $875 are reasonable within this legal market for cases of this size, type, and complexity").

Further, Courts routinely award fees based on evidence that defendant's detrimental conduct during discovery was willful, deliberate, and/or recklessly negligent. *See Haeger v. Goodyear Tire & Rubber Co.*, 813 F.3d 1233, 1237 (9th Cir. 2016) (*Haeger),* cert. gtd., in part, *Goodyear Tire v. Haeger,* 137 S. Ct. 30, 195 L. Ed. 2d 902 (2016) (Ninth Circuit court upholds a $3 million dollar sanctions award for discovery fraud committed in bad faith); *Shawe v. Elting, Case No. 487, 2016 (Supreme Court of Delaware, Feb. 13, 2017)*( the Delaware Supreme Court found the Court of Chancery followed the correct legal standards and made no errors of law in its sanctions award of over $7 million against the appellant for discovery misconduct);   *Rosenthal Collins Group, LLC v. Trading Technologies International, Inc.*, No. 05-C-4088, 2011 WL 722467 (N.D. Ill. Fed. 23, 2011) (Court grants defendant's default judgment motion and $1 million in monetary sanctions for plaintiff's discovery misconduct, including attorneys' fees and costs); *Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.*, Nos. 16-3637-cv, 16-3726-cv (2d Cir. Jan. 25, 2018) (Second Circuit court upholds the lower court's

imposition of a $2.7 million dollar sanction for discovery abuses); *GN Netcom, Inc. v. Plantronics, Inc.*, 2016 WL 3792833 (July 12, 2016) (Court sanctions the defendant for discovery abuses, including an adverse inference jury instruction, monetary sanctions in the form of reasonable fees and costs to the plaintiff, a "punitive" sanction of $3 million, and possible evidentiary sanctions to be determined before trial).

Accordingly, Plaintiffs' Counsel's fee request is reasonable.

## IV.   PLAINTIFFS' COUNSELS' EXPENSES ARE REASONABLE

Plaintiffs' Counsel have incurred expenses related to Plaintiffs' Motion to Compel Discovery and the Special Master Proceedings in the total amount of $324,548.33. These expenses represent less than 6% of the combined lodestar of Class Counsel.  All the expenses were reasonably incurred, and in the case of travel and ESI expert costs, those were incurred as a direct result of directives issued by the Special Master.  All expenses are described in the accompanying Plaintiffs' Counsels' declarations filed contemporaneously herewith.  *See* Godino Declaration ¶¶ 13-16, Tostrud Declaration ¶¶ 13-16, O'Mara Declaration ¶¶ 13-16.

## V.   OTHER RELEVANT FACTORS FOR THE COURT TO CONSIDER

### A.   The results obtained and the amount involved

As a result of Plaintiffs' Counsels' tireless efforts and enormous costs expended to obtain the discovery necessary to litigate this case, Plaintiffs have achieved significant results.  First and foremost, Plaintiffs are finally in possession of sufficient discovery to proceed with summary judgment, and if necessary, trial.

Second, Counsel vigorously pursued the facts and evidence in this matter and, as a result, significant expense and the commitment of an extraordinary amount of time, obtained an adverse instruction that the jury will weigh in determining the merits of this case.  Specifically:

1

2

3

4

5

UMC is sanctioned in the form of an instruction to the jury that the court has found UMC failed to comply with its legal duty to preserve discoverable information, failed to comply with its discovery obligations, and failed to comply with a number of the court's orders. The instruction will provide that these failures resulted in the loss or destruction of some ESI relevant to the parties' claims and defenses and responsive to plaintiffs' discovery requests, and that the jury may consider these findings with all other evidence in the case for whatever value it deems appropriate.

6

Order at 122.

7

8

9

10

11

12

13

Lastly, Plaintiffs' Counsel can apply for reimbursement for their time and expenses "unnecessarily incurred by plaintiffs, including ESI consultant fees, incurred in connection with filing Plaintiffs' May 2013 motion to compel, attempts to identify and remedy UMC's deficient ESI productions, and the cost of participating in the Special Master proceedings." Order at 5.  As detailed in Plaintiffs' Counsels' Declarations, such costs and fees are slightly more than $2 Million.

14

**B.      The novelty and difficulty of the questions involved**

15

16

17

18

19

20

21

22

23

24

25

26

27

The novel and difficult questions presented which give rise to this Application are legion and include facts such as: 1) Defendants had no preservation policy or litigation hold policy; 2) Defendants failed to timely comply with two preservation letters that they received; 3) Defendants' deficient ESI productions; 4) Defendants failure to disclose the existence of relevant ESI repositories; 5) Defendants' Failure to comply with this Court's Orders to preserve ESI; 6) Defendants modified, lost, deleted and/or destroyed ESI Responsive to Plaintiffs' Discovery Requests 7) Defendants and its counsel made false representations to this Court and Plaintiffs' counsel regarding several discovery issues, including but not limited to misrepresentations regarding the completeness of its production of documents relating to the Department of Labor investigation.  In light of the above, the difficult and novel circumstances presented to Plaintiffs' counsel in obtaining discovery in this case are self-evident and certainly reflected in the Order.

28

PLAINTIFFS' REVISED APPLICATION FOR COSTS AND ATTORNEYS' FEES

**C.**     **The preclusion of other employment by the attorney due to acceptance of the case**

As a result of Defendants well-documented discovery abuses, Plaintiffs' Counsel unnecessarily spent an extraordinary amount of additional time attempting to identify and remedy UMC's deficient ESI productions, including, but not limited to the many months participating in the Special Master proceedings.  This additional time, which would not have been incurred but for Defendants' discovery abuses, prevented Plaintiffs' counsel from using that time to develop potential cases as well as working on other existing cases.  *See* Godino Declaration ¶19, Tostrud Declaration ¶9, O'Mara Declaration ¶18.

