UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| DANIEL SMALL, et al., | Case No. 2:13-cv-0298-APG-PAL |
| Plaintiffs, | ORDER |
| v. | (App Fees and Costs – ECF Nos. 306, 310) |
| UNIVERSITY MEDICAL CENTER, et al., | (Mot Excess Pages – ECF No. 317) |
| Defendants. | |

Before the court is plaintiffs' Application for Costs and Attorneys' Fees (ECF No. 306), plaintiff's Revised Application for Costs and Attorneys' Fees (ECF No. 310), and defendants' Motion for Leave to Exceed Page Limitation for Defendants' Response to Plaintiffs' Revised Application for Costs and Attorneys' Fees (ECF No. 317). The court has reviewed the motions, Responses and Declarations (ECF Nos. 318, 319, 320), Objections (ECF No. 321), and Replies and Declarations (322, 323, 324, 325, 326).

## I.    Background

This case involves a dispute over unpaid wages and overtime compensation. Three named plaintiffs filed the case on July 27, 2012 individually and on behalf of all other similarly situated employees of defendant University Medical Center ("UMC").[1]  The case was filed as a collective

---

[1]  This case was originally filed in the unofficial northern division for the District of Nevada and assigned to District Judge Howard D. McKibben and Magistrate Judge Valerie P. Cooke. The case was subsequently reassigned to District Judge Miranda M. Du and Magistrate Judge George W. Foley, Jr. on February 25, 2013 (ECF No. 65), and again reassigned on May 3, 2013, to District Judge Andrew P. Gordon for all further proceedings. (Min. Order in Chambers, ECF No. 91.)  Judge Foley recused himself from the case on May 16, 2013 (Order of Recusal, ECF No. 94), and the case was reassigned to undersigned magistrate judge shortly thereafter. (*See* Min. Order, ECF No. 100.)

action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq*. ("FLSA"), and initially as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.[2]

This lawsuit followed a Department of Labor ("DOL") investigation that addressed substantially similar issues about uncompensated time for hourly employees related to uncompensated meal breaks. The DOL investigated a two-year period between April 1, 2010, and March 30, 2012. Prior to filing the lawsuit, plaintiffs' counsel made a Freedom of Information ("FOIA") request to DOL for information related to the investigation. The DOL concluded that the employer violated the record-keeping provisions of the FLSA "by not keeping accurate records of hours worked for all employees due to the fact that employees were not taking lunch breaks, but it was automatically deducted in the pay records."[3]

The court reluctantly appointed a special master only after a series of hearings over many months made it painfully apparent that UMC, its counsel, and consultants were failing in their efforts to produce electronically stored information ("ESI") responsive to plaintiffs' discovery requests. At the hearing before the appointment of the special master, the court warned UMC that if it did not resolve its ongoing problems with preserving, collecting, and producing responsive ESI, a special master would be appointed at UMC's expense. Not only did UMC fail to correct the problems outlined in the parties' joint status reports and addressed at length at eight case management and dispute resolution conferences the court conducted over nine months, but UMC's latest ESI production was largely unusable. ESI was produced to the plaintiffs that did not contain extracted text in pages of undecipherable codes complete with Japanese and Korean characters. The bulk of the production was unintelligible.

The court conducted a *de novo* review of the entire record preceding the appointment of the special master as well as the entire record of the special master's proceedings. The court considered the parties' responses to the special master's report. The special master's report and supporting exhibits consisted of nearly 1500 pages, which the court personally reviewed in its

---

[2] Any reference to a "Rule" or "Rules" in this Order refers to the Federal Rules of Civil Procedure. All citations to materials in the record will be enclosed in parentheses.

[3] (DOL Letter to Pls.' Counsel re: FOIA Request, Small 000006, Pls.' Resp. Ex. H, ECF No. 216-8.)

entirety. The court found that UMC had repeatedly violated its discovery obligations and its duty to preserve. Its multiple failures to implement timely preservation procedures, and to identify and collect information from relevant responsive repositories, resulted in the destruction of ESI responsive to plaintiffs' discovery requests. It also resulted in considerable delay of discovery, consumed an extraordinary amount of judicial resources, and cost the parties enormous, unnecessary time and expense.

The court determined sanctions were warranted. However, the court did not adopt the special master's recommendation to impose case-dispositive sanctions. Instead, the court found that giving a jury instruction that allows the jury to consider UMC's discovery failures and destruction of evidence was a more appropriate alternative to the more severe sanctions recommended by the special master. The court also indicated monetary sanctions in the form of reasonable costs and attorneys' fees unnecessarily incurred by plaintiffs, including ESI consultant fees incurred in connection with filing plaintiffs' May 2013 motion to compel, attempts to identify and remedy UMC's deficient ESI productions, and the cost of participating in special master proceedings would be imposed. Neither side filed objections or appealed the sanctions order, and the time for doing so has long since expired.

The order required the application for attorneys' fees to include:

    (A)    A reasonable itemization and description of the work performed;

    (B)    An itemization of all costs sought to be charged as part of the fee award and not otherwise taxable under LR 54-1 through 54-13;

    (C)    A brief summary of:

        (i)    The results obtained and the amount involved;

        (ii)    The time and labor required;

        (iii)    The novelty and difficulty of the questions involved;

        (iv)    The skill requisite to perform the legal service properly;

        (v)    The preclusion of other employment by the attorney due to acceptance of the case;

        (vi)    The customary fee;

| | |
|---|---|
| 1 | (vii) Whether the fee is fixed or contingent; |
| 2 | (viii) The time limitations imposed by the client or the circumstances; |
| 3 | (ix) The experience, reputation, and ability of the attorney(s); |
| 4 | (x) The undesirability of the case, if any; |
| 5 | (xi) The nature and length of the professional relationship with the client; |
| 6 | awards in similar cases; and |
| 7 | (xii) Any other information the court may request. |

**II.   Summary of Parties' Positions**

**A.  Plaintiffs' Application**

Plaintiffs' revised application for costs and attorneys' fees seeks costs and attorneys' fees incurred by plaintiffs, their ESI experts, and consultants in Special Master proceedings and in attempting to obtain compliance by UMC with its ESI obligations in the following categories:

1. Briefing one motion to compel with accompanying oral argument;

2. Seven discovery status conferences before the court between May 2013, and March 2014;

3. Research and appointment of Special Master Daniel B. Garrie;

4. Five all day in-person hearings before the Special Master;

5. Fourteen telephonic hearings before the Special Master;

6. Review and analysis throughout the Special Master proceedings of huge volumes of data and data summaries, numerous declarations, supplemental declarations and hearing testimony, and countless written submissions by counsel and ESI experts; and

7. Dozens of meet-and-confer discussions and conferences with co-counsel, defense counsel, ESI experts, and the Special Master.

Plaintiffs' revised application indicated plaintiffs' counsel itemized their time and expenses into the following categories:

1. Time and expense related to plaintiffs' May 2013 motion to compel;

2. Time and expense related to efforts to obtain compliance with the order compelling UMC to produce information responsive to the discovery requests in dispute, including discovery and dispute resolution hearings before the court;

3. Time and expense related to attempts to identify and remedy UMC's deficient ESI production;

4. Time and expense of participating in Special Master proceedings.

The application is supported by the attached declarations of counsel and time records which plaintiffs assert provide a reasonable description of the work performed relating to the four categories[4]. Plaintiffs' counsel undertook representation of this case on a contingency fee basis. However, their hourly rates range from $350/hr. for associates, to $750/hr. for senior attorneys. Plaintiffs' application claims these rates are reasonable, have been approved by multiple other courts and are consistent with other attorneys engaged in similar complex litigation.

Plaintiffs' application indicates they have incurred expenses related to the motion to compel discovery and Special Master proceedings of $324,548.33. These expenses include travel and ESI expert costs incurred as a direct result of directives issued by the Special Master and are described in the attached declarations of attorneys Marc Godino, John Tostrud and David O'Mara.

The application outlines plaintiffs' position regarding relevant factors for the court to consider. Plaintiffs request that the court approve fees in the amount of $1,725,643.00 and costs in the amount of $324,548.33 as reasonable, and order that UMC pay these costs and fees as a monetary sanction pursuant to court's order and findings regarding Special Master Proceedings.