**D.**     **The experience, reputation, and ability of the attorney(s)**

Plaintiffs' Counsel are highly experienced class action practitioners.  As detailed in Plaintiffs' Counsels' declarations, Plaintiffs' counsel are more than qualified to represent Plaintiffs in this case.   *See* Godino Declaration ¶¶17-18, Ex. 4; Tostrud Declaration ¶17, Ex. C; O'Mara Declaration ¶17, Ex. 2.

**E.**     **The undesirability of the case**

One undesirable aspect of bringing this case against UMC is the fact that the hospital is a quasi-governmental entity.  Plaintiffs' Counsels' past experience dealing with such government entities is the amount of bureaucratic red tape involved in getting approval for various aspects of the litigation.  Consequently, cases of this nature generally take longer to litigate than when dealing with private defendants.  This issue is especially important since Plaintiffs' Counsel are litigating this case on a contingency fee basis in addition to fronting the costs of the litigation.

**F.**     **Professional relationship with client**

Counsel was retained by the named plaintiff, Daniel Small, in 2012 and had no prior relationship with Mr. Small.  Counsel has experienced a positive and productive working

relationship with Mr. Small as well as many other plaintiffs in the approximate 600 member FLSA collective action.

## VI. CONCLUSION

Regardless of what future or continuing problems and issues the parties may face with discovery, in accordance with this Court's Order, Plaintiffs have tabulated and described in Plaintiffs' Counsels' declarations the added or extra work that would not have occurred but for Defendants' misconduct. Each counsel declaration provides reasonable details regarding the nature, amount and purpose of the added time, fees and costs that would not have otherwise been incurred but for Defendants' violation of the Court's orders or its discovery obligations under the Federal Rules of Civil Procedure.

Additionally, as instructed by this Court in its Order, each counsel has scrutinized the time entries and costs incurred for reasonableness, and comported with LR 54 as to content.

For the reasons set forth above, and in accordance with this Court's Order, Plaintiffs request that the Court approve the submitted fees in the amount of $1,725,643.00 and costs in the amount of $324,548.33 as reasonable and Order that UMC pay these fees and costs as a monetary sanction resulting from the findings of this Court and the Special Master.

**DATED** this 14th day of August 2018.        GLANCY PRONGAY & MURRAY LLP

By: */s/ Marc L. Godino*
    Marc L. Godino
    Kevin F. Ruf
    Kara M. Wolke
    1925 Century Park East, Suite 2100
    Los Angeles, CA 90067
    Telephone: (310) 201-9150
    Facsimile: (310) 201-9160
    Email: info@glancylaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Jon A. Tostrud
Anthony M. Carter
TOSTRUD LAW GROUP, P.C.
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 278-2600
Facsimile: (310) 278-2640
E-mail: jtostrud@tostrudlaw.com

David C. O'Mara
THE O'MARA LAW FIRM P.C.
311 E. Liberty Street
Reno, NV 89501
Telephone: (775) 323-1321
Facsimile: (775) 323-4082
david@omaralaw.net

Joseph N. Mott
REMPFER MOTT LUNDY PLLC
10091 Park Run Drive
Suite 200
Las Vegas, NV 89145-8868
Telephone: (702) 825-5303
Facsimile: (702) 825-4413
Joey@rmllegal.com

*Attorneys for Plaintiffs*

**PROOF OF SERVICE**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On August 14, 2018, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the District of Nevada, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on August 14, 2018.

> *s/ Marc L. Godino*
> Marc L. Godino

# Mailing Information for a Case 2:13-cv-00298-APG-PAL Small et al v. University Medical Center of Southern Nevada

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Anthony M. Carter**
  acarter@tostrudlaw.com

- **Robert W Freeman , Jr**
  robert.freeman@lewisbrisbois.com,kristen.freeman@lewisbrisbois.com,keltic73@msn.com

- **Lionel Z. Glancy**
  INFO@GLANCYLAW.COM,lglancy@glancylaw.com

- **Marc L. Godino**
  mgodino@glancylaw.com,marc-godino-1414@ecf.pacerpro.com

- **Danielle Miller**
  danielle.miller@lewisbrisbois.com,tiffany.dube@lewisbrisbois.com,pamela.january@lewisbrisbois.com

- **Joseph Nathan Mott**
  joey@rmllegal.com,scott@rmllegal.com,erica@sjplawyer.com,candice@sjplawyer.com

- **William M. O'Mara**
  bill@omaralaw.net,val@omaralaw.net,david@omaralaw.net

- **David C OMara**
  david@omaralaw.net,val@omaralaw.net,bsnyder@omaralaw.net

- **Joseph M. Ortuno**
  jortuno@edbernstein.com

- **Andrew L Rempfer**
  andrew@rmllegal.com,scott@rmllegal.com,info@rmllegal.com,joey@rmllegal.com,erica@sjplawyer.com,candice@sjplawyer.com

- **Kevin F. Ruf**
  kevinruf@gmail.com

- **Jon A Tostrud**
  jtostrud@tostrudlaw.com,mvogl@tostrudlaw.com,acarter@tostrudlaw.com

- **Cayla Witty**
  caylawitty@gmail.com,heidi.davis@lewisbrisbois.com,pamela.january@lewisbrisbois.com

- **Kara M Wolke**
  kwolke@glancylaw.com,kara-wolke-0535@ecf.pacerpro.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Daniel Garrie
6506 3rd Avenue
Suite C
Seattle, WA 98117
```

```
Raymond          B. Walton
```

```
3381 Violet Lantern
Dana Point, CA 92629
```