**B. Defendants' Opposition**

Defendants UMC and individual defendant John Espinosa's opposition to the application for costs and attorneys' fees argues that the rates requested by plaintiffs' counsel are not reasonable and do not reflect prevailing rates in this district. The opposition notes that plaintiffs seek reimbursement for attorneys' fees for 10 timekeepers associated with the law firm of Glancy

---

[4] Although plaintiffs' application indicates counsel itemized their time and expenses by category, the supporting time records are chronological. Plaintiffs did not separate time spent and costs incurred by the categories the court indicated would be awarded as a sanction. Defendants' opposition attempted to break down the time spent by category. Plaintiffs' reply brief did not take issue with defendants' computations.

Prongay & Murray, LLC, a partner and associate with Tostrud Law Group, P.C., and a partner and two staff members with The O'Mara Law Firm, P.C. Partners from the law firm of Glancy Prongay & Murray, LLC seek fees awarded at the rate of $750/hr., with associates billed at a rate between $350/hr. to $525/hr., and paralegals billed at the rate of $180/hr. to $290/hr., as well as a legal research analyst billing at the rate of $310/hr. Partner John Tostrud from Tostrud Law Group, P.C. seeks reimbursement at the rate of $625/hr., and associate Anthony Carter at the rate of $500/hr. Partner David O'Mara of The O'Mara Law Firm, P.C., seeks reimbursement at the rate of $350/hr., and reimbursement for two staff members whose positions are not disclosed at the rate of $100/hr.

UMC argues that, with the exception of Mr. O'Mara, plaintiffs' counsel failed to provide any evidence to support a finding by the court that the partner rates requested in the motion are reasonable for lawyers of reasonably comparable skill, experience, and reputation for wage and hour class action cases in this district. However, the defendants agree that the rate sought by Mr. O'Mara appears to be reasonable based on his years of experience as an attorney in Nevada and the level of experience described in his declaration. Because the only evidence of reasonable attorney rates approved for partners in this district comes from Mr. O'Mara's declaration, the defendants argue that a reasonable rate for all partners involved in this case should be set at $350/hr.

With respect to associate rates, the defendants argue there is no evidence in the record to justify the rates for any associate attorney work claimed in this matter. The declarations of Messrs. Godino and Tostrud and exhibits supporting the application for attorneys' fees do not describe the wage and hour litigation experience or expertise of any of the associates listed which justify the rates requested in the application. The only information provided in the application for the various timekeepers performing services in this case is firm bios and resumes. The defendants therefore request that the court determine a reasonable rate for associate work on this matter in the range of $150/hr. to $240/hr. comparable to rates awarded by Judge Pro in a wage and hour case filed in this district, *Tallman v. CPS Sec. (USA) Inc.*, 23 F. Supp. 3d 1249, 1257 (D. Nev. 2014).

With respect to the paralegal rates, defendants argue plaintiffs have also failed to provide any evidence or information justifying the paralegal rates requested or that these rates have been

approved or considered as reasonable for this type of case in the District of Nevada. Relying on Judge Pro's decision in *Tallman*, defendants ask that the court establish a rate of $90/hr. for paralegals performing services in this case.

      If the court adopts the reasonable rates urged by the defendants, the fees would be reduced from a total of $1,725,643.00 requested by plaintiffs to a total of $888,417.50. Defendants analysis is outlined below:

    1. Plaintiffs' Fee Application

| Attorney | Total Hours | Hourly Rates | Total Amount Billed |
|---|---|---|---|
| **Glancy Prongay & Murray, LLC** | | | |
| Marc Godino (Partner) | 491.05 | $750 | $368,287.50 |
| Kara Wolke (Partner) | 524.65 | $750 | $393,487.50 |
| Christopher Fallon (Associate) | 5.0 | $525 | $2,625.00 |
| Elizabeth Gonsiorowski (Associate) | 22.05 | $395 | $8,709.75 |
| Rayo Antonio (Associate) | 152.45 | $350 | $53,357.50 |
| Jack Ligman (Research Analyst) | 6.0 | $310 | $1,860.00 |
| Tia Reiss (Senior Paralegal) | 59.85 | $295 | $17,655.75 |
| Harry Kharadjian (Senior Paralegal) | 2.5 | $290 | $725.00 |
| Samantha Skouros (Paralegal) | 9.3 | $200 | $1,860.00 |
| Cameron Sawyer (Paralegal) | 4.5 | $180 | $810.00 |
| | | | Total = $849,378.00 |
| | | | |
| **Tostrud Law Group, P.C.** | | | |
| John Tostrud (Partner) | 893.9 | $625 | $558,687.50 |
| Anthony Carter (Associate) | 539.9 | $500 | $269, 950.00 |
| | | | Total = $828,637.50 |
| | | | |
| **The O'Mara Law Firm, P.C.** | | | |
| David O'Mara (Partner) | 135.45 | $350 | $47,407.50 |
| Adrian (Staff) | .5 | $100 | $50.00 |
| Val Weiss (undisclosed) | 1.7 | $100 | $170.00 |
| | | | Total = $47, 627.50 |
| | | | **Total Fees = $1,725,643.00** |
| | | | |
| Costs/Expenses | | | **Total Costs/Expenses - $324,548.33** |
| | | | |
| | | | **Grand Total = $2,050,191.33** |

+

7

### 2. Defendants' Reasonable Hourly Rate Proposal

| Attorney | Total Hours | Defendants' Proposed Hourly Nevada Rate | Total Amount Billed at Proposed Hourly Nevada Rate |
|---|---|---|---|
| **Glancy Prongay & Murray, LLC** | | | |
| Marc Godino (Partner) | 491.05 | $350 | $171,850.00 |
| Kara Wolke (Partner) | 524.65 | $350 | $18.,627.50 |
| Christopher Fallon (Associate) | 5.0 | $240 | $1,200.00 |
| Elizabeth Gonsiorowski (Associate) | 22.05 | $200 | $4,410.00 |
| Rayo Antonio (Associate) | 152.45 | $200 | $30,490.00 |
| Jack Ligman (Research Analyst) | 6.0 | $90 | $540.00 |
| Tia Reiss (Senior Paralegal) | 59.85 | $90 | $5,386.50 |
| Harry Kharadjian (Senior Paralegal) | 2.5 | $90 | $225.00 |
| Samantha Skouros (Paralegal) | 9.3 | $90 | $837.00 |
| Cameron Sawyer (Paralegal) | 4.5 | $90 | $405.00 |
| | | | **Total = 398,371.00** |
| | | | |
| **Tostrud Law Group, P.C.** | | | |
| John Tostrud (Partner) | 893.9 | $350 | $312,865.00 |
| Anthony Carter (Associate) | 539.9 | $240 | $129,576.00 |
| | | | **Total = $442,441.00** |
| | | | |
| **The O'Mara Law Firm, P.C.** | | | |
| David O'Mara (Partner) | 135.45 | $350 | $47,407.50 |
| Adrian (Staff) | .5 | $90 | $45.00 |
| Val Weiss (undisclosed) | 1.7 | $90 | $153.00 |
| | | | **Total = $47,605.50** |
| | | | **Grand Total = $888,417.50** |

Defendants next argue that the court should further reduce the costs and fees sought by plaintiffs based on an "imbalance of work performed" by partners, associates and paralegals. In this case, the vast majority of work was performed by partners rather than associates, paralegal and other staff members. Many of defense counsel's firm's clients expect that approximately 75% of work on cases will be performed by associates and paralegals, and 25% will be performed by partners. Defendants' opposition is supported by the declaration of Robert Freeman who attests that the billings by plaintiffs' counsel "are essentially backwards, with the partners billing over 70% of the hours." This imbalance must be remedied by the court to arrive at a reasonable amount of fees. Defendants propose that the court take that imbalance into consideration when determining an appropriate fee award. Defendants' proposal is that the court reduce the fees sought by partners performing services in this case to 25% of the total hours billed at a reasonable Nevada rate of $350/hr. If the court did so, that would reduce the total hours billed by partners to 712.20

hours.  This would reduce the amount of fees demanded in the revised application for partners from $715,767.05 to $249,270.00.  Assuming a 70% to 75% associate-to-paralegal hour ratio at reasonable Nevada rates, the amount of associate and paralegal fees would be increased from a total of $173,267.50 to $458,656.80 for associate work, and $12,819.60 for paralegal work.  Thus, defendants argue that at reasonable Nevada rates, and a more reasonable partner-to-associate/paralegal ratio, the maximum attorney's fees plaintiffs should be able to recover would be reduced to $720,746.40.

Defendants also argue that the hours billed for the motion to compel are unreasonable.  The May 15, 2013 Motion to Compel (ECF No. 92) addressed 4 interrogatories and approximately 33 requests for production that plaintiffs believe were not properly responded to by defendants, and also sought a privilege log and a site inspection.  Two hearings were held to address the motion to compel.  The court did not rule on the motion to compel at the first hearing on June 25, 2013 because of email notification glitches between the court and defense counsels' firm.  The first hearing lasted a total of 27 minutes.  The second hearing on July 12, 2013 began at 9:01 a.m. and concluded at 11:03 a.m.

Defendants' review of plaintiffs' billing entries attached to Exhibit 2 to the Godino declaration, Exhibit B to the Tostrud declaration, and Exhibit 1 to the O'Mara declaration show that a total of approximately 220 hours is sought as reasonable costs and attorneys' fees for meeting and conferring on discovery disputes, drafting and editing the motion to compel, preparing for hearings and attending the hearings.  Defendants argue that this amount is excessive and not necessary or reasonable for the result obtained.  Defendants claim that the amount of time spent and unnecessary duplication of effort in review moving and responsive papers should result in a substantial reduction of the attorneys' fees and costs sought.

Defendants also argue that the hours billed for Special Master Proceedings are unreasonable and involve unnecessarily duplicative attendance at Special Master hearings by multiple attorneys.  Additionally, plaintiffs' application contains substantial time billed for research and drafting a proposed special master report and order which are excessive and should be reduced or eliminated.  Similarly, attorneys' fees sought for reviewing defendants' opposition

to the Special Master proposed order, drafting a response and reviewing defendants' reply are excessive and should be reduced.

Defendants argue that plaintiffs' application reflects that over time several attorneys spent 166.3 hours researching the issue of discovery sanctions, drafting a motion for sanctions, reviewing defendants' opposition, drafting a reply, and drafting other supplemental submissions relative to these sanctions. These hours, it is argued, are excessive.

Defendants seek a reduction for what they argue are improperly billed paralegal or clerical hours sought in the application and for "other improper or unnecessary billing" associated with preparing for and traveling to Las Vegas for status conferences before the court, preparing for client meetings, and research on the waiver of attorney/client privilege.

Finally, defendants argue that many of the requested expert costs were not caused by the alleged discovery shortcomings by defendants and must be denied. Plaintiffs request costs in the amount of $324,548.33, including $261,612.50 attributable to ESI hosting and experts. Defendants' review of the entries in the bills from plaintiffs' ESI experts, International Litigation Services ("ILS"), however reveal a large number of items billed for matters unrelated to Special Master hearings or other issues identified in the court's order. The hosting charges would have been incurred had there been no discovery disputes between plaintiffs and defendants because the data being hosted by ILS was the data produced by the defendants. Based on defendants' review of the expert billing records in Exhibit 3 to the Godino declaration, defendants argue that only $78,667.32 in costs billed by the expert would appear to be reasonable and related to Special Master proceedings, rather than the $261,612.50 sought. Consequently, the defendants request that costs and expenses attributed to the ESI experts be reduced by $182,945.18.

In summary, based on defendants' review and calculations of the billing records and information provided by plaintiffs' counsel, defendants argue reasonable fees at reasonable rates for the District of Nevada for sanctions the court ordered, would result in a fees award of $330,672.40. Reasonable costs for experts and consultants should be reduced by approximately $183,000.00. The remaining costs are attributable to duplicative travel by numerous partners to the same hearings and is not itemized. For purposes of this fee application, all of the $8,544.94

requested by the Godino firm for airfare, taxi, and hotel is arguably duplicative and should therefore be denied. The $1,769.66 requested by O'Mara should also be denied. Taking the $324,548.33 and reducing it by $183,000.00, $8,544.94 and $1,769.66 results in what defendants argue is a reasonable cost award of $131,233.73. Thus, defendants argue the most the court should award is $330,672.40 in attorneys' fees, and $131,233.73 in costs for a total of $461,906.13.

The specific reductions defendants propose are outlined in a spreadsheet prepared by the court attached as Exhibit A.

**C. Plaintiffs' Reply**

Plaintiffs reply that the court should not consider the defendants' opposition which was filed in violation of the page limitations of LR 7-3(b) without leave of court. Plaintiffs characterize the opposition as a losing parties' lament that plaintiffs' counsel worked too hard in achieving the result reflected in this court's amended order awarding sanctions. Citing *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008), plaintiffs argue that the court should defer to the winning lawyers' professional judgment as to how much time was required to spend on the case because "after all, he won, and might not have, had he been more of a slacker."

The two salient questions before the court are whether the total number of hours was reasonably expended, and whether the rates are reasonable. Defendants' opposition criticizes plaintiffs on both points. However, plaintiffs argue that they have expended a fraction of the time defendants' lawyers have and did so at substantial risk of loss as defendants' counsel have been paid for their services and they have not. Plaintiffs also argue their rates are verifiably reasonable market rates for employment lawyers in the District of Nevada, citing *Lucas v. Bell Trans*, 2:08-cv-01792-JAD-NJK. In this case, the district judge approved an hourly rate of $795/hr. for a partner and $525/hr. for a senior associate.

Plaintiffs also argue that the circumstances of this case justify an upward adjustment of the fee award. Defendants have no one to blame but themselves. Plaintiffs' counsel attempted to work collegially with defense counsel to avoid the problems associated with preserving and producing ESI and hard copy documents, suggested less burdensome and more efficient methods,

offered reasonable alternatives, and even provided technical guidance. Defendants' decisions made matters worse, more burdensome, and costly.

Plaintiffs concede that generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits. However, rates outside the forum may be used if local counsel is unavailable either because they are unwilling or unable to perform because they lack the degree of experience, expertise or specialization required to properly handle a case. Plaintiffs' declarations attest to their normal rates and cite cases in which their rates have been approved in other districts. Affidavits of counsel regarding prevailing fees in the community and rate determinations in other cases are ordinarily satisfactory evidence of the prevailing market rate. The only rebuttal evidence offered by the defendants is the declaration of Robert W. Freeman who attests that the firm negotiated a rate for lawyers doing legal work on behalf of Clark County with partners billing at $190/hr. and associates at $130/hr. This is not evidence of any competitive marketplace of available employment law practitioners in Nevada, but evidence that discounted legal rates are available if a firm is willing to represent Clark County, presumably with the hope of doing a great deal of work for it.

The total legal time plaintiffs' counsel expended resulting from defendants' evidence destruction and the discovery "fiasco" they created, including participation in the Special Master process, was 2,848.80 hours. This time is reported and attested to in the declarations of Messrs. Godino, Tostrud, and O'Mara. These hours seem eminently reasonable especially in light of the fact that the time period covered by this request is more than 20 months of continuous effort. Plaintiffs dispute that they "overstaffed" the Special Master's process. Special Master Garrie instituted what amounted to a "production or assembly line" approach to the Special Master process. The first step was to ascertain an agenda which required the submission by both parties of a proposed list of topics and witnesses. This required strategic discussion and collaboration among counsel and research regarding each topic and witness. The second step was agreement on the agenda and list of witnesses. The third step was actual hearings. The fourth step was review and analysis of the transcripts with the fifth step involving drafting a detailed bullet-point summary of each transcript. A summary was sent electronically to Special Master Garrie and the work

12

associated with that particular hearing was then completed. This approach kept the process moving forward in a coherent workmanlike fashion and was repeated more than two dozen times and nearly nonstop over the five-month period in which the Special Master conducted hearings.

Plaintiffs claim that their efficiency and work rate when compared to defense counsel is demonstrably reasonable. Plaintiffs cite statements made by Mr. Freeman in an October 21, 2014 hearing that the Special Master proceedings had cost UMC $2 million dollars. If so, deducting the $400,000.00 that UMC paid to the Special Master plaintiffs figure UMC paid defense counsel between $1.2 and $1.3 million dollars in legal fees.

Plaintiffs cite a line of district court decisions in this circuit holding that counsels' staffing and actual assignments are not appropriate factors for the court to consider in a complex case like this one. Litigating complex cases often requires a team structure and courts do not penalize attorneys for working collaboratively. Courts have also held that duplication of efforts may be appropriate in that it will often result in savings of time by ensuring that all attorneys on a team are kept apprised of important information. The court should therefore ignore the bulk of defendants' opposition.

Plaintiffs also argue that defendants' criticism of plaintiffs' counsel for using senior lawyers or partners instead of associates and paralegals makes no sense. Plaintiffs used people who were available to do the work in a timely and professional manner over a twenty-month period in a strongly contested action that included approximately twenty weeks of nearly continuous hearings and work throughout the Special Master process.

Finally, plaintiffs argue their expert invoices are reasonable. Plaintiffs' experts were able to aid the court and the Special Master immensely throughout these proceedings. If defendants had employed such a professional, efficient, and responsible group of experts, it is highly probable that some of the discovery fiasco would have been avoided entirely. However, plaintiffs concede that some of the monthly hosting costs would have been incurred regardless of defendants' discovery problems. Plaintiffs would not have had to host the data for the six years this case has been pending. Based on plaintiffs' counsels' experience, a case of this nature often resolves in about two years. The additional four years is a direct result of and would not have occurred but

13

for defendants' misconduct. Nevertheless, plaintiffs are amenable to reduce charges related to hosting by one-third. Plaintiffs do not say what amount they paid in hosting costs, leaving the court to figure it out.

Finally, plaintiffs argue the court should approve counsels' hourly rates and time because all of the time, which was actually spent dealing with defendants' discovery "chicanery" could have been spent working in jurisdictions where plaintiffs' counsels' rates and hours have been approved. None of plaintiffs' counsels' time and expense as sought in the fee application would have been incurred but for defendants' pervasive discovery abuses, violation of this court's prior orders, and misrepresentations to both the court and plaintiffs' counsel. Thus, to the extent defendants complain that plaintiffs' counsels' hours and rates are too high, "that is the price to pay for their misdeeds."

**III.    Discussion**

The court has conducted a line-by-line review of the timekeeping records and invoices, declarations and other supporting exhibits submitted in support of plaintiffs' fee and cost application.

Both sides agree that the court should assess reasonable costs and attorneys' fees using the lodestar method, that is, multiplying the hours expended by reasonable hourly rates. *Ryan v. Editions Ltd. WP, Inc.*, 786 F.3d 754, 763 (9th Cir. 2015) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)), *cert denied*, 136 S. Ct. 267 (2015). The product of this computation is sometimes referred to as the "lodestar figure," and in most cases it is a "presumptively reasonable fee." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). The district court may adjust the lodestar upward or downward based on a variety of factors. *Id.* Although plaintiffs suggest that an upward adjustment would be appropriate, they did not specifically request an upward adjustment, but merely point out that the court has the discretion to adjust.

**A.  Reasonable Hourly Rates**

The parties agree that courts consider the experience, skill, and reputation of the attorney requesting fees when determining the reasonableness of an hourly rate. *Webb v. Ada County*, 285 F.3d 829, 840 at n.6 (9th Cir. 2002). The parties also agree that generally a reasonably hourly rate

should reflect the prevailing market rates of attorneys practicing in the relevant community. *Id.*; *See also Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008). The relevant community is the district in which the court sits. *See Camacho*, 523 F.3d at 979. In calculating a reasonable fee award, a district court has discretion to reduce an attorney's rates to ensure that it is "'in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation'." *Chaudhry v. City of L.A.*, 751 F.3d 1096, 1110 (9th Cir. 2014) (quoting *Camacho*, 523 F.3d at 978). However, the court may consider rates outside the forum if local counsel was unavailable because they lacked the degree of experience, expertise, or specialization required to properly handle the case. *Camacho,* 523 F.3d at 979 (citing *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)).

The party seeking an award of fees must submit evidence supporting the rates claimed. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also United States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1105 (9th Cir. 2015) (requiring proof of market rates in the relevant community, which are "often in the form of affidavits from practitioners"). The movant " 'has an initial burden of production,' to produce 'satisfactory evidence' that the fee requested is reasonable." *Beauchamp v. Anaheim Union High Sch. Dist.*, 816 F.3d 1216, 1224–25 (9th Cir. 2016) (quoting *$28,000 in U.S. Currency*, 802 F.3d at 1105). The movant's "initial duty of production is not excused by lack of opposition." *Id*. at 1225.

Once a movant discharges its initial burden of production, the court makes a factual determination whether the requested fee is reasonable. *$28,000.00 in U.S. Currency*, 802 F.3d at 1105 (citing *Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 582–83 (9th Cir. 2010); *Straw v. Bowen*, 866 F.2d 1167, 1169 (9th Cir. 1989)). The factual determination typically involves "considering both the proponent's evidence and evidence submitted by the fee opponent 'challenging the accuracy and reasonableness of the facts asserted by the prevailing party'." *$28,000.00 in U.S. Currency*, 802 F.3d at 1105 (quoting *Camacho*, 523 F.3d at 980).

"Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *Beauchamp v.*

*Anaheim Union High Sch. Dist.*, 816 F.3d 1216, 1224 (9th Cir. 2016) (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)). However, declarations of the fee applicant do not conclusively establish the prevailing market rate. *Camacho*, 523 F.3d at 980.

Ideally, a court should consider counsels' affidavits including information about fee rates of other attorneys in similar practices, awards in comparable cases, counsel's experience and reputation level, and market rates. *See Dang v. Cross*, 422 F.3d 800, 814 (9th Cir. 2005).

In addition to evidence supporting the rates claimed, the party seeking an award of fees must submit evidence supporting the hours worked. *Hensley*, 461 U.S. at 433; *see also United States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1105 (9th Cir. 2015) (noting that the evidence must include "detailed documentation of the hours worked"). Where the documentation of hours is inadequate, the district court may reduce the award accordingly. *Hensley*, 461 U.S. at 433. "Counsel should, at the very least, 'identify the general subject matter of his time expenditures'." *Doe v. Keala*, 361 F.Supp.2d 1171, 1184 (D. Haw. 2005) (quoting *Hensley*, 461 U.S. at 437 n.12).

The district court should also exclude from the initial fee calculation hours that were not reasonably expended. *Id.* at 433–34 (citation omitted). In other words, the court has discretion to "trim fat" from, or otherwise reduce, the number of hours claimed to have been spent on the case. *Edwards v. Nat'l Bus. Factors, Inc.*, 897 F. Supp. 458, 460 (D. Nev. 1995); *see also Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992).

Defendants argue that Mr. O'Mara's declaration is the only evidence in the record the court should rely upon in determining a reasonable hourly rate in this case. Defendants agree that his rate of $350/hr. is reasonable in Nevada for a lawyer of his experience and expertise. Defendants also cite Judge Pro's award of attorneys' fees and costs in the *Tallman* case as evidence of reasonable hourly rates approved in this district for partners, senior associates and paralegals. Plaintiffs reply argues the rates sought in this case are reasonable market rates for employment lawyers in the District of Nevada, citing *Lucas v. Bell Trans*, 2:08-cv-01792-JAD-NJK. In that case, Judge Dorsey's Order of Final Approval and Judgment approved an hourly rate of $795/hr. for partners and $525/hr. for senior associates.

The declarations of Messrs. Godino, Tostrud, and O'Mara do not address reasonable market rates in this district. Rather, they state what their respective usual and customary rates are. Rate determinations in other cases in the District of Nevada around the time fees were incurred at issue in this application have found hourly rates as much as $450 for a partner and $250 for an experienced associate to be the prevailing market rate in this forum. *See*, *e.g.*, *Marrocco v. Hill*, 291 F.R.D. 586 (D. Nev. 2013) (finding reasonable hourly rate in community of Nevada to be $375–$400 for partner with over thirty-five years of experience); *Agarwal v. Oregon Mut. Ins. Co.*, 2013 WL 5882710 (D. Nev. Oct. 30, 2013) (finding $300 per partner hour and $260 per associate hour reasonable); *Stephens Media LLC v. Citihealth*, *LLC*, 2013 WL 4045926 (D. Nev. Aug. 7, 2013) (finding rates between $400 and $185 to be reasonable); *In re USA Commercial Mortg. Co.*, 2013 WL 3944184 (D. Nev. July 30, 2013) (finding rates between $170 and $420 to be reasonable and $275 to $775 to be unreasonable); *Cervantes v. Emerald Cascade Restaurant Sys.*, *Inc.*, 2013 WL 3878692 (D. Nev. July 25, 2013) (finding $450 to be excessive and reducing it to $275); *Plaza Bank v. Alan Green Family Trust*, 2013 U.S. Dist. LEXIS 58657 (D. Nev. April 24, 2013) (finding $425–$475 for partner time reasonable, but $275-$375 for associate time to be excessive based on the prevailing market rate and adjusting the amount to $250–$325); *Aevoe Corp. v. Shenzhen Membrane Precise Electron*, *Ltd.*, 2012 WL 2244262 (D. Nev. June 15, 2012) (finding $400 reasonable for a partner in a firm that concentrates on complex intellectual property litigation).

A rate of $400 per hour has been described as "at the top of the market," but has been found reasonable in complex matters. *Marrocco v. Hill*, 291 F.R.D. 586, 589 (D. Nev. 2013).

Four partners from three law firms seek reimbursement for attorneys' fees expended in connection with the sanctions order. The only information plaintiffs' counsel provided concerning the experience, background and expertise of partners, associates and staff members are attached firm bios and resumes. Plaintiffs do not claim that local counsel were unavailable because they lacked the degree of experience, expertise or specialization required to properly handle a case of this nature. To the contrary, both sides cite FLSA and wage and hour cases prosecuted and defended by Nevada counsel to support their respective positions. In the court's experience, there

are many Nevada lawyers and firms who can, and do, practice competently in this field. The court has had ample opportunity to observe the experience, expertise and professionalism of Mssrs. Godino and Tostrud.  The court finds that Messrs. Godino and Tostrud should be compensated at the rate of $450/hr., which judges in this district have found is reasonable for experienced lawyers practicing in this district during the time frame for which fees are sought.  The court finds a reasonable hourly rate for partners Wolke and O'Mara is $350.00/hr.    As the only information the court has about the experience and expertise of the remaining timekeepers is the firm bios and resumes attached as exhibits to the fee application, the court will adopt the defendants' argument which relies on Judge Pro's decision in *Tallman* with respect to their reasonable hourly rates.

## B.  Defendants' Imbalance Argument

The Defendants argue that plaintiffs' fee application should not be approved because the case was "overstaffed" and because four partners performed most of the work in this case rather than delegating 70-75% of the work to associates and paralegals at lower rates. Mr. Freeman's declaration attests to what his firm's clients expect.  The motion characterizes plaintiffs' staffing decision as an "imbalance" the court should correct.  Defendants ask the court to correct this "imbalance" by allowing only 25% of the attorney's fees sought at partner rates and increasing the time attributable for various work on the case to associates who did not actually perform that work. The court does not doubt that an institutional client or a municipal entity that contracts with a firm to provide legal services in all or most of its litigation may expect that most work in routine, non-complex cases will be performed by associates and paralegals with significantly less work by supervising partners or senior lawyers[5].  The court agrees with plaintiffs that it makes no sense to assess reasonable attorneys' fees by reducing hours actually spent by partners on this case by 75% and increasing the hours for associates and paralegals who did not actually perform the work.

The affidavits of Messrs. Godino, Tostrud, and O'Mara do not explain the staffing decisions made which resulted in the application for attorneys' fees for 4 partners, 4 associates, and 7 paralegals and miscellaneous staff from the initial motion to compel through the conclusion

---

[5] Defendants do not claim that the rates Clark County pays defense counsel in this and other cases is a reasonable market rate for cases of this nature in this forum.

of Special Master proceedings and hearings before the court. The application states that staffing decisions were made based on when people were available to do the work in a timely and professional manner over a 20-month period which included 20 weeks of nearly continuous hearings and work throughout Special Master proceedings. The court rejects defendants' arguments that the court should "correct" a perceived "imbalance" based on the asserted expectations of defense counsels' clients.

## C. The Amount of Time Spent

Before the Special Master was appointed, the court inquired of counsel for plaintiffs the amount of damages plaintiffs believed were recoverable in this case. The court did so to assess the proportionality of the discovery plaintiffs were seeking from the defendants. At a hearing held on September 24, 2013, counsel for the plaintiffs, O'Mara, Godino and Tostrud, represented that based on a very conservative estimate, each of the conditionally certified class members missed two meal breaks per week during the statutory period and damages would be "somewhere in the neighborhood of $10 million." At that time, plaintiffs were pursuing a Rule 23 class action. Plaintiffs have now abandoned their efforts to certify class, and this is a relatively straightforward wage-and-hour case under the FLSA. It is not particularly complex.

The declarations of Messrs. Godino, Tostrud and O'Mara do not attest that the complexity of this case or other factors required staffing by 15 timekeepers which include 4 partners, 4 associates, a research analyst, 4 paralegals, and 2 staff members whose positions are not disclosed. However, plaintiffs' initial and revised application and reply advance arguments why this case, especially during Special Master proceedings, required a team effort, a team of lawyers, and a team approach to participation. The court understands and agrees that a team structure and collaborative efforts by multiple attorneys and supporting staff often accomplish efficiencies in complex cases. The court does not doubt that all of the attorneys and staff members for whom attorneys' fees are sought actually performed work on this case. However, the court is assessing reasonable costs and attorneys' fees in the context of a sanction for discovery violations. The court is not assessing reasonable attorney's fees and costs arising out of a fee-shifting statute at the end of the case to a prevailing party.

The Ninth Circuit affords trial courts broad discretion in determining the reasonableness of costs and fees. *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992). "The reasonableness of any fee award must be considered against the backdrop of the 'American Rule,' which provides that courts generally are without discretion to award attorneys' fees to a prevailing plaintiff unless (1) fee-shifting is expressly authorized by the governing statute; (2) the opponents acted in bad faith or willfully violated a court order; or (3) 'the successful litigants have created a common fund for recovery or extended a substantial benefit to a class'." *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc.*, 421 U.S. 240, 275 (1975)); *accord Zambrano v. City of Tustin*, 885 F.2d 1473, 1481 & n.25 (9th Cir. 1989).

As indicated, the court conducted a line-by-line review of the revised fee application and supporting declarations, invoices and exhibits. The court finds that a large amount of the work was performed on tasks not solely related to the motion to compel, efforts to obtain compliance with the court's orders, and preparation for and attendance at Special Master proceedings. A great deal of the work is work that attorneys would perform in any case such as document review of the defendants' productions once the Special Master resolved numerous technical problems. As the court indicated in its order assessing sanctions, the Special Master's extraordinary expertise remedied a great deal of UMC's discovery failures and resulted in the production of documents and ESI responsive to plaintiffs' discovery requests which plaintiffs would have reviewed in any event. Moreover, the Special Master hearings examined witnesses who provided discovery useful to the merits of the case in addition to resolving the defendants' discovery failures. The invoices reflect that a great deal of time was billed reviewing records, reviewing transcripts, and preparing outlines and notebooks that would be useful for deposition and trial.

The court reviewed and approved the Special Master's fees and costs during Special Master proceedings. The parties agreed Special Master Garrie had the expertise as a litigator with special expertise in ESI technology. He agreed to accept an appointment at the rate of $385/hr which the parties agreed was reasonable. The Order appointing the Special Master (ECF No. 152) set his hourly rate at $385/hr. The order also authorized reimbursement for reasonable expenses including

amounts incurred in employing other persons to provide clerical, secretarial, and stenographic assistance. The Special Master submitted invoices on April 14, 2014, June 13, 2014, July 16, 2014, and August 18, 2014, in the total amount of $481,212.32. The parties filed Joint Statements (ECF Nos. 160, 173, 182, 205) accepting the Special Master's invoices as reasonable. Defendants response to the application for sanctions urges the court to award a maximum of $461, 906.13, or more than $20,000 less than they agreed was reasonable for special master service at a lower rate over a much shorter time-period. Plaintiffs ask for monetary sanctions of more than four times the amount they agreed was reasonable to pay to the special master. Of course the plaintiffs incurred substantial unnecessary costs and fees prior to the appointment of the special master, and also incurred fees after his report and recommendation was filed litigating his findings and recommendations and appropriate sanctions

The court has found that two of the partners performing work on this case should be compensated at a higher hourly rate in line with rates that have been approved in this district. Plaintiffs were involved in the discovery disputes and efforts to resolve them prior to the appointment of the special master over a period of many months. Additionally, the court agrees that participating in special master proceedings required preparation and follow up work by counsel for both sides. The court agrees that plaintiffs attempted to work collegially with defense counsel to avoid problems UMC had associated with preserving and producing responsive ESI. The court also agrees plaintiffs suggested less burdensome and more efficient methods, compromised, offered reasonable alternatives, and even provided UMC and its ESI consultants with technical guidance on resolving its ESI preservation and production problems. The court has already found that UMC's inability and/or unwillingness to remedy the problems caused an enormous amount of unnecessary expenditure of judicial and party resources.

However, although the court does not doubt that the timekeepers at issue in this fee application spent the time claimed, the court finds the total number of hours claimed would be excessive to impose as a discovery sanction. The motion to compel was relatively simple and straightforward. It did not involve any novel issues. The seven status and dispute resolution conferences prior to the appointment of the Special Master involved a variety of discovery and

management issues. The court has and continues to routinely conduct these types of conferences in large or complex cases. They typically resolve discovery and case management disputes without the time consuming an expensive process of formal briefing.

The court has found that a great deal of the time spent before during and after special master proceedings was also useful work that would have been performed in discovery and prosecution of this case. A huge amount of time was billed for legal research and preparing a relatively simple motion to compel and a more complex motion for sanctions. A significant amount of time was also spent drafting and preparing a proposed order for the special master which neither the court nor the special master requested. For these reasons, the court will reduce the hours sought for four partners and two associates by 45%. The court will also disallow the 2.2 hours of staff time claimed by the O'Mara firm. The court finds reasonable attorneys' fees unnecessarily incurred for defendants' discovery failures which will be imposed as a discovery sanction are as follows:

| Attorney | Total Hours | Hourly Rate | | Total |
|---|---|---|---|---|
| **Glancy Prongay & Murray, LLC** | | | | |
| Marc Godino (Partner) | 491.05 | $450 | $220,973 – 45% | $121,535.00 |
| Kara Wolke (Partner) | 524.65 | $350 | $183,628 – 45% | $100,995.00 |
| Christopher Fallon (Associate) | 5.0 | $240 | | $1,200.00 |
| Elizabeth Gonsiorowski (Associate) | 22.05 | $200 | | $4,410.00 |
| Rayo Antonio (Associate) | 152.45 | $200 | $30,490 – 45% | $16,770.00 |
| Jack Ligman (Research Analyst) | 6.0 | $90 | | $540.00 |
| Tia Reiss (Senior Paralegal) | 59.85 | $90 | | $5,387.00 |
| Harry Kharadjian (Senior Paralegal) | 2.5 | $90 | | $225.00 |
| Samantha Skouros (Paralegal) | 9.3 | $90 | | $837.00 |
| Cameron Sawyer (Paralegal) | 4.5 | $90 | | $405.00 |
| | | | | **Total = 252,304.00** |
| | | | | |
| **Tostrud Law Group, P.C.** | | | | |
| John Tostrud (Partner) | 893.9 | $450 | $402,255 – 45% | $221,240.00 |
| Anthony Carter (Associate) | 539.9 | $240 | $129,576 – 45% | $71,267.00 |
| | | | | **Total = $292,507.00** |
| | | | | |
| **The O'Mara Law Firm, P.C.** | | | | |
| David O'Mara (Partner) | 135.45 | $350 | $47,408 – 45% | **Total = $26,074.00** |
| | | | | **Grand Total = $570,885.00** |

**D. Plaintiffs' Costs**

Plaintiffs seek total costs in the amount of $324,548.00. Plaintiffs' ESI experts, ILS, billed $261,612.50 for invoices dated from February 23, 2014 through October 31, 2014. A very modest amount was explicitly billed for data hosting. From the court's review of the invoices, the total amount explicitly billed for data hosting and access to databases was $4,349.70. The ILS invoices reflect significant time spent for project management, coordinating technical support with plaintiffs' counsel and providing training to plaintiffs' counsel, creation of files at the request of counsel, document review and loading of documents produced by UMC after the Special Master's successful remediation.

As the court stated in the amended order sanctioning UMC, the court developed a great deal of confidence in plaintiffs' ESI experts. On every occasion on which the court probed the accuracy of their representations, the court was satisfied that they accurately assessed the nature of UMC's discovery deficiencies and the technical reasons why UMC's ESI productions were largely unusable. They offered their assistance in helping to remediate the problems before and during special master proceedings. However, plaintiffs' counsel retained ILS to assist in the prosecution of this case, not just to assess and attempt to remedy UMC's ESI deficiencies. Some of the work product contained in the fee application is clearly work ILS would have done on behalf of the plaintiffs in loading documents productions, training counsel, and reviewing, organizing and evaluating UMC's discovery productions. The court will therefore reduce the total amount sought by 25% or $65,403.00.

Finally. plaintiffs also reimbursement for travel costs of $8,545.00 and $1,770.00. However, the travel costs are lump sum entries and are not supported by declaration or any backup documentation. The court will therefore disallow plaintiffs' request for these costs. As a result, the court awards costs as follows:

| Total Costs Sought | $324,548.00 |
|---|---|
| 25% | <$65,403.00> |
| Travel Costs | <$10,315.00> |
| | **Total Costs = $248,830.00** |

## IV.   Conclusion

Having reviewed and carefully considered the moving and responsive papers, the court awards total attorneys' fees in the amount $570,885.00 and costs of $248,830.00 for a total monetary sanction against UMC in the amount of $819,715.00.

**IT IS ORDERED** that UMC shall have thirty days from today's date to pay plaintiffs the attorneys' fees and costs awarded as a sanction pursuant to this court's Amended Order (ECF No. 308).

**IT IS FURTHER ORDERED** that defendants' Motion for Leave to Exceed Page Limitation for Defendants' Response to Plaintiffs' Revised Application for Costs and Attorneys' Fees (ECF No. 317) is **GRANTED**.

Dated this 5th day of November 2018.

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE

1. **Motion to Compel**

   A. **The Meet and Confer Process**

| **If Meet and Confer Process was Not Intended by Magistrate Judge in Award of Attorney's Fees, Amounts for Those Fees Should be Reduced** | | | | |
|---|---|---|---|---|
| **Attorney** | **Date(s)** | **Total Hours** | **Defts' Proposed Nevada Rate** | **Total to be Reduced Calculated at Defendants' Proposed Nevada Rate** |
| Tostrud (P) | 4/2/2013 4/8/2013 | 2.9 | $350 | $1,022.25 |
| Gonsiorowski (A) | 4/2/2013 4/4/2013 | 2.5 | $200 | $500.00 |
| Wolke (P) | 4/2/2013 4/4/2013 4/7/2013 | 10.1 | $350 | $3,535.00 |
| Godino (P) | 4/9/2013 | 1.0 | $350 | $350.00 |
| | | **Total = 16.5** | | **Total = <5,407.25[6]>** |

-OR-

| **If Meet and Confer Process was Intended as Attorney's fees, Amounts are Excessive and Should be Reduced** | | | |
|---|---|---|---|
| **Attorney** | **Total Hours** | **Defendant's Proposed Hours** | **Total to be Added/Reduced** |
| Tostrud (P) | 2.9x $350 | 1.7 x $350 | <420.00> |
| Gonsiorowski (A) | 2.5 x $200 | 5.0 $200 | 500.00 |
| Wolke (P) | 10.1 x $350 | 1.0 x $350 | <$3,185.00> |
| Godino (P) | 1.0 x $350 | 0 | <$350.00> |
| | **Total Hours = 16.5** | **Total Reasonable Hours = 7.7** | **Total = <3,455.00>** |

---

[kj] This is the actual amount. Defendants state an amount of $5,400.00 in their opposition.

### B. Vague or Unrelated Entries

| Attorney | Date | Hours to be Reduced | Proposed Nevada Hourly Rate | Amount to be Reduced |
|---|---|---|---|---|
| Wolke (P) | 4/30/2013 | 2.25 | | |
| | 5/15/2013 | 1.50 | | |
| | 6/14/2013 | 4.00 | | |
| | | Total = 7.75 | $350.00 | <$2,712.50> |
| Gonsiorowski (A) | 4/19/2013 | .20 | $200.00 | <$40.00> |
| O'Mara (P) | 6/11/2013 | .10 | $350.00 | <$35.00> |
| Reiss (Pa) | 4/15/2013 | 1.00 | $90.00 | <$90.00> |
| Tostrud ((P) | 5/16/2013 | .40 | $350.00 | <$140.00> |
| | | | | **Total - <$3,017.50>** |

### C. Drafting and Strategy

| Attorney | Total Hours Billed | Proposed Reasonable Hours | Amount to be Reduced |
|---|---|---|---|
| Tostrud (P) | $350 | | |
| Godino (P) | $350 | | |
| Wolke (P) | $350 | | |
| | | | |
| Carter (A) | $240 | | |
| Giansiorowski (A) | $200 | | |
| | Over 50+ Hours | **Total Hours – 25** | **Total = <8,649.00[7]>** |

### D. Reviewing Defendants' Opposition

| Attorney | Total Hours Billed | Proposed Reasonable Hours | Amount to be Reduced |
|---|---|---|---|
| Wolke (P) | 8.0 x $350 | 1 Partner | |
| Tostrud (P) | 3.3 x $350 | | |
| Godino (P) | 2.5 x $350 | | |
| O'Mara (P) | .2 x $350 | | |
| | Partner Hours – 14.0 | | |
| | | | |
| Carter (A) | 1.5 x $240 | 1 Associate | |
| | Associate Hours – 1.5 | | |
| | **Total Hours = 15.5** | **Total Hours – 2.5** | **Total = <$4,735.00[8]>** |

---

[7] Plaintiffs only state that "over 50 hours were spent" between the attorneys. Plaintiffs do not specify how much each attorney spent individually. It is unknown how plaintiffs calculated these amounts.

[8] Plaintiffs only state that 2.5 hours total between a partner and associate is appropriate. They do not specify how the work should be divided.

26

### E. Reply to Motion

| Attorney | Total Hours Billed | Proposed Reasonable Hours | Amount to be Added or Reduced |
|---|---|---|---|
| Wolke (P) | 18.00 x $350 | | |
| Tostrud (P) | 2.30 x $350 | | |
| Godino (P) | 2.75 x $350 | $350 | |
| | Partner Hours = 23.05 | Partner Hours = 3.25 | <$6,930.00> |
| | | | |
| Carter (A) | 2.00 x $240.00 | $240 | |
| | Associate Hours = 2.00 | Associate Hours = 11.75 | $2,340.00 |
| | **Total Hours = 25.05** | **Total Hours = 15.00** | **Total = <$4,590.00[9]>** |

### F. Preparation and Attendance at Hearing

| Attorney | Date | Hours Billed | Hours to be Reduced | Amount to be Reduced |
|---|---|---|---|---|
| Carter (A) | 6/17/18 through 6/24/2013 | 20.8 x $240 | 15.8 x $240 | **Total = <$3,792.00>** |

### G. Travel and Attendance at Hearing

| Attorney | Date | Hours Billed | Hours to be Reduced | Amount to be Reduced |
|---|---|---|---|---|
| O'Mara (P) | 6/24/2013 | 6.2 | 6.2 x $350 | <$2,170.00> |
| | 7/12/2013 | 8.0 | 8.0 x $350 | <2,800.00> |
| | | **Total = 14.2** | **Total Hours= 14.2** | **Total = <$4,970.00>** |
| | | | | |
| Godino (P) | 6/24-25/2013 | 12.9 | 12.9 x $350 | <$4,515.00> |
| | 7/11-12/2013 | 12.0 | 12.0 x $350 | <$4,200.00> |
| | | **Total = 24.9** | **Total Hours=24.9** | **Total = <8,715.00>** |
| | | | | |
| Tostrud (P) | 6/24-25/2013 | 7.4 | None | 0 |
| | 7/11-12/2013 | 10.3 | None | 0 |
| | | **Total = 17.7** | **Total Hours = 0** | **Total = 0** |
| | | | | **Grand Total = <$13,685.00>** |
| | | | | |

### H. Expenses Related to Travel

| Attorney | Date | Costs | Amount | Amount to be Reduced |
|---|---|---|---|---|
| O'Mara (P) | 6/24/2013 7/12/2013 | Auto rental, airfare, taxi, and parking. | $1,769.66 | **<$1,769.66>** |
| Tostrud | 6/24/2013 7/12/2013 | Auto rental, airfare, taxi, and parking | Unknown | Tostrud should be required to provide more accurate information |

---

[9] This is the amount calculated by the court. Plaintiffs request the amount be reduced by a total of $4,559.00.

## 2. Special Master Proceedings

### A. Unnecessary Duplicative Preparation and Attendance at Hearings

| Date of Special Master Hearing | Attorney | Hours Billed | Proposed Reasonable Hours | Amount to be Reduced |
|---|---|---|---|---|
| 4/4/2014 | Godino (P) | 19.00 x $350 | | <$6,650.00> |
| | Tostrud (P) | 26.80 x $350 | 26.80 x $350 | 0 |
| | O'Mara (P) | 13.00 x $350 | | <$4,550.00> |
| | | Total = 58.80 | | **Total = <$11,200.00>** |
| | | | | |
| 4/7/2014 | Godino (P) | 20.00 x $350 | | <$7,000.00> |
| | Tostrud (P) | 25.00 x $350 | 25.00 x $350 | 0 |
| | O'Mara (P) | 13.00 x $350 | | <$4,550.00> |
| | | Total = 58.00 | | **Total = <$11,550.00>** |
| | | | | |
| 4/10/2014 | Godino (P) | 4.50 x $350 | | <$1,575.00> |
| | Tostrud (P) | 11.60 x $350 | 11.60 x $350 | 0 |
| | O'Mara (P) | 3.10 x $350 | | <$1,085.00> |
| | | Total = 19.20 | | **Total = <2,660.00>** |
| | | | | |
| 4/15/201 | Godino (P) | 7.00 x $350 | | <$2,450.00> |
| | Tostrud (P) | 12.40 x $350 | 12.40 x $350 | 0 |
| | | Total = 19.40 | | **Total = <2,450.00>** |
| | | | | |
| 4/22/2014 | Wolke (P) | 24.75 x $350 | | <$8,662.50> |
| | Godino (P) | 30.00 x $350 | | <$10,500.00> |
| | Tostrud (P) | 21.50 x $350 | 21.50 x $350 | 0 |
| | | Total = 76.25 | | **Total = <$19,162.50>** |
| | | | | |
| 5/1/2014 | Godino (P) | 4.25 x 350 | | <$1,487.50> |
| | Tostrud (P) | 5.60 x $350 | 5.60 x $350 | 0 |
| | Carter (A) | 2.60 x $240 | | <$624.00> |
| | | Total = 12.45 | | **Total = <$2,111.50>** |
| | | | | |
| 5/6/2014 | Godino (P) | 25.00 x $350 | | <$8,750.00> |
| | Tostrud (P) | 18.60 x $350 | 18.60 x $350 | 0 |
| | Carter (A) | 2.70 x $240 | | <$648.00> |
| | | Total = 46.30 | | **Total = <$9,398.00>** |
| | | | | |
| 5/29/2014 | Godino (P) | 8.00 x $350 | | <$2,800.00> |
| | Tostrud (P) | 27.00 x $350 | 27.0 x $350 | 0 |
| | Carter (A) | 4.60 x $240 | | <$1,104.00> |
| | | Total = 39.60 | | **Total = <$3,904.00>** |
| | | | | |
| 6/4/2014 | Godino (P) | 5.00 x $350 | | <$1,750.00> |
| | Wolke (P) | 3.00 x $350 | | <$1,050.00> |
| | Tostrud (P) | 11.00 x $350 | 11.0 x $350 | 0 |
| | Carter (A) | 8.30 x $240 | | <$1,992.00> |
| | O'Mara (P) | 2.60 x $350 | | <$910.00> |
| | | Total = 29.90 | | **Total = <$5,702.00>** |
| | | | | |

| Date | Name | Hours x Rate | | Amount |
|---|---|---|---|---|
| 6/13/2014 | Godino (P) | 6.25 x $350 | | <$2,187.50> |
| | Tostrud (P) | 13.80 x $350 | 13.80 x $350 | 0 |
| | | Total = 20.05 | | **Total = <$2,187.50>** |
| | | | | |
| 6/16/2014 | Wolke (P) | 15.50 x $350 | | <$5,425.00> |
| | Godino (P) | 25.50 x $350 | | <$8,925.00> |
| | Tostrud (P) | 24.60 x $350 | 24.60 x $350 | 0 |
| | | Total = 65.60 | | **Total = <$14,350.00>** |
| | | | | |
| 6/26/2014 | Godino (P) | 4.00 x $350 | | <$1,400.00> |
| | Tostrud (P) | 13.00 x $350 | 13.00 x $350 | 0 |
| | Carter (A) | 1.20 x $240 | | <$288.00> |
| | | Total – 18.20 | | **Total = <$1,688.00>** |
| | | | | |
| 7/3/2014 | Godino (P) | 4.50 x $350 | | <$1,575.00> |
| | Tostrud (P) | 7.10 x $350 | 7.10 x $350 | 0 |
| | Carter (A) | 1.20 x $240 | | <$288.00> |
| | | Total = 12.80 | | **Total = <$1,863.00>** |
| | | | | |
| 7/25/2014 | Godino (P) | 4.00 x $350 | | <$1,400.00> |
| | Tostrud (P) | 3.90 x $350 | 3.90 x $350 | 0 |
| | Carter (A) | 1.10 x $240 | | <$264.00> |
| | | Total = 9.00 | | **Total = <$1,664.00>** |
| | | | | |
| 7/28/2014 | Godino (P) | 4.00 x $350 | | <$1,400.00> |
| | Tostrud (P) | 2.80 x $350 | 2.80 x $350 | 0 |
| | | Total = 6.80 | | **Total = <$1,400.00>** |
| | | | | |
| 8/4/2014 | Wolke (P) | 6.50 x $350 | | <$2,275.00> |
| | Tostrud (P) | 10.80 x $350 | 10.80 x $350 | 0 |
| | Carter (A) | 2.00 x $240 | | <$480.00> |
| | | Total = 19.30 | | **Total – <$2,755.00>** |
| | | | | |
| 8/8/2014 | Godino (P) | 3.00 x $350 | | <$1,050.00> |
| | Tostrud (P) | 9.70 x $350 | 9.70 x $350 | 0 |
| | Carter (A) | 1.20 x $240 | | <$288.00> |
| | O'Mara (P) | 1.20 x $350 | | <$420.00> |
| | | Total = 15.10 | | **Total = <$1,758.00>** |
| | | | | |
| 8/15/2014 | Godino (P) | .25 x $350 | | <$87.50> |
| | Tostrud (P) | 2.70 x $350 | 2.70 x $350 | 0 |
| | Carter (A) | 1.00 x $240 | | <$240.00> |
| | | Total = 3.95 | | **Total = <$327.50>** |
| | | | | |
| 10/21/2014 | Godino (P) | 33.00 x $350 | | <$11,550.00> |
| | Wolke (P) | 54.00 x $350 | | <$18,900.00> |
| | Tostrud (P) | 54.60 x $350 | 54.60 x $350 | 0 |
| | Carter (A) | 4.00 x $240 | | <$960.00> |
| | O'Mara (P) | 10.00 x $350.00 | | <$3,500.00> |
| | | Total = 155.60 | | **Total = <$34,910.00>** |
| | | | Total = 302.50 | <span style="color:red">**Grand Total = <$131,041.00>**</span> |

**B. Research and Draft of Special Master's Proposed Order**

| Attorney | Total Hours Billed | Proposed Reasonable Hours | Amount to be Reduced |
|---|---|---|---|
| Wolke (P) | 188.75 x $350 | | |
| Godino (P) | 19.75 x $350 | | |
| Tostrud (P) | 2.20 x $350 | $350 | |
| | Partner Hours = 210.70 | Partner Hours = 17.50 | <$67,620.00> |
| | | | |
| Antonio (A) | 32.50 x $200 | | |
| Carter (A) | 38.50 x $240 | $240 | |
| | Associate Hours– 71.00 | Associate Hours = 52.50 | <$3,140.00> |
| | **Total Hours – 281.70** | **Total Hours = 70.00** | **Total = <$70,760.00>** |

**C. Reviewing Opposition to Special Master's Proposed Order, Drafting Response and Reviewing Defendants' Reply**

| Attorney | Total Hours Billed | Proposed Reasonable Hours | Amount to be Reduced |
|---|---|---|---|
| Wolke (P) | 67.70 x $350 | | |
| Godino (P) | 51.10 x $350 | | |
| Tostrud (P) | 20.20 x $350 | $350 | |
| | Partner Hours = 139.00 | Partner Hours = 10.00 | <$45,150.00> |
| | | | |
| Carter (A) | 27.50 x $240 | | |
| Fallon (A) | 5.00 x $240 | $240 | <$600.00> |
| | Associate Hours– 32.50 | Associate Hours = 30.00 | |
| | **Total Hours – 171.50** | **Total Hours = 40.00** | **Total - <$45,750.00>** |

**D. Sanctions Research and Motion for Sanctions**

| Attorney | Total Hours Billed | Proposed Reasonable Hours | Amount to be Reduced |
|---|---|---|---|
| Wolke (P) | 24.75 x $350 | | |
| Tostrud (P) | 95.40 x $350 | $350 | |
| | Partner Hours = 120.15 | Partner Hours = 10.00 | <38,552.50> |
| | | | |
| | | | |
| Antonio (A) | 1.75 x $200 | | |
| Carter (A) | 44.40 x $240 | $240 | |
| | Associate Hours– 46.15 | Associate Hours = 30.00 | <3,876.00> |
| | **Total Hours – 166.30** | **Total Hours – 40.00** | **Total - <$42,428.50>** |

### E.  Improperly Billed Paralegal or Clerical Work

| Attorney | Dates | Total Hours Billed | Proposed Reasonable Hours/Rates | Amount to be Reduced |
|---|---|---|---|---|
| Antonio (A) | Between 6/6/2014 and 7/10/2014 | 75.65 x $200 = $15,130.00 | 50 x $90 = $4,500.00 | <$10,630.00> |
| | Between 8/5/2014 and 9/16/2014 | 23.00 x $200 = $4,600.00 | 23 x $90 = $2,070.00 | <$2,530.00> |
| Carter (A) | Not Stated | 185.90 x $240 = $44,616.00 | 185.90 x $90 = $16,731.00 | <27,885.00> |
| Tostrud (P) | 3/21/2014 through 3/28/2014 | 14.50 x $350 = $5,075.00 | 14.50 x $90 = $1,305.00 | <3,770.00> |
| | | | | **Total = <$44,815.00>** |

### 3.  Other Improper or Unnecessary Billings

| Attorney | Dates | Total Hours Billed | Hours to be Reduced | Amount to be Reduced |
|---|---|---|---|---|
| Godino (P) | 1/20/2014 and 1/21/2014 | 13.25 | 13.25 x $350 | <$4,637.50> |
| Tostrud (P) | 1/20/2014 through 1/21/2014 | 8.7 | 0 | |
| | 3/18/2014 | 3.6 | 3.6 x $350 | <$1,260.00> |
| Carter (A) | 3/31/2014 | 1.7 | 1.7 x $240 | <408.00> |
| | | | | **Total = <$6,305.00>** |

### 4.  Requested Expert Costs Not Caused by Alleged Discovery Shortcomings and Should Be Denied

| Expert | Total Amount Billed | Expert | Proposed Reasonable Hours/Amount | Amount to be Reduced |
|---|---|---|---|---|
| ILS Invoice #2938 | $36,210.83 | Pixley Forrest | 4.45 hrs. x $350 = $1557.50 | <$34,653.33> |
| ILS Invoice #2997 | $60,941.65 | Pixley | 45.10 hrs x $350 = $15,785.00 Airfare = $1,975.96 | |
| | | Forrest | 0 | |
| | | | **Total = $17,760.96** | <$43,180.69> |
| ILS Invoice #2999 | $16,576.99 | J. Peer | 0 | <$16,576.99> |
| ILS Invoice #3016 | $46,833.90 | Pixley | 24.50 x $350 = $8,575.00 Expenses = 1,768.73 | |
| | | Forrest | 1.27 x $350 = $444.50 **Total = $10,788.23** | <36,045.67> |
| ILS Invoice #3055 | $7,511.75 | Misc | yup0 | <$7,511.75> |
| ILS Invoice #3051 | $44,986.10 | Pixley | 35.25 x $350 = $12,337.50 Expenses = $839.17 | |

31

| | | | | |
|---|---|---|---|---|
| | | Forrest | 2.95 x $1,032.50<br>**Total = $14,209.17** | <30,776.93> |
| ILS Invoice #3085 | $5,573.78 | Misc | 0 | <$5,573.78> |
| ILS Invoice #3086 | $8,592.50 | Pixley | 2.5 $350 = $875.00 | |
| | | Forrest | 5.12 x $350 = $1,792.00<br>**Total = $2,667.00** | <$5,925.50> |
| ILS Invoice #3098 | $25,010.83 | Pixley | 13.25 x $350 = $4,637.50 | |
| | | Forrest | 16.35 x $350 = $5,722.50<br>**Total = $10,360.00** | <$14,650.83> |
| ILS Invoice #3128 | $6,622.50 | Forrest | 9.26 x $350 = $3,241.00 | <$3,381.50> |
| ILS Invoice #3156 | $322.50 | Misc | 322.50 | 0 |
| ILS Invoice #3174[10] | $2,429.17 | Misc | 0 | <$2,429.17> |
| | **$261,612.50** | | **$60,906.36[11]** | **Total = <$200,706.14>** |

---

[10] The invoice was mistakenly referred to as ILS Invoice No. 3128.

[11] Following the relevant costs listed in plaintiffs' opposition, this is the amount calculated by the court; however, Plaintiffs state that reasonable costs should be $78,667.32 which reduces the total by $182,945.18.